1 │ BARRY E. HINKLE, Bar No. 071223
KRISTINA L. HILLMAN, Bar No. 208599
2 │ KRISTINA M. ZINNEN, Bar No. 245346
WEINBERG, ROGER & ROSENFELD
3 │ A Professional Corporation
1001 Marina Village Parkway, Suite 200
4 │ Alameda, California 94501-1091
Telephone (510) 337-1001
5 │ Fax (510) 337-1023

6 │ Attorneys for Plaintiffs

7

8 │ UNITED STATES DISTRICT COURT

9 │ NORTHERN DISTRICT OF CALIFORNIA

10

11 │ THE BOARD OF TRUSTEES OF THE ) No.
CARPENTERS HEALTH AND WELFARE )
12 │ TRUST FUND FOR CALIFORNIA; )
CARPENTERS VACATION-HOLIDAY TRUST )
13 │ FUND FOR NORTHERN CALIFORNIA; )
CARPENTERS PENSION TRUST FUND FOR ) **PETITION TO CONFIRM**
14 │ NORTHERN CALIFORNIA; CARPENTERS ) **ARBITRATION AWARD AND**
ANNUITY TRUST FUND FOR NORTHERN ) **COMPLAINT FOR AUDIT, BREACH**
15 │ CALIFORNIA; and CARPENTERS TRAINING ) **OF CONTRACT, DAMAGES,**
TRUST FUND FOR NORTHERN ) **BREACH OF FIDUCIARY DUTY,**
16 │ CALIFORNIA, and CARPENTERS 46 ) **AND INJUNCTION (ERISA 29 U.S.C.**
NORTHERN CALIFORNIA COUNTIES ) **§1001, et seq., 29 U.S.C. §185)**
17 │ CONFERENCE BOARD for itself and on behalf )
of NORTHERN CALIFORNIA CARPENTERS )
18 │ REGIONAL COUNCIL )
)
19 │ Plaintiffs, )
)
20 │ v. )
)
21 │ ACOUSTICTEC, A California Corporation, )
)
22 │ Defendant. )
)

23 │ **JURISDICTION AND INTRADISTRICT ASSIGNMENT**

24

25 │ I.

This action arises under and is brought pursuant to section 502 of the Employee Retirement
26
Income Security Act, as amended (ERISA), 29 U.S.C. § 1132, and section 301 of the Labor
27
Management Relations Act (LMRA), 29 U.S.C. § 185. The jurisdiction of this Court is founded on
28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA 94501-1091

PETITION TO CONFIRM ARBITRATION AWARD AND COMPLAINT FOR AUDIT, BREACH OF
CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND INJUNCTION

ORIGINAL
FEB 2 6 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

EMC

CV 08 1137

1   28 U.S.C. § 1331. Venue properly lies in this district court because a substantial part of the events

2   and omissions giving rise to these claims occurred in this district, including, but not limited to

3   Defendant's agreement with Plaintiff, which requires that trust funds contributions are due and

4   payable in the County of San Francisco.

## PARTIES

II.

7       At all relevant times, Plaintiff Board of Trustees (hereinafter referred to as "Plaintiff Trust

8   Funds") were Trustees of the Carpenters Health and Welfare Trust Fund for California; Carpenters

9   Vacation-Holiday Trust Fund for Northern California; Carpenters Pension Trust Fund for Northern

10   California; Carpenters Annuity Trust Fund for Northern California; and Carpenters Training Trust

11   Fund for Northern California. At all times material herein, each of the above-named Trust Funds

12   was, and now is, an employee benefit plan created by a written trust agreement subject to and

13   pursuant to section 302 of the Labor Management Relations Act (29 U.S.C. § 186), and a multi-

14   employer employee benefit plan within the meaning of sections 3, 4 and 502 of ERISA (29 U.S.C.

15   §§ 1002, 1003 and 1132). Each of the above-named Trust Funds is administered by a Board of

16   Trustees which may bring this action in the name of the Trust Funds pursuant to the express

17   provisions of the Trust Agreements. All of the above named Trust Funds and their respective

18   Board of Trustees together with the Union, shall hereinafter be designated collectively as

19   "Plaintiffs".

III.

21       Plaintiff, Carpenters 46 Northern California Counties (hereinafter "Union"), a labor

22   organization within the meaning of section 301 of the Labor Management Relations Act (29 U.S.C.

23   § 185), is a voluntary unincorporated association, and a labor organization within the meaning of

24   29 U.S.C. § 152 (5), existing under and pursuant to the laws of the State of California, to which

25   various local unions belong and in which said local unions participate for the purpose of providing

26   standards of wages, hours and working conditions, and for the purpose of obtaining collective

27   bargaining agreements on behalf of local union members.

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA 94501-1091

- 2 -

PETITION TO CONFIRM ARBITRATION AWARD AND COMPLAINT FOR AUDIT, BREACH OF
CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND INJUNCTION

IV.

At all times material herein, Acoustictec (hereinafter collectively referred to as "Defendant"), has been an employer within the meaning of section 3(5) and section 515 of ERISA (29 U.S.C. §§ 1002(5), 1145), and an employer in an industry affecting commerce within the meaning of section 301 of the LMRA (29 U.S.C. § 141 et seq.)

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

V.

At all relevant times, Defendant was signatory and bound to a written collective bargaining agreement with the Union entitled Carpenters Master Agreement (hereinafter "Master Agreement"). Defendant became subject to all the terms and conditions of the Master Agreement by virtue of signing a Memorandum of Agreement (hereinafter "Memorandum Agreement") with the Union, which incorporated by reference the Master Agreement. A true and correct copy of said Master Agreement is attached hereto as Exhibit "A" and a true and correct copy of the Memorandum Agreement is attached hereto as Exhibit "B", both of which are incorporated by reference herein.

VI.

Said Master Agreement by its terms incorporates the various Trust Agreements establishing each of the Plaintiff Trust Funds. By said Master Agreement, Defendant promised that it would contribute and pay to Plaintiffs the hourly amounts required by said Agreements for each hour paid for or worked by any of their employees who performed any work covered by said Agreements, and that they would be subject to and bound by all of the terms, provisions and conditions of the Trust Agreements as incorporated by the terms of the Master Agreement.

VII.

The above-mentioned Trust Agreements provide for prompt payment of all employer contributions to the various Trust Funds and provide for liquidated damages, not as a penalty but as a reasonable attempt to provide for payments to cover the damages incurred by the Trust Funds, in the event of a breach by the employer, where it would have been impracticable or extremely

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA 94501-1091

- 3 -

PETITION TO CONFIRM ARBITRATION AWARD AND COMPLAINT FOR AUDIT, BREACH OF
CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND INJUNCTION

1  difficult to ascertain the Trust Funds' losses at the time the Agreement was negotiated.

2

VIII.

3  Section 51 of the Master Agreement provides for the resolution of grievances between the

4  parties, and said section sets out a procedure to be followed for the resolution of grievances, the

5  final step of which is the submission of the grievance to an impartial arbitrator or a Joint

6  Adjustment Board, whose decision shall be final and binding upon the parties.

7

IX.

8  The Trust Agreements provide for the payment of interest on all delinquent contributions,

9  attorneys' fees, and other collection costs, and for the audit of the signatory employer or employers'

10  books and records in order for the Plaintiffs to ascertain whether all fringe benefit contributions

11  have been timely paid as required by the applicable labor agreements and law.

12

## FIRST CLAIM FOR RELIEF
## (PETITION TO CONFIRM ARBITRATION AWARD)

13

X.

14  Plaintiffs incorporate and reallege by reference all the allegations stated hereinabove.

15

XI.

16  A grievance arose between the parties concerning a dispute over the application or

17  interpretation of the Master Agreement and Trust Agreements (hereinafter collectively referred to

18  as "Collective Bargaining Agreement"). Pursuant to the terms and conditions of the Collective

19  Bargaining Agreement, a grievance was filed over this dispute, and the parties proceeded to follow

20  the steps outlined in the grievance procedure, ultimately submitting the grievance to an arbitrator

21  appointed pursuant to the Collective Bargaining Agreement.

22

XII.

23  A hearing on the grievance was conducted April 10, 2007, before Arbitrator Gerald R.

24  McKay. At the hearing, the parties were permitted to submit evidence, testimony and argument.

25  On April 11, 2007 , Arbitrator Gerald R. Makay issued a Decision and Award ("the Award"), and

26  awarded Plaintiffs $230,966.55 in fringe benefit contribution and liquidated damages, and $300.00

27  for the cost of proceeding. A copy of the Award is attached hereto as Exhibit "C" and incorporated

28
WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA 94501-1091

- 4 -

PETITION TO CONFIRM ARBITRATION AWARD AND COMPLAINT FOR AUDIT, BREACH OF
CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND INJUNCTION

1  herein by reference as though set forth at length.

2

XIII.

3  Subsequent to the issuance of the Award in this matter, Plaintiffs have made demands upon

4  the Defendant to comply fully with the Award, however, the Defendant has refused to comply with

5  the Award. Said Award is still outstanding, not having been paid or otherwise complied with by

6  Defendant.

7

XIV.

8  Plaintiffs have no adequate remedy at law other than the filing of this Petition and

9  Complaint, and have exhausted all of its available administrative remedies.

10

XV.

11  Plaintiffs have been required to secure the services of counsel for the prosecution and

12  enforcement of the Award issued by the Board of Adjustment. Because Defendant's refusal to

13  comply with the arbitration award is unjustified and in bad faith, Plaintiffs seek attorneys' fees

14  incurred to obtain compliance with the Award.

15

**SECOND CLAIM FOR RELIEF**
**(AUDIT)**

16

XVI.

17  Plaintiffs incorporate and reallege by reference all the allegations stated hereinabove.

18

XVII.

19  The Board of Trustees have, as one of their duties, the obligation to ensure that

20  contributions required to be made to said Trust Funds pursuant to the Master Agreement are fully

21  and correctly made. The purposes of the respective Trust Funds are to provide health and welfare,

22  vacation, pension and other benefits for carpenters on whose behalf contributions are made, which

23  benefits are supported by such contributions, and to ensure that employers who are signatories to

24  the Master Agreement complies with the terms of said agreements with respect to payments of said

25  contributions to the Trust Funds. The Trust Funds maintain their offices in the County of San

26  Francisco, and all such contributions are required to be made in the County of San Francisco.

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA 94501-1091

- 5 -

PETITION TO CONFIRM ARBITRATION AWARD AND COMPLAINT FOR AUDIT, BREACH OF
CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND INJUNCTION

1

XVIII.

2      By its terms, said Master Agreement binds Defendant to the Trust Agreements respectively

3      establishing said Trust Funds, and Article IV, section 7, of the Trust Agreement creating the

4      Welfare Fund, Article VI, section 6, of the Trust Agreement creating the Vacation-Holiday Fund,

5      Article IV, section 6, of the Trust Agreement creating the Pension Fund, Article IV, section 6 of

6      the Trust Agreement creating the Training Fund, and Article IV, section 6 of the Trust Agreement

7      creating the Annuity Trust Fund, each provide that:

8              Upon request in writing from the Board, each Individual Employer will
permit a certified public accountant selected by the Board to enter upon the

9              premises of the Individual Employer during business hours, at a reasonable
time or times, and to examine and copy books, records, papers or reports of

10             the Individual Employer as necessary to determine whether the Individual
Employer is making full and prompt payment of all sums required to be paid

11             by him or it to the Fund. In addition, each Individual Employer will comply
with all of any other county or to any other place.

12

13

XIX.

14      Plaintiffs are unable to determine whether Defendant has made prompt and correct payment

15      of all Trust Fund contributions, and as a consequence, good cause appearing therefore,

16      communications have been directed to Defendant by representatives of Plaintiffs demanding that

17      Defendant submit to an audit pursuant to Collective Bargaining Agreement. Copies of demand

18      letter(s) from Plaintiffs to Defendant dated April 27, 2007 and May 16, 2007, and are attached

19      hereto as Exhibits "D" and "E", respectively, and are incorporated by reference herein.

20

XX.

21      Defendant has failed, refused or neglected to allow the audit as requested or to allow an

22      inspection of their books, records, papers, or reports in accordance with the provisions of the Trust

23      Agreements. As a result of Defendant's refusal to submit to the audit, Plaintiffs are unable to

24      ascertain the amount of additional damages, if any, suffered by the Trust Funds. Plaintiffs have no

25      adequate remedy at law, and the individual carpenters who are the beneficiaries of the respective

26      Trust Funds, particularly the employees of Defendant, are damaged thereby and also have no

27      adequate remedy at law.

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA 94501-1091

- 6 -
PETITION TO CONFIRM ARBITRATION AWARD AND COMPLAINT FOR AUDIT, BREACH OF
CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND INJUNCTION

1 | XXI.

2 Plaintiffs have complied with all conditions on their part to be performed under the terms of

3 the applicable written Agreements.

4 | XXII.

5 Plaintiffs are entitled to reasonable attorneys' fees, liquidated damages, interest and other

6 reasonable expenses incurred in connection with this matter due to Defendant's failure to allow the

7 audit or refusal to pay all fringe benefit contributions due and owing pursuant to the terms of the

8 Collective Bargaining Agreement and ERISA section 502(g)(2), 29 U.S.C. § 1132(g)(2).

9 | ### THIRD CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

10 | XXIII.

11 Plaintiffs incorporate and reallege by reference all the allegations stated hereinabove.

12 | XXIV.

13 Pursuant to the written agreements establishing Plaintiffs Trust Funds, Defendant has

14 failed, neglected or refused to allow Plaintiffs access to the records requested and needed to

15 determine the exact amount of fringe benefit contributions owed to the Trust Funds.

16 | XXV.

17 Plaintiffs have estimated that there is now due and owing and unpaid to Plaintiffs fringe

18 benefits contributions and liquidated damages in an amount to be determine at trial.

19 | XXVI.

20 Plaintiffs have complied with all conditions on their part to be performed under the terms of

21 the applicable agreements.

22 | XXVII.

23 Plaintiffs are entitled to reasonable attorneys' fees, interest, and other reasonable expenses

24 incurred in connection with this matter due to Defendant' failure and refusal to pay all fringe

25 benefit contributions due and owing pursuant to the terms of the applicable Collective Bargaining

26 Agreement and ERISA section 502(g)(2) (29 U.S.C. § 1132(g)(2).

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA 94501-1091

- 7 -

PETITION TO CONFIRM ARBITRATION AWARD AND COMPLAINT FOR AUDIT, BREACH OF
CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND INJUNCTION

1

2

**FOURTH CLAIM FOR RELIEF**
**(ACTUAL DAMAGES FOR BREACH OF CONTRACT)**

3

XXVIII.

4

Plaintiffs incorporate and reallege by reference all the allegations stated hereinabove.

5

XXIX.

6

Defendant has failed, neglected and refused to make timely fringe benefit contributions as

7

required by the applicable Collective Bargaining Agreement, and has caused Plaintiffs actual

8

damages in an amount to be proven at trial.

9

10

**FIFTH CLAIM FOR RELIEF**
**(DAMAGES AND EQUITABLE RELIEF FOR BREACH OF FIDUCIARY DUTY)**

11

XXX.

Plaintiffs incorporate and reallege by reference all the allegations stated hereinabove.

12

13

14

XXXI.

Defendant has failed, neglected or refused to allow a full and complete audit of its books

15

and records by the Trust Funds as required by the applicable Agreements and the Award (see

16

Exhibit C, paragraph 5).

17

18

XXXII.

Defendant's neglect or refusal pursuant to the terms of the above-mentioned Collective

19

Bargaining Agreement constitutes a violation of ERISA section 515 (29 U.S.C. § 1145).

20

21

XXXIII.

Defendant, in agreeing to the terms and conditions of the aforementioned Trust

22

Agreements, assumed a fiduciary duty to Plaintiffs, which required Defendant to submit timely and

23

accurate reports of hours worked or amounts due, together with payments to Plaintiff's Trust

24

Funds. Defendant exercised control over any contributions due, which are assets of Plaintiff's

25

Trust Funds, and Defendant was a fiduciary as defined by ERISA section 3(21), 29 U.S.C. §

26

1002(21).

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA 94501-1091

- 8 -

PETITION TO CONFIRM ARBITRATION AWARD AND COMPLAINT FOR AUDIT, BREACH OF
CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND INJUNCTION

1

XXXV.

2 The actions of Defendant complained of herein constitute a violation of fiduciary duties as

3 defined by ERISA, 29 U.S.C. §§ 1001, et seq.

4

XXXVI.

5 Unless enjoined by this Court, Defendant will continue to fail, neglect, or refuse to submit

6 to an audit or to remit appropriate fringe benefit contributions to the Plaintiff's Trust Funds and

7 thereby cause Plaintiffs irreparable harm for which there exists no adequate remedy at law.

8 ## SIXTH CLAIM FOR RELIEF
## (INJUNCTION)

9

XXXVII.

10 Plaintiffs incorporate and reallege by reference all the allegations stated hereinabove.

11

XXXVIII.

12 Unless enjoined by this Court, Defendant will continue to fail, neglect, or to submit to an

13 audit of books and records and thereby cause Plaintiffs irreparable harm for which there exists no

14 adequate remedy at law.

15 **WHEREFORE**, Plaintiffs pray judgment against Defendant as follows:

16 1.      That this Court confirm the decision of the Board of Adjustment OR Arbitrator

17 (Exhibit C hereto) where Defendant was ordered to pay to Plaintiffs $230,966.55 in fringe benefit

18 contribution and liquidated damages, and $300 for the cost of proceedings, and ordered Defendant

19 to submit to an audit of its books and records, and that said Award becomes a Judgment of this

20 Court;

21 2.      That Defendant be compelled to forthwith submit to a full audit by auditors selected

22 by the Plaintiff's Trust Funds at the premises of Defendant during business hours, at a reasonable

23 time or times, and to allow said auditors to examine and copy such books, records, papers, reports

24 of Defendant relevant to the enforcement of the collective bargaining agreements or the Trust

25 Agreements, including but not limited to the following:

26 Individual earning records (compensation); W-2 forms; 1096 and 1099
forms; reporting forms for all Trust Funds; State DE-3 tax reports; workers

27 compensation insurance report; employee time cards; payroll journal;
quarterly payroll tax returns (form 941); check register and supporting

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA 94501-1091

- 9 -

PETITION TO CONFIRM ARBITRATION AWARD AND COMPLAINT FOR AUDIT, BREACH OF
CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND INJUNCTION

1    cash voucher; Form 1120 - 1040 or partnership tax returns; general ledger
     - (portion relating to payroll audit);

2

3    3.    That upon completion of the audit, Defendant be decreed to pay over to Plaintiffs

4    such sums as shall be ascertained to be due from Defendant and liquidated damages and interest on

5    said sums;

6    4.    That Defendant be ordered to pay fringe benefit contributions in an amount to be

7    determine at trial, plus interest thereon;

8    5.    That Defendant be ordered to pay actual damages according to proof;

9    6.    That this Court issue an Order directing and permanently enjoining Defendant to

10   timely submit to Plaintiff Trust Funds, all reports and contributions due and owing by Defendant

11   plus interest, liquidated damages, attorneys' fees, and costs as provided in ERISA sections

12   502(a)(3) and (g)(2) (29 U.S.C. § 1132(a)(3), (g)(2);

13   7.    That this Court issue an Order permanently enjoining Defendant for so long as it

14   remain obligated to contribute to Plaintiff Trust Funds, from failing, neglecting, or refusing to

15   timely submit required monthly contributions reports and payments as required by the terms of the

16   Collective Bargaining Agreements, Trust Agreements and ERISA sections 502(a)(3) and (g)(2),

17   (29 U.S.C. § 1132(a)(3), (g)(2));

18   8.    That this Court issue an injunction compelling Defendant to forthwith cease its refusal

19   to submit to an audit of its books, records, papers and reports as required by the agreements to

20   which it is bound;

21   9.    That Defendant be ordered to pay attorney's fees;

22   10.    That Defendant be ordered to pay costs of suit herein; and

23   11.    That the Court grant such further relief as this Court deems just and proper;

24   //

25   //

26   //

27   //

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA 94501-1091

PETITION TO CONFIRM ARBITRATION AWARD AND COMPLAINT FOR AUDIT, BREACH OF
CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND INJUNCTION

1      12.    That this Court retain jurisdiction of this matter to enforce the Order compelling an

2  Audit and payment of all amount found due and owing.

3  Dated: February 21, 2008

4                  WEINBERG, ROGER & ROSENFELD

5                  A Professional Corporation

6

7                By:

8                  KRISTINA M. ZINNEN
                      Attorneys for Plaintiffs

9

10  117540/475076

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village
Parkway, Suite 200
Alameda, CA 94501-1091

- 11 -

PETITION TO CONFIRM ARBITRATION AWARD AND COMPLAINT FOR AUDIT, BREACH OF
CONTRACT, DAMAGES, BREACH OF FIDUCIARY DUTY, AND INJUNCTION

<u>46 NORTHERN CALIFORNIA COUNTIES</u>

# CARPENTERS
# MASTER AGREEMENT
# FOR NORTHERN
# CALIFORNIA

Between the

**Construction Employers Association
of California (CEA)**

**Millwright Employers
Association (MEA)**

**Home Builders Association
of Northern California (HBA)**

**Concrete Contractors Association (CCA)**

**NC Contractors Association (NCCA)**

**Associated Cabinet
Manufacturers (ACM)**
and

**Carpenters 46 Northern California
Counties Conference Board**
of the
**United Brotherhood of Carpenters
and Joiners of America (AFL-CIO)**

Effective Date June 3, 2003

EXHIBIT A



| | SECTION NO. | PAGE |
|---|---|---|
| Annuity Plan | 42 | 26 |
| Appendices | 38 | 17 |
| Apprentices | 39 | 23 |
| Apprentice Wage Rates | 39F | 23 |
| Area Covered | 3 | 2 |
| Audit | 21 | 9-10 |
| Basis for Contributions | 47 | 32-33 |
| Bonding | 37 | 17 |
| Bridge Structure and | | |
| Highway Related Addendum. . . .Appendix G | | 86-88 |
| Builders Industry Promotion Trust | 45 | 29-30 |
| Building Industry Trust | 45 | 30 |
| Cabinet Manufacturers Agreement. . .Appendix E | | 63-83 |
| California Builders Advancement Program | 45 | 29 |
| California Construction Advancement Program | 45 | 29 |
| Carpenters Work Preservation Committee | 2-A | 2 |
| Carpenters Work Preservation Committee Trust | 45-A | 31 |
| Construction Industry Advancement Fund | 45 | 30 |
| Contract Administration | 45 | 30-31 |
| Contracting | 50 | 36-38 |
| Contributions for Superintendents | 46 | 32 |
| Discharge | 30 | 14-15 |
| Document Signing | 35 | 16 |
| Efficiency | 18 | 8 |
| Employer Membership | 6 | 4 |
| Foreman and General Foreman | 39 | 25 |
| Fringe Benefit Rates | 39 | 21-23 |
| General Saving Clause | 10 | 5 |
| Grievance Procedure | 51 | 38-40 |
| Health and Welfare | 40 | 25 |
| Hiring | 49 | 33-36 |
| Holidays | 25 | 12-13 |
| Independent Agreement | 8 | 4-5 |
| Injury | 34 | 16 |
| Insulators Addendum . . . . . . . .Appendix D | | 61-62 |
| Jurisdictional Disputes | 16 | 8 |
| Liability of Parties | 9 | 5 |
| Millwrights Agreement . . . . . . . . .Appendix B | | 44-56 |
| No Discrimination | 11 | 5-6 |
| No Strike | 15 | 7-8 |
| Non-Union Fabricated Materials | 33 | 16 |
| Overtime | 26 | 13 |
| Owners Working | 12 [3] | 6-7 |
| Parking | 27 | 13-14 |
| Payment of Wages | 31 | 15 |
| Pension Plan | 41 | 25-26 |
| Picket Lines | 17 | 8 |
| Pickup Time | 29 | 14 |
| Preamble | | 1 |
| Pre-Job Conferences | 20 | 9 |
| Prohibition of Piece Work | 32 | 16 |
| Recognition of Employer | 5 | 4 |
| Recognition of Union | 7 | 4 |
| Residential Addendum . . . . . . . . .Appendix C | | 57-60 |
| Safety | 19 | 9 |
| Scaffold Erection Addendum . . . . . .Appendix F | | 84-85 |
| Shift Work | 23 | 11-12 |
| Show Up Time | 30 | 14-15 |
| Stewards | 14 | 7 |
| Subcontracting | 50 | 36-38 |
| Subcontractor Records | 36 | 16 |
| Subsistence . . . . . . . . . . . . . . . .Appendix A | | 42-43 |
| Term of Agreement | 2 | 1-2 |
| Termination Pay | 30 | 14-15 |
| Tools | 28 | 14 |
| Training Trust Fund | 44 | 28-29 |
| UBC Health & Safety Fund | 45-B | 31-32 |
| Union Representative | 13 | 7 |
| Union Security | 12 | 6-7 |
| Vacation and Holiday Plan | 43 | 26-27 |
| Wage and Fringe Benefit Increases | 39 | 21-23 |
| Wage Rates | 39 | 17-25 |
| Work Covered | 4 | 2-3 |
| Work Day | 22 | 10-11 |
| Work Fee | 43-A | 27-28 |
| Work Week | 24 | 12 |

## PREAMBLE

This Agreement represents a new beginning of cooperation between signatory employers and the Union in a mutual effort to retain and regain the major portions of the work within the geographic area for unionized construction. The successes of the Agreement will be judged on the ability of the signatory contractors to be successful in obtaining contracts where union employees will be employed.

# CARPENTERS MASTER AGREEMENT

## 46 Northern California Counties

## 2003-2008

### Section 1

THIS MASTER AGREEMENT, made and entered into this 3rd day of June, 2003, by and between the CONSTRUCTION EMPLOYERS' ASSOCIATION OF CALIFORNIA (CEAC), MILLWRIGHT EMPLOYERS ASSOCIATION (MEA) CONCRETE CONTRACTORS ASSOCIATION (CCA), NC CONTRACTORS ASSOCIATION (NCCA) and The Home Builders Association of Northern California (HBA) and their respective members, herein referred to collectively as the Employer, and the CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD, on behalf of the Northern California Carpenters Regional Council (NCCRC) and affiliated Local Unions having jurisdiction in the 46 Northern California Counties, hereinafter referred to as the Union. This Agreement amends, modifies, supplements, changes, extends and renews the Agreements dated June 16, 1971, July 18, 1974, June 16, 1977, June 16, 1980, September 1, 1982, January 1, 1986, April 1, 1988, June 16, 1992, June 16, 1996, May 25, 1999 , and is effective July 1, 2003.

### Section 2
### Term of Agreement

This Agreement shall remain in full force and effect from the 1st day of July, 2003 through the 30th day of June, 2008, and shall continue thereafter unless either party, not more than ninety (90) days nor less than sixty (60) days prior to the 30th day of June, 2008, or not more than ninety (90) days nor less than sixty (60) days prior to the 30th day of June of any subsequent year in which the Master Agreement may terminate, serves written notice on the other of its desire to change, modify, amend, supplement, renew, extend or terminate this Agreement.

All notices required to be given to the Union shall be addressed to it at 265 Hegenberger Road, Suite 220 Oakland, California 94621.

While this Agreement continues in effect, neither party will make demands upon the other party for any changes in conditions or benefits or for any new or additional conditions or benefits except at the time and in the manner provided above. Notice to the Employer shall be deemed notice to all individual employers.

1

The parties to this Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement. Consistent with that recognition, the parties will continually monitor the effectiveness of this Agreement relative to specific geographic or market areas and will endeavor, by mutual agreement, to initiate such modifications to the Agreement during its term as may be necessary to assure the work opportunities of the employees and the competitive position of the individual employers.

## Section 2-A
## Carpenters Work Preservation Committee

Notwithstanding the provisions of Section 2, the parties to the Agreement hereby establish a Committee composed of three (3) representatives appointed by the Carpenters 46 Northern California Counties Conference Board and three (3) representatives appointed by the Construction Employers' Association of California, Inc. This Committee will review requests for changes in the terms and conditions of the Labor Agreement that may be necessary to preserve work opportunities for employees and individual employers covered by the Agreement. The Committee is authorized to approve such changes as it deems to be in the best interest of the parties to the Agreement.

This Committee shall be empowered to develop rules and procedures, subject to the approval of the bargaining parties, to carry out the intent of the bargaining parties.

## Section 3
## Area Covered

The area covered by this Agreement shall be Northern California, consisting of the forty-six (46) counties located above the northerly boundary of San Luis Obispo County, the northerly boundary of Kern County, and the westerly boundaries of Inyo and Mono Counties, to wit: Alameda, Alpine, Amador, Butte, Calaveras, Colusa, Contra Costa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Marin, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Francisco, San Joaquin, San Mateo, Santa Clara, Santa Cruz, Shasta, Sierra, Siskiyou, Sonoma, Solano, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

## Section 4
## Work Covered

All carpentry work on all construction, including, but not limited to, construction, erection, alteration, repair, modification, demolition, addition or improvement of or to a building or any other structure or construction.

All carpentry work on heavy, highway and engineering construction, including, but not limited to, the construction, improvement, modification and demolition of all or any part of streets, highways, bridges, viaducts, railroads, storage elevators, tunnels, airports, water supply, irrigation, flood control and drainage systems, sewers and sanitation projects, dams, power houses, refineries, aqueducts, canals, river and harbor projects, wharves, docks, breakwaters, jetties, quarrying of breakwater or riprap stone, pipelines, offshore construction, or operations incidental to such heavy construction work.

2

Work in connection with new methods of construction or use of materials established or developed during the term of this Agreement, and the use and application of tools, devices, metal or plastic studs or any substitute thereof, metal or plastic forms or slip form procedures, mechanical power driven or otherwise, customarily and regularly used by carpenters, any mechanical or technological substitutes thereof, whether continuously or intermittently and which are regarded tools of the carpentry trade. This shall include though not be limited to the use and operation of forklifts, platform lifts and operation of concrete chutes.

All carpentry work in connection with plywood decking, beam sides and beam soffits and all concrete form work.

All carpentry work in connection with tilt-up construction including, but not limited to, benchmarks, layout, setting of all forms, blockouts, metal door and window jambs, templates for bolts, lift points, knee braces, stripping of forms, rigging, setting, plumbing and aligning, welding, drilling, cleaning, ledger bolts, setting ledgers, setting of expansion joints, and caulking. Also to include forms for stairs and loading docks (setting and stripping), installation of all doors, installation of laminated beams or precast structures, and operation of the forklift in reference to all of the above work.

All carpentry work in connection with displays, conventions, tradeshows and exhibitions.

All work in connection with self supporting scaffolds over fourteen feet (14') in height whether patent or otherwise constructed.

The work covered by this Agreement shall include all types of wood flooring of any size, shape or pattern, in all its branches and phases including pre-finished wood and hardwood products, such as nailing, filling, laying, stripping, tongue and groove, underlayment, blocks-mastic work, sanding, edging, staining, finishing, basing, application of shellac, varnishes, sealers, waxing and related work.

Should an individual employer party to this Agreement perform work as a drywall contractor or drywall subcontractor, he shall do so under the terms and conditions of the current Drywall/Lathing Master Agreement between the Carpenters 46 Northern California Counties Conference Board and/or the NCCRC and the appropriate Drywall Contractors Association for the 46 Northern California Counties. However, drywall work which is incidental to the work of the individual employer may be performed under the terms and conditions of this Agreement.

Should an individual employer party to this Agreement perform work or subcontract work covered by the Pile Drivers, Divers, Carpenters, Bridge, Wharf and Dock Builders Agreement, the individual employer shall observe the terms and conditions of said Agreement.

Should an individual employer party to this Agreement perform work or subcontract work covered by the Bridge Structure and Highway Related Addendum, the individual employer shall observe the terms and conditions of said Addendum.

Should an individual employer party to this Agreement perform work or subcontract work covered by the Office Modular Systems Addendum, the individual employer shall observe the terms and conditions of the Office Modular Systems Addendum.

3

## Section 5
## Recognition Of Employer

The Union hereby recognizes the Employer as the sole and exclusive bargaining representative for their respective members, present and future, who are or hereafter become members.

## Section 6
## Employer Membership

This Agreement is made for and on behalf of and shall be binding upon all persons, firms or corporations under any name or style of doing business in the construction industry that, at the time of the execution of this Agreement are, or during the term hereof become, members of the Employer, in the area covered by this Agreement. A list of such individual employer members shall be furnished to the Union upon the execution of this Agreement, and thereafter shall be furnished to the Union not less often than once a month.

All individual employers shall be and remain liable under this Agreement for and during the term thereof, irrespective of whether such individual employers shall resign from membership in the Employer or withdraw from the Carpenter Multiemployer Bargaining Section prior to the expiration date of this Agreement, and such liability shall be deemed to have survived the termination of said membership or withdrawal and remain in force for and during the term of this Agreement. Such individual employers shall be bound by any amendments, modifications, supplements, changes, extensions or renewals of or to this Agreement unless such individual employer gives written notice to the Union not more than ninety (90) days nor less than sixty (60) days prior to July 1, 2008 or July 1 of any year in which this Agreement may terminate.

## Section 7
## Recognition of Union

The Union has requested recognition as the Section 9 (a) representative of the employees covered by this Agreement and has demonstrated or offered to demonstrate through authorization cards that it has the support of the majority of the employees. The Employer and each individual employer expressly acknowledge that they and each of them have satisfied themselves that the Union and/or each of its constituent bodies represents a majority of employees employed to perform bargaining unit work and agrees that the Union and or each of its constituents is the collective bargaining representative of such employees. The Employer an behalf of itself and each of its members and each individual employer specifically agrees that it and they are establishing or have established a collective bargaining relationship by this Agreement within the meaning of Section 9 (a) of the National Labor Relations Act of 1947, as amended. The Union is recognized as the sole and exclusive bargaining agent for itself, the NCCRC and all of its affiliated Local Unions.

## Section 8
## Independent Agreement

In the event the Union establishes special conditions for work covered by the Agreement, those special conditions shall be made available to the Employer or individual employers who wish to per-

4

form the designated work in the same locality as provided for in that immediate Area Agreement.

The Union will promptly notify the Employer in writing of any amendment, modification, exception or addendum to this Agreement which might be negotiated in any area covered by this Agreement between the Union, any individual employer or group of individual employers.

### Section 9
### Liability of the Parties

This Agreement is made for and on behalf of, and shall be binding upon all persons, firms and corporations, who at the time of execution of this Agreement are members of Employer, or subsequently become members of Employer as defined in Section 6. This Agreement is binding upon each individual employer regardless of whether or not the individual employer changes the name or style or address of the business. Each individual employer, corporate or other legal entity, or its successor as per Section 6, shall be liable, subject to, and bound by this Agreement. It is agreed that the wages, hours, and working conditions of this Agreement are the wages, hours, and working conditions in the area covered by this Agreement.

Except as may be provided in Section 2 of this Agreement, each employer individually signatory hereto waives any right that he or it may have to terminate, abrogate, repudiate, or cancel this Agreement during its term, during the term of any future modifications, changes, amendments, supplements, extensions, or renewals of or to said Master Agreement, or to file any Petition before the National Labor Relations Board seeking to accomplish such termination, abrogation, cancellation or repudiation.

### Section 10
### General Saving Clause

It is not the intent of either party hereto to violate any laws, rulings, or regulations of any governmental authority or agency having jurisdiction of the subject matter or of this Agreement, and the parties hereto agree that in the event any provision of this Agreement is finally held or determined to be illegal or void as being in contravention of any such laws, rulings or regulations, nevertheless, the remainder of this Agreement shall remain in full force and effect unless the parts so found to be void are wholly inseparable from the remaining portion of this Agreement. The parties agree that if and when any provisions of this Agreement are held or determined to be illegal or void they will then promptly enter into lawful negotiations concerning the substance thereof.

It is the intent of the parties to this Agreement that each and every, all and singular, of the provisions of this Agreement be fully in accordance with Federal and State Law. Its interpretation and the interpretation of each of the provisions of this Agreement are therefore intended to apply no broader than that permitted by law.

### Section 11
### No Discrimination

It is mutually agreed that the individual employer and the Union shall fully comply with all federal and state laws, including but not

5

limited to all of the provisions of Title 7 of the Civil Rights Act of 1964, as amended; the California Fair Employment and Housing Act, as amended; and the Americans with Disabilities Act of 1991, as amended to the end that no person shall, on the grounds of age, sex, race, color, national origin, sexual orientation, gender, ancestry, disability as defined by the Americans with Disabilities Act of 1991 and the California Fair Employment and Housing Act, or Vietnam Veteran status, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination by not having full access to the contents of this Agreement.

It is further agreed that no person or applicant for employment shall be discriminated against or shall have his/her employment relationship affected by reason of his/her age except as provided in the Trust Agreement, rules and regulations, and statements of procedure governing the Carpenters Training Committee for Northern California.

Nothing in this section and no grievance filed pursuant to this section shall be deemed a waiver of any individual worker's statutory rights provided by federal and/or state laws.

Throughout this Agreement, wherever the masculine gender appears, the feminine form applies equally and may be substituted therefore.

## Section 12
## Union Security

(1) Every person performing work covered by this Agreement who is a member of the Union and in the employment of an individual employer on work covered by this Agreement on the effective date of this Section 12 shall, as a condition of employment or continued employment, remain a member in good standing of the Union or the appropriate Local Union of the Union. Every other person covered by this Agreement and employed to perform work covered by this Agreement shall be required, as a condition of employment, to apply for and become a member of and to maintain membership in good standing in the Union or the appropriate Local Union of the Union which has territorial jurisdiction of the area in which such person is performing work on the expiration of eight (8) days of employment, continuous or cumulative, on such work following the beginning of such employment or the effective date of this Section 12, whichever is later. Membership in any Local Union shall be available to any such person on the same terms and conditions generally applicable to other members. If Federal Law is hereafter amended to permit a lesser requirement for union membership or union membership as a condition of employment than provided in this Section 12, the Employer and the Union will promptly enter into negotiations with regard to such subject.

(2) The individual employer shall not be required to discharge any employee pursuant to this Section 12 until a written notice from the appropriate Local Union of the Union of such employee's non-compliance with this Section 12, stating all pertinent facts showing such non-compliance, shall have been served upon such individual employer and two (2) working days shall have been allowed for compliance therewith.

(3) No person (owner, partner, or officer of any individual employer) shall be permitted to perform work covered by this Agreement unless such person is covered by all the provisions of this Agreement including the payment of all Trust Fund contributions; pro-

vided, however, that not more than one (1) owner may be permitted to work with the tools under the same conditions with the exception of Section 12 (1). This section shall not be interpreted so as to diminish work opportunity for employees covered by this Agreement.

Membership in good standing shall be defined as the tendering of uniform initiation fees and dues, including work fee.

## Section 13
## Union Representative

Union representatives shall be permitted at all times upon any place or location where any work covered by this Agreement is being, has been or will be performed.

Where there are visitation restrictions imposed at the jobsite by entities other than the individual employer, the individual employer will use his best efforts to provide access to the site by the union representative.

## Section 14
## Stewards

(1) A steward shall be a working journeyman employee, appointed by the Local Union or the NCCRC of the Union, who shall, in addition to his/her work as a journeyman be permitted to perform, during working hours, such of his/her Union duties as cannot be performed at other times. The Union agrees that such duties shall be performed as expeditiously as possible and the Employer agrees that stewards shall be allowed a reasonable amount of time for the performance of such duties. The Field Representative shall notify immediately the individual employer of the appointment of each steward to be confirmed by letter.

(2) No steward shall be laid off or terminated without concurrence of the appropriate Field Representative except for:

1. Proven dishonesty.

2. Excessive drinking.

3. Chronic failure to report for work.

4. Completion of the carpentry work on the job.

If a steward is discharged as permitted herein, written notice shall be given to the appropriate Local Union or the NCCRC defining the reasons for discharge.

(3) Application or violation of this Section shall be subject to Section 51 "Grievance Procedure."

## Section 15
## No Strike

Except as provided in this Section, there shall be no strike, lockout or work stoppage by any party hereto or any individual employer. The Union may withhold workers or picket the job of any individual employer who fails to pay wages or is in violation of the Piece Rate Prohibition or Trust Fund Contribution provisions of this Agreement. The Union may withhold workers of any subcontractor who fails to pay wages or is in violation of the Piece Rate Prohibition or Trust Fund Contribution provisions of this Agreement. The Union, with five (5) days written notice to the individual employer may withhold workers or picket the job of any individual employ-

7

er for violation of the Hiring Hall, Union Security or Subsistence provisions of this Agreement only if no dispute exists between the Employer and the Union concerning such alleged violation.

## Section 16
## Jurisdictional Disputes

There shall be no cessation or interference in any way with any work of the Employer or any individual employer by reason of Jurisdictional Disputes between the Union and any other union affiliated with the AFL-CIO or the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America with respect to jurisdiction over any of the work covered by this Agreement. Such disputes will be settled by the Unions themselves, or submitted to the International Presidents of the Unions involved in the dispute, for determination. Until such determination is made and confirmed by the disputing Unions, the work shall proceed as originally assigned by the individual employer. Craft jurisdiction is neither determined nor awarded by classifications or coverage descriptions appearing in this Agreement. The individual employer shall be bound by an agreement between the General Presidents.

## Section 17
## Picket Lines

The parties to this Agreement recognize that it is vital to the Unionized segment of the Construction Industry that the work opportunities of the employee and the individual employer signatory to this Agreement proceed without interruption because of disputes involving employers and/or unions not signatory to this Agreement.

The Union will not discipline, the individual employer will not permanently replace and the parties both agree not to threaten nor cause to be denied the rights of individual workers to respect primary picket lines established at or on the jobsites of the individual employer.

## Section 18
## Efficiency

It is agreed that the carpenters, through their field representatives, use their efforts to encourage greater efficiency on the job and that they refrain from the solicitation of premium payments for employees represented by the Union. The employees and the Union shall use their efforts to encourage greater efficiency compatible with sound construction practices on the job and shall refrain from the solicitation of premium payments for employees.

Except as provided in Section 50 (Work Preservation, Contracting and Subcontracting) hereof, neither party to this Agreement shall by working rules or any other means or device, impose or direct any work limitations affecting quantity restrictions, quotas or units of production, either maximum or minimum, relating to work covered by this Agreement.

No rules, customs or practices shall be permitted that limit production or increase the time required to do any work. There shall be no limitation or restriction of the use of machinery, tools or other labor-saving devices supplied by the individual employer.

## Section 19
## Safety

The Union shall cooperate (1) with the individual employer and with each other in carrying out all of the individual employer's safety measures and practices for accident prevention and (2) employees shall perform their duties in each operation in such a manner as to promote efficient operation of each particular duty and of any job as a whole. The Union and the Employer recognize that drug and alcohol abuse creates an unsafe and inefficient work place. The individual employer must post the name and address of their doctor and the compensation insurance carrier on the jobsite.

All Federal and State safety rules, regulations, orders and decisions shall be binding upon the individual employers and their employees and shall be applied to all work covered by this Agreement. No worker shall be required to work under unsafe conditions.

The individual employer shall be solely responsible for implementation and maintenance of such safety laws, rules, regulations, standards, orders and decisions. Neither the Union nor any Local Union or the NCCRC is responsible for such implementation or maintenance.

All safety equipment required by State or Federal regulations, including hard hats, shall be provided and maintained by the individual employer without cost to his employees. Upon termination the employee shall return such equipment to the individual employer.

## Section 20
## Pre-Job Conferences

(1) The individual employer shall at his option or at the option of the Union or the NCCRC call for a pre-job conference. If the Union or the NCCRC desires, it shall be entitled to a pre-job conference solely with the individual employer. The individual employer may include his subcontractors at such conference.

(2) The individual employer shall advise the Union or the NCCRC in writing, at all times of the names (including trade names and names of individual proprietors or partners who signed the subcontract) and addresses of all subcontractors or his subcontractors employed or to be employed or contracted with far services to be performed under this Agreement. Such written notice shall be made at the pre-job conference or ten (10) days prior to the commencement of work by any such subcontractor.

(3) The individual employer shall, upon request of the Union or the NCCRC, submit letters of past or present work assignment for purposes of clarifying questions of Union jurisdiction.

## Section 21
## Audit

Each individual employer upon request of the Union, the Employer, or any Trust Fund specified in this Agreement, shall permit the Trust Fund Auditors to review any and all records relevant to the enforcement of the provisions of this Agreement and to enter upon the premises of such individual employer during business hours at reasonable time or times to examine and copy such books, records, papers or reports of such individual employer as may be necessary to determine whether or not the individual employer is making full payment of all sums required by this Agreement. The

9

decision as to the relevancy of records shall be made by the Joint Delinquency Subcommittee and their decision shall be binding on all parties. Such review shall be permitted not less than ten (10) working days after demand. If the individual employer cancels an audit appointment without appropriate two (2) hours' notice to the auditor, the cost of such lost time by the auditor shall be borne by the individual employer.

The cost of audit shall be borne by the individual employer if a shortage disclosed by the audit exceeds $4,500.00 and is not the result of clerical error.

Trustees of the Trust Funds specified in this Agreement are authorized to determine the appropriate formula to be applied to compute appropriate Trust Fund contributions. The individual employer shall be required to comply with such Trust Fund formula and make payments to the Trust Funds immediately upon being advised of the amount due.

Any legal action to compel audit entry shall be filed in the Superior Court of the City and County of San Francisco, State of California, or the United States District Court for the Northern District of California.

Any individual employer who refuses audit entry shall pay all the legal fees and costs necessary for compliance of audit entry.

The Union has the right to withhold workers from any individual employer who refuses to make available relevant records necessary for the completion of the audit.

Information derived from the audit shall be confidential and used solely for the enforcement of this Agreement.

## Section 22
## Work Day

The work day shall be eight (8) hours worked between the hours of 8:00 A.M. and 4:30 P.M.

Upon submission of prior written notice by the individual employer to the appropriate District office of the NCCRC, the regular work day may be changed to eight (8) consecutive hours (exclusive of the lunch period) between 7:00 A.M. and 5:00 P.M. The regular work day may be changed to eight (8) consecutive hours (exclusive of the lunch period) between the hours of 6:00 A.M. and 3:00 P.M. by written approval of the appropriate District office of the NCCRC. Once the regular work day is changed, it shall be for no less than five (5) consecutive regular work days and may be changed only by written notification from the individual employer to the appropriate District office of the NCCRC.

The rate of pay for all hours worked other than the regular established work day shall be governed by Section 26, "Overtime."

Any employee who works more than five (5) hours without a meal period shall be paid for all work in excess of said five (5) hour period at the applicable overtime rate until a meal period is provided. (Such pay shall be reckoned by the hour and half-hour.)

Effective January 1, 2001, every individual employer shall authorize and permit all employees to take rest periods, which insofar as practicable, shall be in the middle of each work period. Nothing in this provision shall prevent an individual employer from staggering rest periods to avoid interruption in the flow of work and to maintain continuous operations, or from scheduling rest periods

to coincide with breaks in the flow of work that occur in the course of the work day. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time for every four (4) hours worked, or major fraction thereof. Rest periods shall take place at individual employer designated areas, which may include or be limited to the employee's immediate work area.

Rest periods need not be authorized in limited circumstances when the disruption of continuous operations would jeopardize the product or process of the work. However, the individual employer shall make-up the missed rest period within the same work day or compensate the employee for the missed ten (10) minutes of rest time at his or her regular rate of pay within the same pay period.

A rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

If an individual employer fails to provide an employee a rest period in accordance with the applicable provisions of this Section, the individual employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period was not provided.

All pay shall be reckoned by the day and half-day as follows: Employees who start work at the regular work day or shift shall receive four (4) hours pay or pay for actual hours worked, whichever is greater, regardless of the reason for the inability to complete the regular work day or shift. If the employee voluntarily quits, the employee shall receive pay only for actual hours worked.

Any dispute regarding the provisions of this Section shall be subject to Section 51 (Grievance Procedure) of this Agreement.

## Section 23
## Shift Work

Shift work can only be established upon prior notice from the individual employer to the Union and shall be performed as follows:

Except as provided below, where multiple shifts are worked, if the individual employer elects to work the day shift between the hours of 6:00 A.M. and 5:30 P.M., that shift shall work eight (8) hours and for such work they shall be paid the regular straight time rate for eight (8) hours; the second shift shall work seven and one-half (7-1/2) hours, and for such work they shall be paid the regular straight time rate for eight (8) hours; if a third shift is worked, they shall work seven (7) hours and for such work they shall be paid eight (8) hours regular straight time pay. No multiple shift shall be established or started for less than three (3) consecutive work days.

On tenant improvement or renovation projects in occupied buildings with a total contract value of five (5) million dollars or less, the individual employer may perform multiple shift operations on the basis of eight (8) hours pay for eight (8) hours work on all shifts at the regular straight-time rate.

Overtime rates shall be paid for all hours worked on the second or third shift if less than three (3) consecutive days are worked. The provisions of this Section 23 with regard to rates of pay for shift work shall apply solely to the portion of the job which requires shift operations.

11

When it is a condition of securing the work, a special single shift may be established that will be for no less than three (3) consecutive days, for off hours between Monday and Friday, and will allow for eight (8) hours pay for eight (8) hours work. Work in excess of eight (8) hours per day shall be subject to the overtime provisions of this Agreement.

All work in excess of eight (8) hours on Saturday and all work on Sundays and holidays shall be double time.

Payments or contributions to each of the Trust Funds provided for in this Agreement shall be based on hours worked or paid for, which include contributions for eight (8) hours per shift. No payment or contribution shall be computed at the rate of time and one-half or double the required rate of payments or contributions per hour, nor shall any such payments or contributions be considered part of the hourly wage rate for the purpose of computing overtime, either under this Agreement, the Fair Labor Standards Act, the Walsh-Healey Act or any other law.

On shift work (a) workers working a shift who come off work on Saturday morning at 8:00 A.M., are to be considered working Friday; (b) workers working a shift who come off work on Sunday morning at 8:00 A.M., are to be considered working Saturday; and (c) workers working a shift who come off work on Monday morning at 8:00 A.M., are to be considered working Sunday.

All regularly scheduled shift work performed on Saturday, Sunday and holidays, shall be in accordance with the overtime rates herein specified. All such work shall be performed under terms and conditions of this Section 23 as to hours worked and rate of pay.

## Section 24
## Work Week

The regular work week shall consist of forty (40) hours of work Monday through Friday. In the event that work cannot be performed Monday through Friday because of inclement weather or major mechanical breakdown, employees may voluntarily make up such day on Saturday and shall be paid at the applicable straight time rates. As a courtesy, the individual employer shall advise the appropriate District office of the NCCRC whenever it intends to implement the Saturday make-up day. (The NCCRC district office phone numbers are as follows: Northern (916) 498-1002, Southern (408) 445-3000, and Central (510) 568-4788.)

On Residential projects as described in Appendix C, "Residential Addendum" the work week shall remain as contained therein.

## Section 25
## Holidays

The following are nationally recognized holidays covered by this Agreement: New Year's Day, Martin Luther King Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, the Friday following Thanksgiving Day, and Christmas Day. If any of the above holidays fall on Sunday, the Monday following shall be observed as the holiday.

The parties have agreed that the following four (4) days of each year will be selected by the Union as designated off/holidays:

2003: Friday, February 14th; Friday, May 23rd; Friday, August 29th; Friday, December 26th.

004: Friday, January 2nd; Friday, May 28th; Friday, September rd; Friday, December 24th.

005: Friday, February 18th; Friday May 27th; Friday July 1st; riday, September 2nd.

006: Friday, February 17th; Friday May 26th; Monday, July 3rd; riday, September 1st.

007: Friday, May 25th; Friday, August, 31st; Monday, December 4th; Monday, December 31st.

:008: Friday, February 15th; Friday, May 23rd; Friday, August :9th; Friday, December 26th.

The four designated off holidays shall be governed by Section 26 Overtime).

## Section 26
## Overtime

A.   On all building construction, the first two (2) hours prior to he start of the regular or approved day or the first four (4) hours after the end of the approved or regular work day, not to exceed a otal of four (4) hours in any one (1) work day shall be paid at time and one-half.

Time and one-half shall be paid for the first eight (8) hours worked on Saturdays.

Time and one-half shall be paid for the first eight (8) hours worked on the four designated off/collectively bargained holidays.

Double time shall be paid on all other holidays referenced in Section 25 (Holidays).

All other time shall be paid at double the straight-time rate.

B.   On all heavy, highway and engineering construction, including but not limited to the construction, improvement, modification, and demolition of all or any part of streets, highways, bridges, viaducts, railroads, tunnels, airports, water supply, irrigation, flood control and drainage systems, sewers and sanitation projects, dams, power houses, refineries, aqueducts, canals, river and harbor projects, wharves, docks, breakwaters, jetties, quarrying of breakwater or riprap stone, or operations incidental to such heavy construction work; all overtime worked, other than on Sundays and nationally recognized holidays covered by this Agreement shall be at time and one-half the regular straight time rate. All overtime worked on Sundays and nationally recognized holidays covered by this Agreement shall be at double the regular straight time rate. The first eight (8) hours worked on the four (4) designated off/collectively bargained holidays shall be at time and one-half the regular straight time rate.

## Section 27
## Parking

In the event free parking facilities are not available within 1320 feet (measured by the most direct route on a dedicated vehicular public thoroughfare) of a jobsite, the individual employer will provide such facilities and the individual employer shall have the right to designate parking areas to be used. Where, because of congested parking conditions, it is necessary to use public facilities, the individual employer shall reimburse the employee for the cost of such parking upon being presented with a receipt or voucher certi-

13

fying to the cost thereof, such reimbursement to be made on a week-
ly basis or at the conclusion of the project, whichever occurs earli-
er. Designated parking area shall be drained and hard surface.

## Section 28
## Tools

Carpenters and apprentices shall furnish their own tools, but shall
not furnish, rent or lease horses, ladders, mitre boxes, electric drills,
automotive equipment to be used for the purpose of hauling or deliv-
ering individual employer's materials or equipment, or any kind of
power operated machines or saws. Each employee shall arrive on
the job with tools in proper condition. To implement this section, the
individual carpenter shall provide a toolbox with a lock. If necessary
the employee shall be allowed a reasonable amount of time during
the work week to sharpen tools on the individual employer's time.

The individual employer shall provide a reasonably secure place
where his employees may keep their tools. Where ten (10) or more
carpenters are employed on any one (1) job or project the individ-
ual employer shall provide a separate tool house, or a separate
compartment of a tool house under lock and key, for the exclusive
use of carpenters. Failure on the part of the individual employer to
comply with the provisions hereof shall be referred to the Joint
Adjustment Board. If any individual employee's full kit of working
tools is lost by reason of fire or theft while in the individual employ-
er's care, the individual employer shall reimburse the employee for
such loss up to a maximum of $500.00. Within two (2) working
days from the date of claim for loss of tools as provided herein, the
individual employer shall acknowledge liability therefore or reject
the claim.

## Section 29
## Pickup Time

A carpenter shall be entitled to pickup time, which shall not be
less than five (5) or more than fifteen (15) minutes at the end of
each work day, the particular amount of such pickup time depend-
ing upon accessibility to the area to which the employee is
assigned. The amount of pickup time shall be determined by mutu-
al agreement at a jobsite conference between representatives of the
individual employer and the Union.

## Section 30
## Show Up Time, Termination Pay and Discharge

Other than on the first (1st) day of dispatch, in which case two
(2) hours shall apply, workers who report for work, for whom no
employment is provided, shall be entitled to four (4) hours' pay,
except where bad weather conditions beyond the control of the indi-
vidual employer prevents employment.

Payments of contributions to each of the Trust Funds provided for
in this Agreement shall be made with respect to payments required
by this Section 30.

Except as hereinafter provided, carpenters who start work, but
are discharged between the hours of 8:00 A.M. and 12:00 noon,
shall receive four (4) hours' pay; carpenters starting work at 8:00
A.M. who are discharged between the hours of 12:00 noon and
4:30 P.M. shall receive pay only for hours worked.

Carpenters discharged on the first (1st) day of employment for inefficiency, insubordination or intoxication, shall receive pay only for hours worked. Carpenters who voluntarily quit shall receive pay only for hours worked.

DISCHARGED EMPLOYEE. Employees receiving notice of termination for any reason shall be allowed a reasonable time (not less than fifteen (15) minutes) before the end of the regular work day to assemble their tools in addition to the normal pickup time prevailing on the job.

After forty (40) hours of employment, the individual employer may discharge any employee for just cause only. Just cause is subject to Section 51, the grievance and arbitration provision of this Agreement. The individual employer during the first forty (40) hours of employment may reject or discharge any employee for any reason.

Discharge for cause shall be in writing to the employee.

### Section 31
### Payment of Wages

An employee who works the full designated work week shall receive on the last day of that work week pay for not less than the number of hours worked on the Monday of that same work week.

Each individual employer shall provide with each payroll check an itemized check stub showing separately the date of issuance, each contribution and deduction made from the payroll period covered by the check or a separate statement showing the name of the employee, the name and the individual employer's contractor's license number and/or address and the employee's social security number. There shall be no cash payment of any nature or kind whatsoever. Payment by cash or second or multiple checks or combination thereof and the payment of excessive premium rates, excessive travel time or bonuses shall be prima facie evidence of an attempt to violate the provisions of this Section 31.

Should an individual employer compensate an employee with a check for which payment is refused by the individual employer's bank because of insufficient funds, or should an individual employer fail to pay his employees on the regular, established pay day for his job, the obligation of the individual employer to the individual employee shall continue at the employee's regular straight time rate for a period not to exceed forty (40) hours, notwithstanding the above, unless the refusal of payment by the bank is due to the bank's error or omission or to circumstances which are beyond the control of the individual employer. Any question concerning responsibility of the individual employer on whether the omission is beyond his control shall be subject to the grievance procedure of this Agreement. Nothing herein shall, however, prevent the individual employer from changing his payroll date upon five (5) days' notice to the appropriate Local Union of the Union that the employee's pay date is being changed.

If terminated by the individual employer for any reason the employee shall be paid immediately in full. His pay status shall continue for each calendar day until pay is received; provided, however, that not more than eight (8) hours pay shall be charged for any calendar day with a maximum of five (5) days.

## Section 32
## Prohibition of Piece Work

No person shall be employed in work covered by this Agreement at piece rates or under any system of bonus pay. Payments by cash or second or multiple checks or combination thereof and/or the payment of excessive travel time, bonuses or other payments as "Travel Pay" or "Subsistence," where not required or permitted by this Agreement, shall be prima facie evidence of a violation of this Agreement.

If at the time of an audit, piece work or bonus payments are discovered, those amounts will be subject to the conversion formula as set forth in Section 21 (Audit). The foregoing shall not apply to an annual bonus paid to supervisors.

## Section 33
## Nonunion Fabricated Materials

To the extent permitted by law, the individual employer will not require Carpenters to handle nonunion fabricated materials.

## Section 34
## Injury

Employees who are, as a result of industrial injury, unable to complete a full day's work, shall nevertheless be paid for the full day on which such injury occurred; provided the attending physician has certified to the employee's inability to complete his/her regular assigned work on that day of such injury.

An industrial injury shall not be cause for discharge and on applicant for employment shall not be rejected because of prior industrial injury, provided that any such prior industrial injury has not caused the applicant to be incapable of satisfactorily performing the duties and functions required by the job to which he/she is assigned or would be assigned.

## Section 35
## Document Signing

No employee or applicant for employment will be required as a condition of employment or continued employment to sign any document not required by law.

## Section 36
## Subcontractor Records

On residential construction, excluding alteration and repair, the individual employer shall keep a record of all hours worked by persons performing work covered by this Agreement for each subcontractor on each separate job or project.

It is recognized and acknowledged that with respect to certain subcontracted functions such as installation of stairways, formica tops, and marlite, it would be difficult and impractical to record the precise hours worked at such function. On such work the individual employer shall make an estimate of the hours worked by the installing subcontractor. These records shall be submitted monthly to the Trust Funds specified in this Agreement.

## Section 37
## Bonding

The Union may require of any individual employer who is delin-
quent in Trust Fund contributions and/or whose payroll checks have
been returned for insufficient funds ("bounced"), that such individ-
ual employer be required to provide a bond not less than
$5,000.00 or more than $75,000.00 at the option of the Union or
Trust Fund to insure payment of his payroll and/or Trust Fund con-
tributions. An acceptable letter from responsible party or joint
checks may be substituted for bond requirement. It shall not be a
violation of this Agreement for the Union to withdraw carpenters
from the job(s) of such individual employer who may upon demand
and notice, fail or refuse to present such bond to the Carpenter
Funds Administrative Office, 265 Hegenberger Road, Suite 100,
Oakland, California 94621-1480. In the event the defaulting indi-
vidual employer is a subcontractor of a prime contractor signatory
hereto, the latter will be notified and given opportunity to post bond
as herein provided prior to the withdrawal of carpenters from the
job(s); provided, however, the bonding company is approved by
the Carpenter Funds Administrative Office for Northern California,
Inc.

## Section 38
## Appendices

The following appendices attached to this Carpenters Master
Agreement are incorporated herein and shall be part of this
Agreement as though fully set forth herein: Subsistence (Appendix
A), Millwrights (Appendix B), Residential (Appendix C), Insulators
(Appendix D), Millmen (Appendix E), Scaffold Erection (Appendix
F) and Bridge Structure and Highway Related (Appendix G).

## Section 39
## Wage Rates

The following shall be the classifications and minimum hourly
rates during the term of this Agreement for the effective dates noted
and in the areas listed.

A.Nine (9) Counties Area consisting of the following counties:

Alameda, Contra Costa, Marin, Napa, San Francisco, San
Mateo, Santa Clara, Solano and Sonoma:

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 30.75 |
| Bridge Builders | 30.75 |
| Hardwood Floorlayers | 30.90 |
| Shinglers | 30.90 |
| Power Saw Operators | 30.90 |
| Steel Scaffold & Steel Sharing Erectors | 30.90 |
| Saw Filers | 30.90 |
| Millwrights | See Appendix B |

B.Thirty-Four (34) Counties Area consisting of the following
counties:

Alpine, Amador, Butte, Calaveras, Colusa, Del Norte, El Dorado,
Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Mariposa,
Mendocino, Merced, Modoc, Nevada, Placer, Plumas, Sacramento,
San Joaquin, Shasta, Sierra, Siskiyou, Stanislaus, Sutter, Tehama,
Trinity, Tulare, Tuolumne, Yolo and Yuba:

17



1. Effective July 1, 2003, the following journeyman wage rates shall apply to projects with a total project value of less than twenty-five million dollars ($25,000,000) and to projects which are not covered under the provisions of Section 39 B(2) or B(3) below:

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 23.52 |
| Bridge Builders | 29.59 |
| Hardwood Floorlayers | 23.67 |
| Shinglers | 23.67 |
| Power Saw Operators | 23.67 |
| Steel Scaffold & Steel Shoring Erectors | 23.67 |
| Saw Filers | 23.67 |
| Millwrights | See Appendix B |

2. Effective July 1, 2003, the following journeyman wage rates shall apply on new public and private projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after the effective date of this Agreement and prior to July 1, 2004, with the exception of wood frame residential construction of three (3) stories or less. These rates shall not apply to public works projects until such time as these rates have been incorporated in the applicable prevailing wage determinations. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 B(4) shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 27.02 |
| Bridge Builders | 30.75 |
| Hardwood Floorlayers | 27.17 |
| Shinglers | 27.17 |
| Power Saw Operators | 27.17 |
| Steel Scaffold & Steel Shoring Erectors | 27.17 |
| Saw Filers | 27.17 |
| Millwrights | See Appendix B |

3. Effective July 1, 2003, the following journeyman wage rates shall apply for the duration of the project to projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after August 1, 1999 and prior to the effective date of this Agreement or, for public works projects, as required by the applicable prevailing wage determination. These rates shall not apply to wood frame residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 B(4) shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 30.75 |
| Bridge Builders | 30.75 |
| Hardwood Floorlayers | 30.90 |
| Shinglers | 30.90 |
| Power Saw Operators | 30.90 |
| Steel Scaffold & Steel Shoring Erectors | 30.90 |
| Saw Filers | 30.90 |
| Millwrights | See Appendix B |

18

4.  25/50 Million Dollars Defined:

The Employer shall meet and confer with the Union prior to the bid and/or execution of negotiated contract to jointly determine the appropriate rate. Employers failing to participate in this process shall incur monetary liability should it later be determined that the $25/50 million dollar threshold was surpassed.

**Private Bid and Negotiated Work:** In all scenarios, the following Divisions shall be considered "traditionally included work". Customarily included items, supplied by the owner shall be included when defining the applicability of the $25/50 million dollar threshold.

Division 1 - General Requirements
Division 2 - Site Work & Demolition
Division 3 - Concrete
Division 4 - Masonry
Division 5 - Metals
Division 6 - Wood & Plastics
Division 7 - Thermal & Moisture Protection
Division 8 - Doors & Windows
Division 9 - Finishes
Division 10 - Specialties
Division 11 - Equipment
Division 12 - Furnishings
Division 13 - Special Construction
Division 14 - Conveying Systems
Division 15 - Mechanical
Division 16 - Electrical

**Equipment:** Equipment, which is integral to the function of the building, customarily furnished and/or installed by the contractor shall be included in the determination of the total base bid value.

**Phased Projects:** Where the work is phased under a single contract, the cumulative total of the contract shall determine the total base value.

**Public Work:** The parties to the agreement shall meet and confer and failing to reach an agreement shall request the awarding body, its designee and/or the Department of Industrial Relations to issue a determination of the project value. If the awarding body fails to issue a determination, the total base bid (excluding alternates) shall govern.

C. Three (3) Counties Area consisting of the following counties:

Monterey, San Benito and Santa Cruz:

1.  Effective July 1, 2003, the following journeyman wage rates shall apply to projects with a total project value of less than twenty-five million dollars ($25,000,000) and to projects which are not covered under the provisions of Section 39 C(2) or C(3) below:

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 24.87 |
| Bridge Builders | 29.87 |
| Hardwood Floorlayers | 25.02 |
| Shinglers | 25.02 |
| Power Saw Operators | 25.02 |
| Steel Scaffold & Steel Shoring Erectors | 25.02 |
| Saw Filers | 25.02 |
| Millwrights | See Appendix B |

2.  Effective July 1, 2003, the following journeyman wage rates shall apply on new public and private projects with a total base bid

19

project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after the effective date of this Agreement and prior to July 1, 2004, with the exception of wood frame residential construction of three (3) stories or less. These rates shall not apply to public works projects until such time as these rates have been incorporated in the applicable prevailing wage determinations. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 C(4) shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 28.37 |
| Bridge Builders | 30.75 |
| Hardwood Floorlayers | 28.52 |
| Shinglers | 28.52 |
| Power Saw Operators | 28.52 |
| Steel Scaffold & Steel Shoring Erectors | 28.52 |
| Saw Filers | 28.52 |
| Millwrights | See Appendix B |

3.    Effective July 1, 2003, the following journeyman wage rates shall apply for the duration of the project to projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after August 1, 1999 and prior to the effective date of this Agreement or, for public works projects, as required by the applicable prevailing wage determination. These rates shall not apply to wood frame residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 C(4) shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Carpenters | 30.75 |
| Bridge Builders | 30.75 |
| Hardwood Floorlayers | 30.90 |
| Shinglers | 30.90 |
| Power Saw Operators | 30.90 |
| Steel Scaffold & Steel Shoring Erectors | 30.90 |
| Saw Filers | 30.90 |
| Millwrights | See Appendix B |

4.    25/50 Million Dollars Defined:

The Employer shall meet and confer with the Union prior to the bid and/or execution of negotiated contract to jointly determine the appropriate rate. Employers failing to participate in this process shall incur monetary liability should it later be determined that the $25/50 million dollar threshold was surpassed.

**Private Bid and Negotiated Work:** In all scenarios, the following Divisions shall be considered "traditionally included work". Customarily included items, supplied by the owner shall be included when defining the applicability of the $25/50 million dollar threshold.

Division 1 - General Requirements
Division 2 - Site Work & Demolition
Division 3 - Concrete
Division 4 - Masonry
Division 5 - Metals

Division 6 - Wood & Plastics
Division 7 - Thermal & Moisture Protection
Division 8 - Doors & Windows
Division 9 - Finishes
Division 10 - Specialties
Division 11 - Equipment
Division 12 - Furnishings
Division 13 - Special Construction
Division 14 - Conveying Systems
Division 15 - Mechanical
Division 16 - Electrical

**Equipment:** Equipment, which is integral to the function of the building, customarily furnished and/or installed by the contractor shall be included in the determination of the total base bid value.

**Phased Projects:** Where the work is phased under a single contract, the cumulative total of the contract shall determine the total base value.

**Public Work:** The parties to the agreement shall meet and confer and failing to reach an agreement shall request the awarding body, its designee and/or the Department of Industrial Relations to issue a determination of the project value. If the awarding body fails to issue a determination, the total base bid (excluding alternates) shall govern.

D.   Fringe Benefit Hourly Rates - Entire 46 Counties Area

(July 1, 2003 through June 30, 2004)

| Effective dates: | 7-01-03 | 8-01-03 | 3-01-04 |
|---|---|---|---|
| Health & Welfare | 4.305 | 4.305 | 4.305 |
| Pension | 2.85 | 2.85 | 2.85 |
| Carpenters Annuity | 2.00 | 2.00 | 2.00 |
| Vacation (Carpenters) | 1.80 | 1.80 | 1.80 |
| Work Fee | .97 | .48 | .97 |
| Training | .33 | .33 | .33 |
| Industry Promotion (CEA members only) | .05 | .00 | .05 |
| Industry Promotion (Memorandum Employers only) | .09 | .00 | .09 |
| UBC Health & Safety Fund | .04 | .00 | .04 |
| Carpenters Work Preservation | .06 | .00 | .06 |
| Carpenter Employers Contract Administration | .07 | .00 | .07 |

See Appendix B for Millwright fringe benefit rates.

E.   Future Wage and/or Fringe Benefit Considerations: (2004-2008)

July 1, 2004

In the Forty-six (46) Counties Area, One dollar and Seventy-five cents ($1.75) per hour increase to be allocated as follows: Fifty cents ($.50) to be allocated to Wages; One dollar and fifty cents ($1.50) to be allocated to Health & Welfare; Fifteen cents ($.15) to be allocated to Pension; Five cents ($.05) to be allocated to Training; Vacation shall be decreased by Twenty cents ($.20) and Annuity shall be decreased by Twenty-five cents ($.25).

The Union reserves the right to reallocate wage and fringe benefit amounts, excluding pre-allocated Health & Welfare amounts.

In the Thirty-four (34) Counties and Three (3) Counties

Areas for projects with a total base bid project value of fifty million dollars ($50,000,000) or more that are bid or negotiated on or after July 1, 2004 and prior to July 1, 2007 or, for public works projects, as required by the applicable prevailing wage determination, wage rates for the duration of the project shall be three dollars and fifty cents ($3.50) per hour above the applicable Thirty-four (34) Counties or Three (3) Counties wage rates as set forth in Section 39 B (1) and C (1), except for the Bridge Builder classification. In addition, the scheduled increases set forth in this Section E shall apply to such projects. These rates shall not apply to wood frame residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the fifty million dollar ($50,000,000) threshold. In addition, the provisions of Section 39 B(4) and C(4) shall apply in determining "the total base bid project value."

July 1, 2005 ·

In the Forty-Six (46) Counties Area, Two dollars ($2.00) per hour increase to be allocated as follows: One dollar ($1.00) to be allocated to Wages; Twenty-five cents ($.25) to be allocated to Health & Welfare and up to an additional twenty-five cents ($.25) shall be allocated to Health & Welfare from the total two dollars ($2.00) per hour increase, if needed to maintain existing benefits, provided an additional matching amount of up to twenty-five cents ($.25) shall be contributed to the Health & Welfare Trust Fund by Individual Employers*; Twenty cents ($.20) to be allocated to Pension; Five cents ($.05) to be allocated to Vacation; and Twenty-five cents ($.25) to be allocated to Annuity and/or Health & Welfare.

*The bargaining parties shall rely upon the recommendation of the Health & Welfare Board of Trustees as to the amount of increase needed, and enact same. The maximum total increase, effective July 1, 2005 shall be Two dollars and Twenty-five cents ($2.25) per hour, excluding any increases to Work Fee pursuant to Section 43-A of this Agreement.

The Union reserves the right to reallocate wage and fringe benefit amounts, excluding pre-allocated Health & Welfare amounts.

July 1, 2006

In the Forty-Six (46) Counties Area, Two dollars ($2.00) per hour increase to be allocated as follows: One dollar ($1.00) to be allocated to Wages; Fifty cents ($.50) to be allocated to Health & Welfare; Fifteen cents ($.15) to be allocated to Pension; Five cents ($.05) to be allocated to Vacation; Five cents ($.05) to be allocated to Training; and Twenty-five cents ($.25) to be allocated to Annuity and/or Health & Welfare.

The Union reserves the right to reallocate wage and fringe benefit amounts, excluding pre-allocated Health & Welfare amounts.

July 1, 2007

In the Forty-Six (46) Counties Area, Two dollars and Fifty

cents ($2.50) per hour increase to be allocated as follows: One dollar ($1.00) to be allocated to Wages; Twenty-five cents ($.25) to be allocated to Health & Welfare and up to an additional twenty-five cents ($.25) shall be allocated to Health & Welfare from the total two dollars and fifty cents ($2.50) per hour increase, if needed to maintain existing benefits, provided an additional matching amount of up to twenty-five cents ($.25) shall be contributed to the Health & Welfare Trust Fund by Individual Employers*; Twenty cents ($.20) to be allocated to Pension; Five cents ($.05) to be allocated to Vacation; Twenty-five cents ($.25) to be allocated to Annuity and/or Health & Welfare; and Fifty cents ($.50) to be allocated to the Building Industry Trust.

*The bargaining parties shall rely upon the recommendation of the Health & Welfare Board of Trustees as to the amount of increase needed, and enact same. The maximum total increase effective July 1, 2007 shall be Two dollars and Seventy-five cents ($2.75) per hour, excluding any increases to Work Fee pursuant to Section 43-A of this Agreement.

The Union reserves the right to reallocate wage and fringe benefit amounts, excluding pre-allocated Health & Welfare amounts.

When an individual project encompasses two (2) geographic wage areas, the higher of the two (2) wage rates shall apply to the entire project.

F.   Apprentice Wage Percentage Schedule:

The wage rates for apprentices shall be the following percentages of the applicable journeyman classification in the appropriate geographical area. Effective July 1, 2003, fringe benefit increases will no longer be automatic, based on calendar months from an apprentice's indenture or re-indenture date. Wage and fringe benefit increases for all apprentices shall be governed by the individual Joint Apprentice Training Committees (based on calendar months, work hours and completion of mandatory training classes), provided no apprentice shall suffer a reduction in fringe benefits, effective July 1, 2003.

First Period: 0 to 6 months . . . . . . . . . . . . . . . . . . . . . . 60%
Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Carpenter Employers Contract Administration

Second Period: 7 to 12 months . . . . . . . . . . . . . . . . . . . . 65%
Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Carpenter Employers Contract Administration

Third Period: 13 to 18 months . . . . . . . . . . . . . . . . . . . . 70%
Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration

Fourth Period: 19 to 24 months . . . . . . . . . . . . . . . . . . . 75%
Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration

Fifth Period: 25 to 30 months . . . . . . . . . . . . 80% Full Fringes

Sixth Period: 31 to 36 months. . . . . . . . . . . . 85% Full Fringes

Seventh Period: 37 to 42 months . . . . . . . . . . 90% Full Fringes

Eighth Period: 43 to 48 months . . . . . . . . . . . 95% Full Fringes

The following conditions shall be applicable to the classification "Power Saw Operators" and "Steel Scaffold Erectors and/or Steel Shoring Erectors":

(1) If an employee is hired initially as a Power Saw Operator or as a Steel Scaffold Erector and/or Steel Shoring Erector, he shall receive the rate for such classification until he is assigned to work in another classification.

(2) If an employee already employed on a job is assigned to perform Power Saw Operating duties or Steel Scaffold and/or Steel Shoring Erecting duties, he shall receive the rate of the Power Saw Operator classification or the Steel Scaffold Erector and/or Steel Shoring Erector's classification, as the case may be, for the actual hours worked in such classifications.

(3) The operation of a hand-operated skill saw shall not be considered as the performance of Power Saw Operating duties and shall not carry the rate for the Power Saw Operator classification.

(4) Men working from Bos'n chairs, swinging scaffolds, or suspended from a rope, cable, or from a safety belt or any device used as a substitute for in lieu thereof shall receive fifty cents ($.50) per hour above the applicable journeyman or apprentice rate.

The premium specified in this section shall be reckoned by the hour.

When an employee uses survey instruments he shall receive not less than the rate of pay for his regular classification.

Provisions concerning special conditions for Millwrights are set forth in Appendix B of this Agreement and are a part thereof.

The term "Journeyman Carpenter" as used herein means an employee who is qualified by experience and ability to perform work with carpenters' tools, carpenters' level and other such tools or survey instruments as are normally used by carpenters in the performance of carpenters' work.

The foregoing shall be applicable to all work in connection with the building and erection of timber trusses. The framing, assembling and building of the trusses, the raising and putting them in place and the rigging and signaling when power equipment is used are all under the jurisdiction of the United Brotherhood of Carpenters.

The term "Apprentice Carpenter" as used herein means an employee as defined from time to time as an apprentice in the Apprenticeship Standards for the Carpentry Trade in the 46 Counties, who shall be permitted to perform any work done by a journeyman carpenter. The term of apprenticeship shall not exceed a period of four (4) years. It shall be a contractual obligation of contractors party to this Agreement, to re-employ apprentices laid off due to lack of work before employing new apprentices.

An individual employer shall employ apprentices only in accordance with the provisions of this Agreement and the applicable rules and regulations of the Carpenters Training Committee and the Apprenticeship Standards.

An individual employer who is entitled to employ apprentices may employ not more than one (1) apprentice for the first two (2) journeymen regularly employed by him and not more than one (1) additional apprentice for each three (3) additional journeymen employed by him. The first apprentice may not be employed until at least two (2) journeymen are regularly employed by the individual employer. Any individual employer employing five (5) journeymen shall, while employing five (5) journeymen, also employ at least one

24

(1) apprentice. For each additional five (5) journeymen then in his employ, he shall employ at least one (1) additional apprentice.

FOREMAN: If the individual employer determines to use any foremen, they shall be paid one dollar and fifty cents ($1.50) an hour above the current journeyman's wage rate. Effective July 1, 2000, if the individual employer determines to use any foremen, they shall be paid ten percent (10%) above the appropriate journeyman's wage rate. The individual employer shall have the right to determine, in his sole and unlimited discretion, the need for any number of foremen. There shall be a minimum of one (1) foreman for each permanent shop maintained by specialty contractors and/or prime contractors hiring more than three (3) journeymen carpenters.

GENERAL FOREMAN: The rate for general foremen shall be twenty percent (20%) above the straight time rate for foremen. Whether an employee shall be designated general foreman, the person who shall be so designated and the specific assignment for such person shall be within the sole and exclusive judgment of the individual employer and such determination to appoint a general foreman, or not to do so, shall not be subject to the Grievance Procedure (Section 51) of this Agreement.

No person shall be employed in work covered by this Agreement at piece rates or under any system of bonus pay. Excessive amounts paid as hourly wages or under the guise of "travel pay" or "subsistence," where not required or permitted by this Agreement, shall be prima facie evidence of a violation of this Agreement. The foregoing shall not apply to an annual bonus paid to Supervisors.

## Section 40
## Health and Welfare

Each individual employer covered by this Agreement shall contribute to the Carpenters Health and Welfare Trust Fund for California, the amount listed in Section 39 (Wage Rates) for each hour paid for or worked, whichever is greater, by each employee covered by this Agreement for the purpose of providing Health and Welfare benefits for such employees.

Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated March 4, 1953, as such has been or may from time to time be amended or supplemented.

There shall be no duplicating contribution with respect to any employee or the work of any employee.

Individual employer contributions for a foreman and general foreman covered by this Agreement shall be based upon the hourly contribution rate in effect for journeymen in the particular jurisdiction where they are employed. For purposes of interpreting and applying this section, such Trust Fund contributions shall not be considered as compensation.

The total number of hours worked by each employee in each month, for which contributions are made to this Trust Fund, shall be reported by the individual employer to this Trust Fund.

## Section 41
## Pension Plan

Each individual employer covered by this Agreement shall contribute to the Carpenters Pension Trust Fund for Northern California

25

the amount listed in Section 39 (Wage Rates) for each hour paid for or worked, whichever is greater, by each employee covered by this Agreement, for the purpose of providing Pension benefits for such employees. Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated August 19, 1958, as such has been or may from time to time be amended or supplemented. The Union and the Employer agree that this plan is a Defined Benefit Plan.

There shall be no duplicating contribution with respect to any employee or the work of any employee.

Individual employer contributions for a foreman and general foreman covered by this Agreement shall be based upon the hourly contribution rate in effect for journeymen in the particular jurisdiction where they are employed. For purposes of interpreting and applying this section, such Trust Fund contributions shall not be considered as compensation.

The total number of hours worked by each employee in each work month, for which contributions are made to this Trust Fund, shall be reported by the individual employer to this Trust Fund.

## Section 42
## Annuity Plan

Each individual employer covered by this Agreement shall contribute to the Carpenters Annuity Trust Fund for Northern California the amount listed in Section 39 (Wage Rates) for each hour paid for or worked, whichever is greater, by each employee covered by this Agreement, for the purpose of providing Annuity benefits for such employees. Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated August 1, 1981, as such has been or may from time to time be amended or supplemented. The Union and the Employer agree that this Plan is and has been a Defined Contribution Plan.

There shall be no duplicating contribution with respect to any employee or the work of any employee.

Individual employer contributions for a foreman and general foreman covered by this Agreement shall be based upon the hourly contribution rate in effect for journeymen in the particular jurisdiction where they are employed. For purposes of interpreting and applying this section, such Trust Fund contributions shall not be considered as compensation.

The total number of hours worked by each employee in each work month, for which contributions are made to this Trust Fund, shall be reported by the individual employer to this Trust Fund.

## Section 43
## Vacation and Holiday Plan

Each individual employer covered by this Agreement shall contribute to the Carpenters Vacation and Holiday Trust Fund for Northern California the amount listed in Section 39 (Wage Rates) for each hour paid for or worked, whichever is greater, by each employee covered by this Agreement, for the purpose of providing Vacation and Holiday benefits for such employees. Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated May 1, 1972, as such has been or may from time to time be amended or supplemented.

26

There shall be no duplicating contribution with respect to any employee or the work of any employee.

Individual employer contributions for a foreman and general foreman covered by this Agreement shall be based upon the hourly contribution rate in effect for journeymen in the particular jurisdiction where they are employed. For purposes of interpreting and applying this section, such Trust Fund contribution shall be considered as compensation.

The total number of hours worked by each employee in each work month, for which contributions are made to this Trust Fund, shall be reported by the individual employer to this Trust Fund.

The parties agree that up to o maximum of $100,000 in any one calendar year shall be provided to insure employer contributions to the Vacation and Holiday Fund, which after all practical legal and administrative means of collection available to the Fund and the Union have been exhausted, have been declared uncollectible by the Joint Delinquency Committee of the Northern California Carpenter Trust Funds. Of this amount, up to $50,000 shall be provided by the Union; and up to $50,000 shall be provided by the Construction Industry Advancement Fund and the California Construction Advancement Program, in proportion to the amount of contributions received in the calendar year by such Fund and Program, respectively.

## Section 43-A
## Work Fee

Effective for oll work performed on and after July 1, 1998, it is agreed that upon written authorization, provided by the Union, as required by low, the amount designated below shall be deducted from the Vacation and Holiday benefit of each worker and remitted directly to the Union, or the appropriate Local Union or the NCCRC of the Union, as the Union may from time to time direct. The amount of the deduction shall be specified on a statement transmitted to the worker. Such remittance shall be made to the Union not less than twelve (12) times per year.

Effective July 1, 1998, the amount to be paid by the 46 Counties Supplemental Dues option, in connection with the Vacation and Holiday contribution shall be an amount equal to two and one-fourth percent (2 1/4%) of the total hourly wage-fringe benefit package of the highest carpenter journeyman classification as defined in the Nine (9) Counties Area in this Agreement (excluding Industry Promotion, Contract Administration, and Construction Industry Advancement Fund contributions) in effect on July 1, 1998 or to be in effect July 1, of each succeeding year, to be effective July 1, of such succeeding year.

Effective July 1, 2003, the term "Supplemental Dues" shall be changed to "Work Fee."

Effective July 1, 2004, the amount to be paid by the 46 Counties Work Fee option, in connection with the Vacation and Holiday contribution shall be an amount equal to two and three eighths percent (2.375%) of the total hourly wage-fringe benefit package of the highest carpenter journeyman classification as defined in the Nine (9) Counties Area in this Agreement (excluding Industry Promotion, Contract Administration, and Construction Industry Advancement Fund contributions) in effect on July 1, 2004 or to be in effect July 1, of each succeeding year, to be effective July 1, of such succeeding year.

27

Effective July 1, 2006, the amount to be paid by the 46 Counties Work Fee option, in connection with the Vacation and Holiday contribution shall be an amount equal to two and one-half percent (2.5%) of the total hourly wage-fringe benefit package of the highest carpenter journeyman classification as defined in the Nine (9) Counties Area in this Agreement (excluding Industry Promotion, Contract Administration, and Construction Industry Advancement Fund contributions) in effect on July 1, 2006 or to be in effect July 1, of each succeeding year, to be effective July 1, of such succeeding year.

The amounts referred to herein shall be remitted by the individual employer as follows:

1.   The individual employer shall include such amount in the single check mailed with his/her combined employer report of contributions to the Depository Bank for the Northern California Carpenters Trust Funds.

2.   In such report the individual employer shall designate the Depository Bank as his/her or its agent to receive written dues authorizations from employees covered by this Agreement pursuant to Section 302 (c) (4) of the Labor-Management Relations Act, as amended, and any revocation of such authorizations, and shall direct the Bank (a) to deposit the monies reported under the column headed Work Fee (Column B) in a special account, (b) to transfer monthly from such account the monies paid with respect to the work of each employee who has on file with the Bank an unrevoked dues authorization in a form complying with law to the account of the Union as Work Fee and (c) to transfer the remaining monies in said account to the Carpenters Vacation and Holiday Trust Fund for Northern California for credit to the Vacation and Holiday accounts of the other employees. Any delinquency in the payment of such amount shall be subject to the same liquidated damage, interest and other delinquency provisions applicable to contributions to the Northern California Carpenter Trust Funds.

It is the intent and purpose of the parties to comply fully with all laws, rules and regulations applicable to the dues check-off provided by this Section. If any provision of this Section, or any procedure in the implementation or administration of this Section, is determined to violate any such law, rule or regulation, the parties will promptly enter into lawful negotiations to correct such violation.

The Union shall exonerate, reimburse and save harmless the Employer, each individual employer, the Bank or other depository designated pursuant to this Section, and the Carpenter Funds Administrative Office of Northern California, Inc., and their respective officers, directors, agents, and employees, individually and collectively, against any and all liabilities and reasonable expenses arising out of the payment, receipt or a distribution of the amounts listed in Section 39 (Wage Rates) for Work Fee.

## Section 44
## Carpenters Training Trust for
## Northern California

Each individual employer covered by this Agreement shall contribute to the Carpenters Training Trust for Northern California the amount listed in Section 39 (Wage Rates) for each hour worked by each employee covered by this Agreement for the purpose of providing training and education benefits for such employees.



Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated March 4, 1963, as such has been or may from time to time be amended or supplemented.

There shall be no duplicating contributions with respect to any employee or the work of any employee.

## Section 45
### Contract Administration,
### California Builders Advancement Program,
### California Construction Advancement Program,
### Builders Industry Promotion Trust,
### Construction Industry Advancement Fund and
### The Building Industry Trust

Effective July 1, 2003, a total contribution of sixteen cents ($.16) per hour for each hour worked or paid for shall be paid to the California Builders Advancement Program, the California Construction Advancement Program, the Builders Industry Promotion Trust Fund, the Carpenter Employers Contract Administration Trust Fund, and the Building Industry Trust as follows:

**California Construction Advancement Program** — Effective July 1, 2003, each signatory individual memorandum employer shall contribute the sum of one cent ( $.01) per hour worked or paid for to the California Construction Advancement Program which is established for the purpose of protecting, improving and advancing the interests and welfare of the construction industry and its individual employers and employees. The individual employer hereby adopts and agrees to be bound by the terms of the certain Trust Agreement creating the California Construction Advancement Program dated September 12, 1974, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

**California Builders Advancement Program** — Effective July 1, 2003, each signatory employer shall contribute the sum of one cent ($.01) per hour worked or paid for to the California Builders Advancement Program which shall be established for the purpose of protecting, improving and advancing the interests and welfare of the unionized building construction industry and its individual employers and employees. The individual employer hereby adopts and agrees to be bound by the terms of the Trust Agreement creating the California Builders Advancement Program, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

**Builders Industry Promotion Trust Fund** — Effective July 1, 2003, each signatory employer shall contribute the sum of three cents ($.03) per hour worked or paid for to the Builders Industry Promotion Trust Fund which is established for the purpose of protecting, improving and advancing the interests and welfare of the building construction industry and its individual employers and employees. The individual employer hereby adopts and agrees to be bound by the terms of the certain Trust Agreement creating the Builders Industry Promotion Trust Fund dated January 1, 1992, as

29

such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

**Construction Industry Advancement Fund** — Effective July 1, 2003, each signatory employer who is a member of the Home Builders Association (HBA) shall contribute the sum of three cents ($.03) per hour worked or paid for to the Construction Industry Advancement Fund Program which is established for the purpose of protecting, improving and advancing the interests and welfare of the construction industry and its individual employers and employees. The individual employer hereby adopts and agrees to be bound by the terms of the certain Trust Agreement creating the Construction Industry Advancement Fund Administrative Agreement dated March 5, 1979, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

**Building Industry Trust** — Effective July 1, 2003, each signatory individual memorandum employer shall contribute the sum of four cents ($.04) per hour worked or paid for to the Building Industry Trust which shall be established for the purpose of protecting, improving and advancing the interests and welfare of the unionized building construction industry and its individual employers and employees as provided for in the Labor Management Cooperation Act of 1978 (29 U.S.C. 175 et seq.) and Section 302 (c) (9) of the Labor Management Relations Act, as amended (29 U.S.C. 186 (c) (9)). Effective July 1, 2003, each signatory employer who is a member of the Construction Employers' Association (CEA) or any other association which may so designate, shall contribute the sum of one cent ($.01) per hour worked or paid for to the Building Industry Trust. The individual employer hereby adopts and agrees to be bound by the terms of the Trust Agreement creating the Building Industry Trust, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

**Carpenter Employers Contract Administration Trust Fund** — Effective July 1, 2003, each signatory employer shall contribute the sum of seven cents ($.07) per hour worked or paid for to the Carpenter Employers Contract Administration Trust Fund which is established for the purpose of administering the collective bargaining agreement through the grievance procedure or otherwise on behalf of all individual employers signatory to this Agreement. At the discretion of the Trustees of said Trust, contributions to the Carpenter Employers Contract Administration Trust Fund may be increased up to an additional two cents ($.02) per hour during the term of this Agreement. Such increase or increases are to be effective on such dates as determined by the Trustees. The individual employer hereby adopts and agrees to be bound by the terms of the certain Trust Agreement creating the Carpenter Employers Contract Administration Trust Fund dated January 1, 1986, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determinations of the Trustees of said Trust.

All contributions and payments required pursuant to this Section or pursuant to the Trusts created hereunder shall not be deemed wages due to the employees with respect to whose work such contributions and payments are made.

Notwithstanding the provisions of this Section, there shall be no

30

contributions or payments required pursuant to this Section for the period of August 1, 2003 through February 29, 2004.

NOTE: The amount of contributions is subject to further negotiation between the parties provided, however, that the total amount referred to in this section will not be increased but may be subject to redistribution by agreement of the parties.

## Section 45-A

### Carpenters Work Preservation Committee Trust

Effective July 1, 2003, each signatory employer shall contribute the sum of six cents ($.06) per hour for each hour worked or paid for to the Carpenters Work Preservation Committee Trust Fund. Each individual employer hereby adopts and agrees to be bound by the terms of the certain Trust Agreement creating the Carpenters Work Preservation Committee dated January 1, 1986, as such might be amended from time to time pursuant to the terms thereof, and further agrees to observe and be bound by the actions and determination of the trustees of said Trust. At the discretion of the trustees of said Trust, contributions for the Carpenters Work Preservation Committee Trust Fund may be increased up to an additional three cents ($.03) per hour during the term of this Agreement. Such increase or increases are to be effective on such dates as determined by the Trustees.

The Carpenters Work Preservation Committee Trust is established for the purpose of administering the Carpenters Work Preservation Committee as referred to in Section 2-A of this Agreement.

The Carpenters Work Preservation Committee Trust has been created as a tax qualified jointly trusteed trust fund, the purposes of which are to perform the work preservation functions and those functions permitted pursuant to the Labor Management Cooperation Act of 1978 (29 U.S.C. 175 et seq.) and Section 302 (c) (9) of the Labor Management Relations Act, as amended (29 U.S.C. 186 (c) (9)).

It is further agreed that any funds contributed to such fund or funds created for the purposes set forth herein shall not be used for any membership solicitation by any contributor or participant to the Trust Agreement or Trust Agreements or Corporate Articles and By-Laws formed shall be accessible to any signatory employer or employers without regard to membership or non-membership in any employer association which may be signatory to an agreement requiring contributions to the fund or funds created pursuant to this Agreement.

All contributions and payments required pursuant to this Section or pursuant to the Trusts created hereunder shall not be deemed wages due to the employees with respect to whose work such contributions and payments are made.

## Section 45-B

### UBC Health & Safety Fund

Each signatory employer shall contribute to the United Brotherhood of Carpenters and Joiners of America Health & Safety Fund ("Health Fund") the amount listed in Section 39 (Wage Rates) for each hour worked by each employee covered by this Agreement. Each individual employer agrees to be bound by the Agreement and Declaration of Trust for the Health and Safety Fund dated April 2, 1990, as it exists and as it may be amended or

31

restated and to such rules, regulations and other governing documents adopted pursuant to such Trust.

## Section 46
## Contributions for Superintendents

A.   The Union and the Employer agree that when employees are working in a supervisory position above the rank of foreman or general foreman (where it appears in this Agreement), the individual employer may make payments with respect to his/her work into the Carpenters Health and Welfare Trust Fund for California and Carpenters Pension Trust Fund for Northern California on the basis of 145 hours per month in accordance with the schedules set forth in the Master Agreement, regardless of hours worked by any such employee in a month; provided, however, the individual employer having made one (1) payment on an employee shall continue to make such payments so long as the employee is in his employ.

B.   The Union and the Employer agree that when an employee is working in a supervisory position above the rank of foreman, the individual employer may make payments with respect to his/her work into the Annuity Plans established by this Agreement on the basis of a minimum of 145 hours, or on the basis of a greater number of hours but not less than 145 hours per month, in accordance with the schedules set forth in the Agreement, regardless of hours worked by any such employee in the month; provided, however, the individual employer having made one (1) payment on any employee shall continue to make such payments so long as the employee is in his employ.

C.   The Union and the Employer agree that the individual employers covered by this Master Agreement may cover owners or partners in the Carpenters Trust Funds (as in Section 46 A. & B.) by paying contributions with respect to the work of such an individual into these funds monthly on the basis of 145 hours per month, in accordance with the hourly contribution rates set forth in this Master Agreement, regardless of the number of hours worked by any such individual in a month, provided that such individual is performing work within the 46 Northern California Counties area and that, if not an owner or partner would be working as a journeyman carpenter under the terms of this Master Agreement and provided further that the individual employer, having made one (1) payment with respect to the work of such an individual, shall continue to make such payments monthly so long as the individual continues to perform work for the individual employer within the 46 Northern California Counties area in the capacity of an owner or partner. Such individual shall be deemed an employee covered by this Agreement solely for the purpose of participating in said Trust Funds and shall have no other rights or privileges under this Agreement as an employee.

## Section 47
## Basis for Contributions

Payment of contributions for benefits as provided in Sections 40, 41, 42, 43, 43-A, 44, 45, 45-A and 45-B shall be based upon all hours for which an employee has received payment; provided, however, that contributions shall not become compounded by overtime and all overtime hours for purposes of fringe benefit contributions shall be considered straight time hours.

In order to provide for benefits to employees without disruption

32

luring periods of contract negotiations and to assure an orderly means of collecting Trust Fund contributions during such periods, each signatory employer agrees that he or it shall be obligated to contribute to each and every Trust Fund referred to in this Agreement for any period following their termination date of this Agreement unless and until a lawful impasse occurs or until a successor Agreement is negotiated. Each signatory employer further agrees that any or all said Trust Funds may enforce this obligation by action to collect such delinquent contributions filed in any court of competent jurisdiction.

## Section 48
### Subsistence

All subsistence shall be governed by the provisions of Appendix A of this Agreement.

## Section 49
### Hiring

1. The NCCRC shall establish and maintain open and nondiscriminatory employment lists for the use of workers desiring employment on work covered by this Agreement and such workers shall be entitled to use such lists.

2. The individual employer shall first call upon the appropriate Local Union of the NCCRC having work and area jurisdiction for such workers as he or it may from time to time need, and such Local Union shall furnish the individual employer the required number of qualified and competent workers and skilled mechanics of the classifications needed by the individual employer in accordance with the provisions of this Section 49.

3. It shall be the responsibility of the individual employer when ordering workers, to give the appropriate Local Union all pertinent information regarding the workers' employment.

4. The Local Union will furnish in accordance with the request of the individual employer such workers of the classifications needed from among those entered on said lists to the individual employer by use of written referral in the following order of preference and the selection of workers for referral to jobs shall be on a nondiscriminatory basis:

(a) Workers specifically requested by name who have been laid off or terminated as journeymen carpenters in the geographic area of the Local Union or the NCCRC, as the case may be, within three (3) years before such request by a requesting individual employer or a joint venture of which one or more members is a former employer now desiring to re-employ the same workers, provided they are available for employment. This provision shall also apply to individual employers wishing to rehire employees of a joint venture of which the individual employer was a member.

There shall be no restriction on the mobility of workers employed by individual employers in the 46 Northern California Counties.

(b) Workers who within the five (5) years immediately preceding the individual employer's order for workers, have performed work of the type covered by this Agreement within the geographic area of the Agreement, provided such workers are available for employment.

33

stop the running of the ten (10) day period. The costs of the arbitration should be borne equally by the Employer and the Union regardless of which Local Union, NCCRC or individual employer is involved.

16. Any person dispatched in accordance with this Section by accepting such dispatch shall be deemed to have assigned to the Union his/her rights to collect unpaid wages or Trust Fund contributions.

17. The procedural rules for the operation of the NCCRC Hiring Hall shall be those Uniform Hiring Hall rules as established, amended or modified from time to time by the NCCRC pursuant to its Bylaws.

## Section 50
## Work Preservation, Contracting and Subcontracting

1. The purpose of this Section 50 is to preserve and protect the work opportunities that will be available to employees covered by this Agreement at the jobsite or job yard.

2. The terms and conditions of this Agreement, insofar as it affects the Employer and the individual employer, shall apply equally to any subcontractor of any tier under the control of, or working under oral or written contract with such individual employer on any work covered by this Agreement to be performed at the jobsite or job yard, and said subcontractor with respect to such work shall be considered as an individual employer covered by this Agreement.

3. If an individual employer shall subcontract work herein defined, the work will be subcontracted to a subcontractor signatory to the appropriate Agreement with the Union. Such subcontract shall state that such subcontractor is or agrees to become signatory to an appropriate Agreement with the Union and will comply with all the terms and provisions of said Agreement including the payments of wages, Trust Fund contributions and fringe benefit payments. A copy of the subcontract and signature shall be furnished to the Union upon request.

4. The term "subcontractor" means any person, corporation or other entity, other than an employee covered by this Agreement, who agrees, orally or in writing, to perform for, or on behalf of the individual employer, any part or portion of the work covered by this Agreement. The subcontractor shall be properly licensed as required by the California State Contractors License Law.

5. The individual employer will give written notice to the NCCRC and/or Millwrights Local 102, (see Appendix B, Section 15) as the case may be, of any subcontract involving the performance of work covered by this Agreement within five (5) days of entering such subcontract and/or prior to commencement of work by the subcontractor, unless such notice is prevented by emergency conditions, and shall specify the name and address of the subcontractor.

5a. If thereafter the subcontractor becomes delinquent in the payment of any wages, Trust Fund contributions, or fringe benefit payments, then the NCCRC, Local Union or the Trust Fund office shall give prompt notice of the delinquency, confirmed in writing, to the individual employer and to the subcontractor. The notice shall specify the name and amounts, if known, of the delinquency.

5b. Said notification by the NCCRC, Local Union or the Trust und office shall be provided within twenty (20) days of publication of the Delinquency list provided by the Trust Funds or if in the case of failure to pay wages five (5) days from the applicable pay day. f such notice is given, the individual employer shall pay and satis-y only the amount of any such delinquency by such subcontractor occurring within ninety (90) days prior to the receipt of said notice rom the Union, and said individual employer may withhold the amount claimed to be delinquent out of the sums due and owing by he individual employer to such subcontractor.

5c. Notwithstanding the provision set forth above, if the subcon-ractor is found in violation of the hiring provisions of this Agreement, pursuant to the provision of Section 51 (Grievance Procedure), and the Union is unable to collect from the subcontrac-or the damages determined to be owing for such violation, the indi-vidual employer shall then be liable for the payment of such dam-ages. The total of this liability, as it would apply to the individual employer, shall be no more than five (5) days' violation or the total of the subcontractor's retention being held by the individual employ-er, whichever amount is greater.

6. If the individual employer fails to give written notice as required in this Section 50, he shall, until notice is received, assume iability for any violation of the terms and conditions of this Agreement at that particular jobsite or job yard, as may be deter-mined by Section 51 (Grievance Procedure). If the subcontractor is signatory or otherwise bound to an Agreement with the Union, the individual employer shall be liable only for delinquencies as set forth in subsection 5a of this Section 50 for work on that jobsite or job yard. If the subcontractor is not in compliance with this Agreement then the individual employer shall be liable for any vio-lation of this Agreement on that jobsite or job yard.

7. If the Union or the NCCRC should make demand in writing for exercise of this Section, the individual employer will require that any subcontractor of the individual employer specified in the demand will, if he has not already done so, post a surety bond in an amount not to exceed $75,000.00 to cover payments of wages, Trust Fund contributions and fringe benefit payments specified in this Agreement. Failure of the individual employer to comply with this Section within two (2) days of demand will make the individual employer liable for the delinquencies of the subcontractor occurring on the individual employer's specific job. (The amount of the bonds specified in this subsection in no way affects the amounts specified for bonding purposes elsewhere in this Agreement.)

8. Notwithstanding any other provision of this Agreement or this Section 50, on any residential construction, all work covered by this Agreement shall be performed by the individual employer or prime carpentry contractor, and no such work shall be subcontract-ed to any other contractor except the installation of foundations, overhead garage doors, plastic sink taps, hardwood floors, roof and exterior wall shingles, traditional normal drywall, patio glass sliding doors, stairs, underlayment, base, acoustical ceilings, steel scaffolding, lathing and insulation. The individual employer or prime carpentry contractor shall provide all materials and the indi-vidual employer or prime carpentry contractor shall employ all employees covered by this Agreement who shall be shown on its payroll records except as provided herein. The remedies for default provided in this Section 50 shall apply directly to the individual employer or prime carpentry contractor. The individual employer or prime carpentry contractor shall be responsible for and shall direct-

ly employ employees covered by this Agreement to perform all work in connection with the construction of all walls and roof framing installation of all sub-flooring, all exterior sheathing, installation o all metal or wood sash, doors, installation of all trim, installation o all types of cabinets, wardrobes and sliding doors.

9. The individual employer has the primary obligation for per formance of all conditions of this Agreement. This obligation canno be relieved, evaded or diminished by subcontracting. Should the individual employer elect to subcontract, the individual employe shall continue to have such primary obligation. Said primary obli gation shall be deemed conclusive evidence of the Union's majority status for the purpose of establishing the obligation of the individ ual employer to bargain collectively pursuant to Section 8(A) (5) o the National Labor Relations Act as amended with the Union upor expiration of this Agreement but for no other statute, rule, regula tions or law.

10. The provisions of this Section may be enforced only through the grievance and arbitration provisions of this Agreement.

11. It is the intent of the parties to enforce the provisions of this Section only to the extent permitted by law.

12. Notwithstanding any provisions of this Agreement or any Memorandum Agreement to the contrary, the provisions of this Section shall not be enforced by strike action or any other form o job shutdown or work interference; provided, however, that the rights provided in Section 51 (Grievance Procedure) of this Agreement are retained to enforce primary obligations of any indi vidual employer.

13. Payment by cash or second or multiple checks or combina tion thereof and the payment of excessive premium rates, excessive travel time, or bonuses shall be prima facie evidence of an attemp to violate the provisions of this Section. The foregoing shall no apply to an annual bonus paid to supervisors.

14. No subcontract shall be in compliance with this Section if the effect of such subcontract is to diminish, eliminate or circumvent the payment of wages and fringe benefits to employees covered by this Agreement.

## Section 51
## Grievance Procedure

Any dispute concerning any application or interpretations of this Agreement shall be subject to the following procedure:

1.  In the event that a dispute arises on a job, it shall be firs reported to the individual employer and/or the Field Representative of the appropriate Local Union or the NCCRC who shall ther attempt to adjust said grievance or dispute at the jobsite level.

2.  The grieving parties shall specify the date(s) of the allegec violation(s) and the provision(s) of the Agreement applicable to the dispute.

3.  If said grievance or dispute is not satisfactorily adjusted by the appropriate Local Union or the NCCRC or otherwise authorizec Union Representative and the individual employer or his represen tative within three (3) days after submission to the individua employer, the matter may be submitted by either party to a perma nent Board of Adjustment created for the settlement of such disputes

4.  The Board of Adjustment shall be composed of one (1) mem

er named by the Union, one (1) member named by the Association
nd an Impartial Arbitrator. The parties shall select an alternate to
e permanent neutral Arbitrator who shall serve only in the event
e permanent neutral Arbitrator is unable to serve. At any point in
e proceedings should the panel be unable to reach a majority vote
e Arbitrator shall participate and his decision shall be final and
inding.

5.   In addition to any rule or procedure which the panel may
dopt, the Board of Adjustment shall be governed by the following
rovisions:

(a)   No briefs shall be submitted nor a transcript made of the
hearing except by mutual agreement of the parties or by direc-
tion of the Arbitrator. Any transcript ordered by any party shall
be at the expense of the party ordering the transcript.

(b)   In the case of deadlock, the Arbitrator shall render his
decision upon the conclusion of the case at the Board of
Adjustment hearing, unless the time is extended by mutual
agreement of the parties or at the request of the Arbitrator. The
Arbitrator shall not render an expanded opinion in any case
unless requested by the parties.

(c)   The parties shall select and utilize a permanent Impartial
Arbitrator who is willing to abide by the procedures set forth
herein. By agreement of both parties, the Impartial Arbitrator
may be changed or replaced.

(d)   The Board of Adjustment or the Arbitrator may fashion an
appropriate remedy to resolve the issue including, but not limit-
ed to, back pay, money damages, injunctive relief, audit, pay-
ment of wages and fringe benefits to persons damaged by the
contract violations, interest or attorneys' fees.

(e)   Any grievance involving an individual employer not a
member of any of the signatory associations shall be submitted
directly to the Arbitrator unless the individual employer agrees
to submit the matter to the Board of Adjustment.

6.   Disputes arising out of work assignment, which are governed
by Section 16 (Jurisdictional Disputes), will not be heard at these
panels.

7.   The Board of Adjustment shall meet within forty-five (45)
days on any item properly before the Board. Failure of either party
to meet or to participate shall cause the Board or Arbitrator to hear
and decide the matter on a default basis.

8.   Decisions of the Board of Adjustment or an Impartial
Arbitrator shall be within the scope and terms of this Agreement and
shall be final and binding upon all parties hereto.

9.   In the event an individual employer fails to comply with any
such decisions, the Union may withdraw employees or strike the
individual employer, and such action shall not be a violation of this
Agreement so long as such noncompliance continues, provided,
however, that the Union may not enforce the provisions of Section
50 (Subcontracting) by economic action or picketing.

10. The expenses of the Joint Adjustment Board and the Impartial
Arbitrator, including the cost of a court reporter, shall be borne
equally by the parties hereto.

11. No proceeding hereunder based on any dispute, complaint
or grievance herein provided for, shall be recognized unless the
grievance procedure steps outlined above have been followed. The
Arbitrator or Board may for good cause, accept o late submission,

which shall then be decided by the Board of Adjustment.

12. The Board of Adjustment shall establish regular meeting dates and administer grievances filed in conjunction with this section as set forth in the rules and procedures, which may be amended from time to time by the parties.

13. A decision of the Board of Adjustment by majority vote, or the decision of a permanent Arbitrator shall be enforceable by a petition to confirm an arbitration award filed in the Superior Court of the City and County of San Francisco, State of California, or the United States District Court for the Northern District of California. Any party who fails or refuses to comply with a decision of a Board of Adjustment or an award of the Arbitrator, as the case may be, shall be responsible for reasonable attorneys' fees for the filing and trial of any petition to confirm and enforce said decision or award in addition to all other remedies available through law, unless the petition is denied.

14. All hearings of the Board of Adjustment shall be in the City and County of San Francisco, and/or County of Alameda, unless mutually agreed to move to another location.

15. Other than matters concerning discharge, no proceedings mentioned hereinabove on any dispute, complaint or grievance shall be recognized unless called to the attention of the Employer and the Union within thirty (30) days after the last date the alleged violation was committed.

16. On all cases relating to discharge or discipline, employees must file their grievances with the Local Union or the NCCRC within three (3) working days after the imposition of the discharge or discipline. Thereafter, the Local Union or the NCCRC must file its grievance with the Board of Adjustment within four (4) working days after the employee files his grievance. The Board shall meet within seven (7) working days following submission of the grievance. The Board of Adjustment or Arbitrator shall be free to sustain the discharge or to find discipline other than discharge to be appropriate and may order reinstatement with full or partial back pay as he or it deems appropriate provided there shall be no discrimination on the part of the individual employer against any employee for activities in behalf of or representation of the Union not interfering with the proper performance of his duties.

17. If failure of a Board of Adjustment to meet within one week (7 working days) is due to the unavailability of the Union, the wage payment and Trust Fund contribution liability shall be limited to the above seven (7) working days. If the Employer or individual employer, or Arbitrator is unavailable to meet, the wage payment and Trust Fund contribution liability shall be continuing.

IN WITNESS WHEREOF, the parties hereto have executed this document this 3rd day of June, 2003, in Oakland, California.

THE CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO

ɪn behalf of:

ɪORTHERN CALIFORNIA CARPENTERS REGIONAL COUNCIL

ɪr Local Unions No.: 22, 25, 34, 35, 46, 102, 152, 180, 217, 62, 405, 505, 605, 701, 713, 751, 1109, 1240, 1496, 1599, 618, 1789, 1861, 2035, 2236, 9068, 9083, 9109 and 9144.

y _____    By _____

Robert Alvorado, Chairman         William Feyling, Executive Director

ONSTRUCTION EMPLOYERS' ASSOCIATION OF CALIFORNIA

y _____    By _____

John Stripe, President            Larry Nibbi, Chairman

                                  Carpenters Craft Committee

y _____

Michael Walton, Secretary

ɪILLWRIGHT EMPLOYERS ASSOCIATION

y _____

Michael Vlaming, Executive Manager

## Appendix A
## Subsistence

1.   On all work covered by this Agreement, as described in this Appendix A, the following shall apply effective July 1, 2000. All jobs bid or awarded, or under construction prior to July 1, 2000, shall be completed under Subsistence requirements in effect prior to July 1, 2000.

(a)   No subsistence shall be paid on any job or project located less than fifty (50) road miles from any city hall or post office in the following cities:
Eureka
Santa Rosa
Monterey
Visalia
Fresno
Redding
Kings Beach
South Lake Tahoe
Auburn
Chico
Cloverdale
Woodland
Oakland
Jackson
Manteca
San Jose
Merced
Willits

(b)   On any job or project located fifty (50) or more road miles from a city hall or post office located in a city listed in paragraph 1(a), subsistence shall be paid at the rate of twenty-five dollars ($25.00) per day. The individual employer shall pay to each employee covered by this Agreement the amount shown above for each day's work in addition to their regular and over-time wages as subsistence.

(c)   The area known as Geysers is a ten dollar ($10.00) sub-sistence zone.

(d)   Work performed at the Mt. Hamilton Observatory or facilities adjacent thereto shall be a subsistence zone.

2.   Exemption to the requirement for payment of subsistence:

The individual employer shall not be required to pay subsistence to employees covered by this Agreement where employees are employed to work:

(a)   At the individual employer's permanent yard;

(b)   At the individual employer's permanent shop;

(c)   On buildings of three (3) stories or less which are a part of a residential construction project located within the subsis-tence area;

(d)   On streets, roadways and utilities, which are a part of a residential construction project of buildings of three (3) stories or less, located within the subsistence area.

This exemption does not apply to camps, highways, dams, tun-nels or similar heavy engineering projects.

3.   On all other work located within the subsistence area when

42

ıny employee works two (2) or more hours in any one (1) day, ıe/she shall be paid the subsistence allowance for that day. Such ıay shall be paid to employees by separate check.

4. The individual employer's daily charge for board and lodgıng on jobs where subsistence is paid shall not exceed the daily subıstence allowance paid the employee.

5. Such payments for subsistence shall be excluded from the vages of the employee for the purpose of the Fair Labor Standards ıct and shall be paid to such employee by check weekly and idenified seporately therein. Subsistence is defined as reimbursement or food, lodging and living expenses out of town and is not a wage ır reimbursement for time spent going to or from the jobsite.

6. If an employee is transported by the individual employer rom a permanent yard or shop located in a free zone to work in a ıubsistence zone and transported back to the same permanent yard ır shop in a free zone, all on the same day, on the individual ımployer's time, he shall not receive subsistence.

7. Both parties agree to meet and confer relative to subsistence vhere extremely adverse conditions exist with respect to jobsite ıccess.

## APPENDIX B

### 46 Counties of Northern California

### MILLWRIGHTS AGREEMENT

## TABLE OF CONTENTS

| | SECTION NO. | PAGE |
|---|---|---|
| Foreman . . . . . . . . . . . . . . . . . . . . . . . . | 3 | 47 |
| Millwright Annuity Plan . . . . . . . . . . . . . . . . | 5 | 51 |
| Millwright Employers Construction | | |
| Advancement Program . . . . . . . . . . . . . . . | 7 | 51-52 |
| Outside Contracting . . . . . . . . . . . . . . . . . . | 16 | 56 |
| Overtime . . . . . . . . . . . . . . . . . . . . . . . | 11 | 53 |
| Pickup Time . . . . . . . . . . . . . . . . . . . . . | 9 | 53 |
| Pre-Job Conference . . . . . . . . . . . . . . . . . . | 13 | 55 |
| Safety . . . . . . . . . . . . . . . . . . . . . . . . | 14 | 55-56 |
| Show-Up Time . . . . . . . . . . . . . . . . . . . . | 2 | 46-47 |
| Subcontracting . . . . . . . . . . . . . . . . . . . . | 15 | 56 |
| Tools . . . . . . . . . . . . . . . . . . . . . . . . . | 8 | 52 |
| Travel and Subsistence . . . . . . . . . . . . . . . | 1 | 44-46 |
| Wage Rates . . . . . . . . . . . . . . . . . . . . . . | 4 | 47-51 |
| Welders . . . . . . . . . . . . . . . . . . . . . . . . | 10 | 53 |
| Work Covered . . . . . . . . . . . . . . . . . . . . . | 12 | 53-55 |
| Work Fees . . . . . . . . . . . . . . . . . . . . . . | 6 | 51 |

## In Addition to the

## 46 Counties Carpenters Master Agreement

In addition to the working rules and conditions of the 46 Counties Carpenters Master Agreement, the following working rules and wage rates shall apply to Millwrights.

Effective December 1, 2003, these conditions, rules and wage rates shall cover the Millwright Local Union within the 46 Counties.

### Section 1

### Travel and Subsistence

No Millwright shall use his vehicle for other than personal travel to and from the job.

1.   If transportation is not furnished by the employer, Millwrights shall receive travel and/or subsistence expense as follows:

a.   For the counties of Alameda, Contra Costa, Marin, San Francisco, and San Mateo, travel shall be established from the center of the Oakland Bay Bridge 0.2 miles west of the westerly end of the Yerba Buena Tunnel. In the remaining counties covered by this Agreement, from the City Halls of Chico, Eureka, Fresno, Modesto, Monterey, Redding, Sacramento, San Jose, Santa Rosa, Stockton, Vallejo, and Visalia. Travel from the above-defined points shall be as follows:

b.   Over fifty (50) miles in free zone. $15.00 per day worked.

c.   Millwrights employed in the subsistence area set forth in the subsistence map in the 1968-71 Carpenters Agreement shall receive beginning January 1, 1986 - $32.50 per day worked.

d.   Special condition for Humboldt County and Ft. Bragg proper is subsistence for non-residents only. *Travel shall apply for residents as set forth in I.a. above.

*Residents of Ft. Bragg proper shall be defined as living with-

44

in twenty (20) road miles of Ft. Bragg city hall.

e.    Map Description - Area No. 1 Free Zone

Commencing with the mouth of the Carmel River in Monterey County, thence easterly along the north bank of Carmel River to Tularcitos Junction, thence southeasterly along Tularcitos Road to Arroyo Seco Road, thence along south fork of Arroyo Seco Road to Greenfield and Highway 101, thence southerly along center line of Highway 101 to San Lucas, thence easterly along center line of Highway 198 to Coalinga, thence southerly along center line of Highway 33 to Kern County line, thence easterly along north boundary line of Kern County of intersection of said county line and Highway 65, thence northerly along center line Highway 65 through Porterville, Exeter, Badger to intersection of Highway 65 and Highway 180, thence on a straight line in a northwesterly direction to Pine Ridge, thence along center line of county road to Auberry, thence northerly along center line of county road to North Fork, Lakeview, to intersection of said county road and Highway 41, thence northerly along center line of Highway 41 to intersection of Highway 41 and Highway 49, thence northerly along center line of Highway 49 through Mariposa, Coulterville, Chinese Camp, Sonora, Jackson, Placerville, Auburn, Grass Valley to San Juan, thence on a northerly line to Challenge, thence along center line of county road through Woodleaf to Strawberry Volley, thence northerly along west boundary of Plumas County to intersection of Highway 36, thence northwesterly along center line of Highway 36 to intersection of Highway 36 and Highway 89, thence northerly along Highway 89 to intersection of Highway 89 and west boundary to Section 22, Township 30 north, Range 4 east of Mount Diablo Base and Meridian, thence northerly to northwest corner of Section 3, Township 30 north, Range 4 east, thence westerly along Township 30 north, to the intersection of Mount Diablo Meridian, thence northerly to the northeast corner of Township 34 north, Range 1 west, thence westerly along Township 34 north, to eastern boundary of Trinity County, thence southerly to intersection of county road, thence southerly along center line of county road to Tower House, thence westerly along center line of Highway 299 to intersection of eastern boundary of Trinity County, thence southerly along east boundary to Trinity County Line to the intersection of the west boundary of Range 7 west, thence south to southwest corner of Township 30 north, Range 7 west, thence southerly along western boundary of Range 6 west to the intersection of Colusa County line of western boundary to Township 16 north, Range 6 west, thence southerly along east boundary of Lake County to intersection of Highway 20, thence westerly along center line of Highway 20 to intersection of Highway 101, thence southerly along Highway 101 to intersection of county road, thence westerly along center line of county road to Comptche, thence from Comptche south to southwest corner of Township 16 north, Range 15 west, thence easterly to northwest corner of Township 15 north, Range 14 west, thence southerly to southwest corner to Township 14 north, Range 14 west, thence easterly to northwest corner of Township 13 north, Range 13 west, thence southerly to southwest corner of Township 13 north, Range 13 west, thence easterly to northeast corner of Township 12 north, Range 12 west, thence southerly to southwest corner of Township 11 north, Range 12 west, thence easterly to northwest corner of Township 10 north, Range 11 west, thence southerly along western boundary of Range 11 west to southwest corner

45



of Township 8 north, Range 11 west, thence westerly to south east corner of Section 33 of Township 8 north, Range 12 west thence southerly along coastline of California to north bank Carmel River, the point of beginning.

The following map descriptions shall be called Area 3 and shall be a subsistence zone within Area 1:

Commencing with the southwest corner of Township 7 south Range 3 east, Mount Diablo Base and Meridian, thence northe ly along the easterly line of Range 2 east to the intersection of the northerly boundary of the Santa Clara County line, thence easterly along said county line to the easterly line of Range east, thence southerly along said easterly Range line to th southeasterly corner of Township 7 south, Range 4 east, thenc westerly along southerly boundary of said Township 7 south t the point of beginning.

Map Description - Area No. 2 Subsistence Zone

From the Pacific Ocean at the southwest corner of Township north, Range 3 west, Humboldt Base and Meridian, thence east erly to northwest corner of Township 1 north, Range 1 west thence southerly to southwest corner of Township 1 north, Range 1 west, thence easterly along Humboldt Baseline, to northwest corner of Township 1 south, Range 1 east, thence southerly along Humboldt Meridian to intersection of county road north of Honeydew, thence northeasterly along center line of county road to Dyerville, thence on a straight northeasterly line to Bridgeville, thence northeasterly on Highway 36 to intersection of eastern boundary of Township 1 north, Range 3 east, thence northerly on eastern boundary of Range 3 east, to northwest cor ner of Township 9 north, Range 4 east, thence westerly along center line of county road through Martin's Ferry to Orick, thence south along coastline to the point of beginning.

F.    Travel expenses in subsistence areas as outlined above will be paid, at the rate of $15.00 at the beginning and at the completion of each job, or termination of the employee, except for jobs performed in one (1) day or less and the employee is paid or furnished transportation.

### Section 2
### Show-Up Time

A.    When workers are ordered and dispatched for work and report for work on the same day, they shall be paid hours worked plus two (2) hours reporting, but not to exceed eight (8) hours on a regular eight (8) hour shift.

B.    Except on the first day of employment when workers report to work and no work is provided, they shall receive four (4) hours pay and travel or subsistence, whichever may apply. If a Millwright employee is required to report to work and no work is provided as a result of inclement weather, the employee shall be paid subsis tence or travel for the day as spelled out in Section 1 (Travel and Subsistence), whichever may apply.

C.    The regular lunch period for Millwrights shall start no less than three and one-half (3 1/2) nor more than five (5) hours after the start of any regular shift. Any Millwright who works more than a five (5) hour period without a meal period shall be paid for all work in excess of said five (5) hour period (at the prevailing over time rate) until a meal is provided (such pay shall be reckoned by

the hour and the half hour). The established lunch period will constitute the reckoning of the day or half day. If the job circumstances require Millwrights to work more than ten (10) hours on a shift, they shall have a second meal period of one-half (1/2) hour and an additional meal period every four (4) hours thereafter. Such meal period shall be paid for at the prevailing overtime rate by the employer.

D.  Notwithstanding the multiple shift three (3) day requirement, a single or multiple approved shift may be established where the premises cannot be vacated in whole or in part until the close of business. Workers then reporting for work shall be paid on the basis of eight (8) hours pay for seven and one-half (7 1/2) hours work. Any work prior to the approved shift and any work after the approved shift period shall be at time and one-half not to exceed four (4) hours. Overtime work in excess of four (4) hours shall be double time.

### Section 3

### Foreman

A.  When two (2) or more Millwrights are employed on a job, one (1) shall be foreman and be paid foreman's pay.

B.  In all 46 Counties a Millwright Foreman may not supervise more than one (1) jobsite. No one (1) Millwright Foreman shall supervise more than ten (10) Millwrights. Foremen shall receive two dollars ($2.00) per hour over Millwright's scale. Either a Millwright Foreman or General Foreman, having supervision over other crafts, shall receive not less than the regular hourly rate of the highest paid classification over which he has supervision, providing that the employee receiving the highest rate of pay (other than a Millwright) shall be on the individual employer's payroll. In the above case the Millwright shall not receive less than the Millwright Foreman or General Foreman's scale.

C.  When there are three (3) or more Millwright Foremen employed by the individual employer on the jobsite, there shall be designated one (1) General Foreman and he shall receive the General Foreman rate, one dollar and fifty cents ($1.50) per hour over Millwright Foreman's scale.

### Section 4

### Wage Rates

The following shall be the classifications and minimum hourly rates during the term of this Agreement for the effective dates noted and in the areas listed.

A.  Nine (9) Counties Area consisting of the following counties:

Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, Santa Clara, Solano and Sonoma:

| | |
|---|---|
| Journeyman wage rates effective | 7-01-03 |
| Millwrights | $30.85 |

B.  Thirty-Four (34) Counties Area consisting of the following counties:

Alpine, Amador, Butte, Calaveras, Colusa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Mariposa, Mendocino, Merced, Modoc, Nevada, Placer, Plumas, Sacramento, San Joaquin, Shasta, Sierra, Siskiyou, Stanislaus, Sutter, Tehama,

Trinity, Tulare, Tuolumne, Yolo and Yuba:

1.   Effective July 1, 2003, the following journeyman wage rates shall apply to projects with a total project value of less than twenty-five million dollars ($25,000,000) and to projects which are not covered under the provisions of Section 4 B (2) or B (3) below:

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Millwrights | 26.02 |

2.   Effective July 1, 2003, the following journeyman wage rates shall apply for the duration of the project to projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after August 1, 1999 and prior to December 1, 2003 or, for public works projects, as required by the applicable prevailing wage determination. These rates shall not apply to wood frame residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 B(4) of the Carpenters Master Agreement shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Millwrights | 30.85 |

3.   Effective December 1, 2003, the following journeyman wage rates shall apply on new public and private projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after December 1, 2003 and prior to July 1, 2004, with the exception of wood frame residential construction of three (3) stories or less. These rates shall not apply to public works projects until such time as these rates have been incorporated in the applicable prevailing wage determinations. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dollar ($25,000,000) threshold. In addition, the provisions of Section 39 B(4) of the Carpenters Master Agreement shall apply in determining "the total base bid project value."

| Journeyman wage rates effective | 12-01-03 |
|---|---|
| Millwrights | 29.52 |

C.   Three (3) Counties Area consisting of the following counties:

Monterey, San Benito and Santa Cruz:

1.   Effective July 1, 2003, the following journeyman wage rates shall apply to projects with a total project value of less than twenty-five million dollars ($25,000,000) and to projects which are not covered under the provisions of Section 39 C(2):

| Journeyman wage rates effective | 7-01-03 |
|---|---|
| Millwrights | 27.37 |

2.   Effective July 1, 2003, the following journeyman wage rates shall apply for the duration of the project to projects with a total base bid project value of twenty-five million dollars ($25,000,000) or more that are bid or negotiated after August 1, 1999 and prior to July 1, 2004 or, for public works projects, as required by the applicable prevailing wage determination. These rates shall not apply to wood frame residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the twenty-five million dol-

ir ($25,000,000) threshold. In addition, the provisions of Section 9 C (4) of the Carpenters Master Agreement shall apply in deter-.ining "the total base bid project value."

| | |
|---|---|
| Journeyman wage rates effective | 7-01-03 |
| Millwrights | 30.85 |

D.   Millwrights Fringe Benefits Hourly Rates (Entire 46 Counties .rea ):

| Effective dates: | 7-01-03 | 12-01-03 |
|---|---|---|
| Health & Welfare | 4.305 | 4.305 |
| Pension | 2.85 | 2.85 |
| Appr. Training | .33 | .33 |
| Millwrights Vacation | 1.70 | 1.70 |
| Work Fee | 1.16 | .62 |
| Industry Promotion | .15 | .15 |
| Work Preservation | .05 | .00 |
| UBC Health & Safety | .04 | .00 |
| Millwrights Annuity Fund | 3.25 | 3.25 |

E.   Future Wage and/or Fringe Benefit Considerations:

December 1, 2003:

In the Forty-six (46) Counties Area, Sixty-three cents ($.63) per hour of fringe benefits will be waived through June 30, 2004, as follows: Fifty cents ($.50) per hour from Work Fee (Section 43A); Four cents ($.04) per hour from UBC Health & Safety and Apprenticeship; Five cents ($.05) per hour from Work Preservation; Four cents ($.04) per hour from Section 6 (Millwright Vacation and Work Fee).

July 1, 2004:

In the Forty-six (46) Counties Area, reinstatement of the sixty-three cents ($.63) per hour of fringe benefits that were waived for the period of December 1, 2003 through June 30, 2004 as follows: Fifty cents ($.50) per hour to Work Fee (Section 43A); Four cents ($.04) per hour to UBC Health & Safety and Apprenticeship; Five cents ($.05) per hour to Work Preservation; Four cents ($.04) per hour to Section 6 (Millwright Vacation and Work Fee).

In the Forty-six (46) Counties Area, One dollar and Seventy-five cents ($1.75) per hour increase to be allocated as follows: Fifty cents ($.50) to be allocated to Wages; One dollar and fifty cents ($1.50) to be allocated to Health & Welfare; Fifteen cents ($.15) to be allocated to Pension; Five cents ($.05) to be allocated to Training; Vacation shall be decreased by Twenty cents ($.20) and Annuity shall be decreased by Twenty-five cents ($.25).

The Union reserves the right to reallocate wage and fringe benefit amounts, excluding pre-allocated Health & Welfare amounts.

In the Thirty-four (34) Counties and Three (3) Counties Areas for projects with a total base bid project value of fifty million dollars ($50,000,000) or more that are bid or negotiated on or after July 1, 2004 and prior to July 1, 2007 or, for public works projects, as required by the applicable prevailing wage determination, the millwright wage rate for the duration of the project shall be three dollars and fifty cents ($3.50) per hour above the applicable Thirty-four (34) Counties or Three (3) Counties wage rate as set forth in Section 4 B (1) and C (1), provided said rate

49

shall not exceed the 9 Counties wage rate. In addition, the scheduled increases set forth in this Section D shall apply to such projects. These rates shall not apply to wood frame residential construction of three (3) stories or less. Where there is a published or advertised estimate of the construction costs for a project, such estimate shall determine "the total base bid project value," for purposes of the fifty million dollar ($50,000,000) threshold. In addition, the provisions of Section 39 (Wage Rates) B (4) and C (4) of the Carpenters Master Agreement shall apply in determining "the total base bid project value."

July 1, 2005:

In the Forty-Six (46) Counties Area, Two dollars and Fifty cents ($2.50) per hour increase to be allocated as follows: One dollar ($1.00) to be allocated to Wages; Seventy-five cents ($.75) per hour to be allocated to Health & Welfare; Twenty cents ($.20) per hour to be allocated to Pension; Five cents ($.05) per hour to be allocated to Vacation; Twenty-five cents ($.25) per hour to be allocated to Annuity and/or Health & Welfare; Twenty-five cents ($.25) per hour to be allocated to Annuity; Five cents ($.05) per hour to be waived from Section 6, Work Fee, until July 1, 2006.

The Union reserves the right to reallocate wage and fringe benefit amounts during the term of the agreement, excluding the minimum pre-allocated Health & Welfare amount.

July 1, 2006:

In the Forty-Six (46) Counties Area, Two dollars ($2.00) per hour increase to be allocated as follows: One dollar ($1.00) per hour to be allocated to Wages; Fifty cents ($.50) per hour to be allocated to Health & Welfare; Fifteen cents ($.15) per hour to be allocated to Pension; Five cents ($.05) to be allocated to Vacation; Five cents ($.05) per hour to be allocated to Training; and Twenty-five cents ($.25) per hour to be allocated to Annuity and/or Health and Welfare; Five cents ($.05) per hour reinstated to Section 6 Work Fee.

The Union reserves the right to reallocate wage and fringe benefit amounts during the term of the agreement, excluding the minimum pre-allocated Health & Welfare amount.

July 1, 2007:

In the Forty-Six (46) Counties Area, Two dollars and Twenty-five cents ($2.25) per hour increase to be allocated as follows: One dollar ($1.00) per hour to be allocated to Wages; Seventy-five cents ($.75) per hour to be allocated to Health & Welfare; Twenty cents ($.20) per hour to be allocated to Pension; Five cents ($.05) per hour to be allocated to Vacation; Twenty-five cents ($.25) per hour to be allocated to Annuity and/or Health & Welfare.

The Union reserves the right to reallocate wage and fringe benefit amounts during the term of the agreement, excluding the minimum pre-allocated Health & Welfare amount.

In the Thirty-four (34) Counties and Three (3) Counties Areas for projects with a total base bid project value of fifty million dollars ($50,000,000) or more that are bid or negotiated on or after July 1, 2007, or, for public works projects, as required by the applicable prevailing wage

determination, wage rates for the duration of the project shall be the applicable Thirty-Four (34) or Three (3) Counties wage rates.

## Section 5
## Millwright Annuity Plan

A. Effective July 1, 2000, each individual employer covered by this Agreement will contribute the sum of three dollars and twenty-five cents ($3.25) per hour for each hour paid for or worked by Millwrights employed by such individual employer under this Agreement to the Annuity Plan as established pursuant to this Agreement.

B. Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated July 1, 1980, as such has been or may from time to time be amended or supplemented. The Union and the Employer agree that this plan is and has been a Defined Contribution Plan.

C. The individual employer further agrees that he or it does irrevocably designate and appoint the employer members of said Trust Fund as his or its attorneys in fact for the selection, removal and substitution of the Trustees or Board members as provided in said Trust Agreement as may be provided by or pursuant to said Trust Agreement or Annuity Plan.

D. There shall be no duplicating contribution with respect to any employee or the work of any employee.

## Section 6
## Millwright Vacation and Work Fee

Effective July 1, 2003, each individual employer covered by this Agreement will contribute the sum of one dollar and seventy cents ($1.70) per hour for each hour paid for or worked by Millwrights employed by such individual employer under this Agreement to the Millwrights Vacation Plan as established pursuant to this Agreement.

Effective for all work performed on or after August 1, 1983, there shall be a nineteen cents ($.19) Work Fee established for each hour worked or paid for under Appendix B of this Agreement to be paid to Millwrights Local Union #102. This Work Fee shall be established on the same basis and shall be paid in addition to that currently being paid under Section 43-A (Work Fee) of this Agreement. Effective July 1, 2005 through June 30, 2006, five cents ($.05) of the Work Fee shall be waived until July 1, 2006, at which time the five cents ($.05) per hour worked or paid shall be reinstated to the Work Fee for a total of nineteen cents ($.19).

## Section 7
## Millwright Employers Construction Advancement Program

The Millwright Employers Association, being a party to the collective bargaining agreement with the Carpenters 46 Northern California Counties Conference Board, United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and a signatory Association devoted exclusively to contractors who employ large numbers of Millwrights, will participate in the Construction Industry Advancement Program as contained in the Carpenters Agreement,

Carpenters 46 Northern California Counties Conference Board. Accordingly, the Carpenter Trust Fund office will be advised to assign a Trust Fund Association code number to the Millwright Employers Association and a fifteen cent ($.15) per hour contribution for each hour worked or paid for will be credited to the Millwright Employers Association for all of their members performing work under the collective bargaining agreement as well as all independent, unassigned and/or National Millwright contractor hours.

Effective July 1, 1996, Employers working under this Appendix shall contribute the sum of five cents ($.05) per hour for each hour worked or paid for to the Carpenters Work Preservation Committee Trust.

## Section 8
## Tools

A.   The individual employer shall provide on each jobsite a reasonably secure place where Millwrights may keep their tools and special protective clothing. Where five (5) or more Millwrights are employed on a single job or project, the individual employer shall provide a separate and secure place, under lock and key, for the exclusive use of the Millwrights. The individual employer shall also provide seven hundred and fifty dollars ($750.00) indemnification to protect Millwrights against loss or damage to entire kit of tools or special protective clothing while in the individual employer's care, resulting from loss or damage due to a fire or theft.

B.   In the event a Millwright has more than one kit or tools on the job, indemnification shall be the replacement value of this inventory, but in no event to exceed one thousand-five hundred dollars ($1,500.00). Millwrights shall not furnish the following tools: Open or box end wrenches or sockets over one and one-fourth inch (1 1/4"), master levels, drill bits, taps and reamers, micrometers over one inch (1"), or no more than two (2) dial indicators.

C.   A cap of ten (10) working days will be placed on the time the employer has to reimburse the employee for loss of tools. The employee is required to provide the employer with an inventory of all of his tools used on the job at the start of the job.

D.   On all jobsites where inclement weather, heat, dust, cold or other adverse conditions prevail, and/or another craft has a change area, a safe and secure change area shall be provided for the sole use of the Millwrights on the jobsite or job yard.

E.   Welding hoods, gloves and sleeves shall be considered tools and, therefore, shall be replaced, in kind, if damaged or stolen on the jobsite.

F.   The individual employer, at his own option, may also replace individual tools lost or damaged on the jobsite. The individual employer shall replace any tool owned by an employee modified at the individual employer's request, but such modified tools shall then become the property of the employer.

G.   The individual employer shall furnish all necessary safety protection equipment. When normal protective equipment cannot be used, there shall be a meeting of the union and the individual employer to work out a mutually agreeable safety practice.

H.   The individual employer shall furnish waterless hand cleaner and rags for personal cleanup.

## Section 9
## Pickup Time

A.   Each Millwright shall be entitled to pickup time for personal tools at the end of each day, which shall not be less than five (5) or more than fifteen (15) minutes, exact time to depend on accessibility to actual place of work, and to be established by mutual agreement at a jobsite conference between a representative of the individual employer and a representative of the Union.

B.   Millwrights receiving notice of discharge or layoff shall be allowed a reasonable time not less than thirty (30) minutes before the end of the shift in addition to pickup time prevailing on the job to assemble their tools.

## Section 10
## Welders

A.   A qualified Millwright welder is one who has passed a qualification test (such as ASME test, or one equivalent thereto) given by a recognized testing laboratory within the prior twenty-four (24) months. When a Millwright welder, certified within the past twenty-four (24) months by a recognized testing laboratory, is required to pass another test, the individual employer shall pay for time required for such test and testing lab fee.

B.   When as a condition of employment, an employer requires a certified welder to re-certify at the jobsite, the employer shall provide the employee with a copy of his certification papers upon layoff or completion of job. It is understood this section shall not apply to employees who quit or are discharged for cause.

## Section 11
## Overtime

A.   On all construction, the first two (2) hours prior to the start of the regular or approved day or the first four (4) hours after the end of the approved or regular work day, not to exceed a total of four (4) hours in any one (1) day shall be paid at time and one-half.

Time and one-half shall be paid for the first eight (8) hours worked on designated off days and/or Saturdays.

All other time shall be paid at double the straight-time rate.

If work is to be performed on a specific construction jobsite on Saturday, Sunday, designated off days or holidays, Millwrights employed the preceding five (5) regular work days shall be given the opportunity to work such overtime.

B.   **Special Single Shift:**  A single approved shift may be established where the premises cannot be vacated in whole or in part until the close of business. Workers then reporting for work shall be paid on the basis of eight (8) hours pay for seven and one-half (7 1/2) hours work. Any work prior to the approved shift and any work after the approved shift period shall be at time and one-half, not to exceed four (4) hours. Overtime work in excess of four (4) hours shall be double time.

## Section 12
## Work Covered

A.   This Agreement shall cover and apply to all work of the indi

53

vidual employer falling within the recognized jurisdiction of the Millwright Union as spelled out in the UBC Jurisdictional Claims Handbook approved by the General Executive Board of the United Brotherhood of Carpenters and Joiners of America dated January 1 1961, including, but not limited to all recognized tools and equipment of the trade on new construction, repair, modifications, or maintenance work, including, but not limited to, all moving of machinery and/or equipment installed by Millwrights, making of skids and crates, skidding and unskidding, crating and uncrating; and installation of lubrication and/or Hydraulic lines or piping (on machines set by Millwrights) that come to the jobsite prefabricated, and computer floors.

B.   The work of the Millwright as spelled out in the Jurisdictional Claims Handbook referred to in Section A, above, is as follows:

The term "MILLWRIGHT AND MACHINE ERECTORS" shall mean the unloading, hoisting, rigging, skidding, moving, dismantling, aligning, erecting, assembling, repairing, maintenance, and adjusting of all machinery and equipment installed either in buildings, factories, structures, processing areas either under cover, underground or elsewhere, required to process material, handle, manufacture or servicing, be it powered or receiving power manually by steam, gas, electric, gasoline, diesel, nuclear, solar, water, air, or chemically, and in industries such as and including (identified for the purpose of description but not limited to) the following: woodworking plants, canning industries, steel, coffee roasting plants, paper and pulp, cellophane, stone crushing, gravel and sand washing and handling, refineries, grain storage and handling, asphalt plants, sewage disposal, water plants, laundry, bakery, mixing plant, can, bottle and bag packing plant, textile mills, paint mills, breweries, milk processing plants, power plants, aluminum processing or manufacturing plants, amusement and entertainment field. Installation of mechanical equipment in atomic energy plants; installation of reactors in power plants, installation of control rods and equipment in reactors, installation of mechanical equipment in rocket missile bases, launchers, launching gantry, floating bases, hydraulic escape doors and any and all component parts thereto, either assembled, semi-assembled or disassembled.

The installation of, but not limited to, the following: setting of all engines, motors, generators, air compressors, fans, pumps, scales, hoppers, conveyors of all types, sizes and their supports, escalators, man lifts, moving sidewalks, hoists, dumbwaiters, all types of feeding machinery, amusement devices, mechanical pin setters and spotters in bowling alleys, refrigeration equipment and installation of all types of equipment necessary and required to process material either in the manufacturing or servicing, the handling and installation of pulleys, gears, sheaves, fly wheels, air and vacuum drives, worm drives and gear drives, directly or indirectly coupled to motors, belts, chains, screws, legs, guards, boots, boot tanks, all bin valves, turn heads and indicators, shafting, bearing, cable sprockets, cutting all key seats in new and old work, troughs, chippers, filters, calendars, rolls, winders, rewinders, slitters, cutters, wrapping machines, blowers, forging machines, rams, hydraulic or otherwise, planing, extruder, ball, dust collectors, equipment in meat packing plants, splicing of ropes, cables.

The laying out, fabrication and installation of protection equipment including machinery guards, making and settling of templates for machinery, fabrication of bolts, nuts, pans, drilling of holes for any equipment which the Millwrights install regardless of materials;

all welding and burning regardless of types, fabrication of all lines, hoses or tubing used in lubricating machinery, installed by Millwrights, grinding, cleaning, servicing and machine work necessary for any part of any equipment installed by Millwrights, and the breaking in and trial run of any equipment or machinery installed by the Millwrights. Dock levelers, dock bumpers, manual or power actuated roll up doors, security doors, door seals, and airport x-ray and bomb detection equipment. Air inlet filter houses, air inlet filters, air inlet ducts and power actuated dampers, flex line, fuel piping and flex connections, all power generation power island equipment, including, but not limited to, turbines, generators, gear reducers, diffusers and expansion joints. Thermal blankets and gear boxes. All water treatment/sewage treatment plant equipment, including, but not limited to, all types of pumps, compressors, chain of flygt conveyance systems, aeration basin equipment, primary/ secondary clarifier mechanisms, sludge thickeners, mechanical/stationary bar screens and trash racks, and stop logs.

C.   It is understood that no dispute, complaint or grievance shall be filed under Section 51 (Grievance Procedure) of the Master Labor Agreement alleging violation of this Section 12, as a result of assignment of work as set forth in this section to other crafts working under collective bargaining agreements; but rather such dispute, complaint, or grievance shall be handled under Section 16 (Jurisdictional Disputes) of the Master Labor Agreement.

D.   The individual employer and the Local Union will cooperate promptly in attempting to resolve jurisdictional disputes that may arise on any job or project.

E.   When requested in writing by the Millwright Union, individual employers who are parties to this Agreement shall furnish signed letters promptly on a date mutually agreed upon by both parties, but in no case more than thirty (30) days, on the letterhead of the individual employer, stating he is employing or had employed Millwrights on a specific type of work and specific job and paid the negotiated scale of wages and fringe benefits for such work.

## Section 13
## Pre-Job Conference

A.   Whenever an individual employer or his representative holds a pre-job conference pursuant to Section 20 of the Master Labor Agreement, separate individual notice shall be given to the Millwright Local having jurisdiction over the project in the same format used to notify the other crafts attending.

B.   A markup meeting for the purpose of discussing jurisdiction shall be mandatory upon written request of the Local Union on all jobs whose total cost is one million dollars ($1,000,000.00) or more. Markup meetings on jobs of less than one million dollars ($1,000,000.00) shall be optional upon mutual consent of the individual employer and the unions involved. This is not necessarily an exclusive Millwright Markup. At a Markup meeting where plans or mock-ups are to be used, the Union will be given reasonable time to review such plans or mock-ups prior to the start of the meeting.

## Section 14
## Safety

A.   As a safety factor, no Millwright shall be required to work alone while making repairs or adjustments on machinery and/or

55



equipment that is in operation or capable of being operated. Since this is a safety factor, the second individual is not necessarily a Millwright, but must be a responsible individual capable of starting, stopping and operating said machinery. If the second individual is not a Millwright, he shall not be allowed to perform Millwright tasks. No Millwright employee shall be discharged for refusing to work under unsafe conditions.

### Section 15
### Subcontracting

A. The individual employer shall not subcontract Millwright work as set forth in Section 12, to any subcontractor without notifying the union, in writing, of the subcontractor's name, address, phone number and license number within five (5) days after selecting the subcontractor or five (5) days before starting the job, whichever is longer, except in emergencies. Such subcontracting shall be done in accordance with Section 50 (Work Preservation, Contracting and Subcontracting) of the Master Agreement.

### Section 16
### Outside Contracting

Any outside firm undertaking any Millwright work within the territory where this Agreement applies shall be allowed to bring in one (1) non-resident Foreman or General Foreman, subject to the Hiring Provisions of Section 49 (Hiring) of the Master Labor Agreement. Such non-resident shall register for Health and Welfare, Vacation Plan, Annuity, and Retirement Plan at the office of the Local Union, and shall be furnished a copy of the current Agreement for his future guidance prior to starting any job. The Local Union office shall inform such workers of the proper compensation due him/her under this Agreement and may later require specific proof of conformance. The second Foreman shall be a local Millwright. All Foremen or General Foremen shall receive the wages and conditions of this Agreement.

MILLWRIGHT EMPLOYERS ASSOCIATION

_____    _____
Michael Vlaming                                          Date

MILLWRIGHTS LOCAL UNION #102

_____    _____
Bill Napier, Business Manager                     Date

CARPENTERS 46 NORTHERN CALIFORNIA
COUNTIES CONFERENCE BOARD

_____    _____
Robert Alvarado, Chairman                         Date

_____    _____
William Feyling, Executive Director              Date

## Appendix C
## Residential Addendum

The terms and conditions of this Addendum shall apply on the work description contained herein, provided the job(s) are registered as per Section C-5 of this Addendum and all the terms and conditions of the Carpenters Master Agreement shall remain in full force and effect unless specifically amended by this Addendum.

C-1.Residential Wood Frame Structures are defined as single family residences, condominiums, town houses, cluster homes and multiple unit, multi-story wood frame residential structures as permitted by the applicable building code.

Due to the constantly changing aspects of the residential construction industry, the parties to this addendum reaffirm the conditions of Section 2 (Term of Agreement), paragraph 4, and Section 3-A (Carpenters Work Preservation Committee) of the Master Agreement shall particularly apply to all phases of this Residential Addendum.

C-2.Work Description:

Residential work processes include, but are not limited to, fabrication and installation of concrete forms and foundations; floor framing members; subfloors; wall, ceiling and roof framing; exterior siding, roof and exterior wall shingles, shakes or asphalt shingles; lathing; normal and traditional drywall; steel scaffolding; windows and sliding glass patio doors; stairs; underlayment and base; installation and finishing of hardwood floors including pre-finished hardwood floors regardless of the method of installation; acoustical ceiling; installation of all interior trim including cabinets, counter tops, pre-finished marble counter tops and vanities; customer service or warranty work; and other work incidental to the performance of the work covered and work performed by using the tools recognized as and regarded as tools of the trade.

C-3.The terms and conditions of Section 39 (Wage Rates) of the Master Agreement are amended as follows:

Seven (7) Counties Area consisting of the following counties: Alameda, Contra Costa, Marin, San Francisco, San Mateo, Santa Clara, and Solano.

| Journeyman wage rates effective | 7/1/03 |
|---|---|
| Carpenters | $30.15 |
| Hardwood Floorlayers | $30.30 |
| Shinglers | $30.30 |
| Power Saw Operators | $30.30 |
| Steel Scaffold & Steel Shoring Erectors | $30.30 |
| Saw Filers | $30.30 |

Three (3) Counties Area consisting of the following counties: Napa, San Benito and Sonoma.

| Journeyman wage rates effective | 7/1/03 |
|---|---|
| Carpenters | $24.87 |
| Hardwood Floorlayers | $25.02 |
| Shinglers | $25.02 |
| Power Saw Operators | $25.02 |
| Steel Scaffold & Steel Shoring Erectors | $25.02 |
| Saw Filers | $25.02 |

Apprentice Wage Percentage Schedule: The wage rates for apprentices shall be the following percentages of the applicable Journeyman classification in the appropriate geographical area.

First Period:    0 to 6 months . . . . . . . . . . . . . . . . . . . 60%

> Health & Welfare, Work Fee, Industry Promotion,
> UBC Health & Safety, Work Preservation,
> Training, Carpenter Employers Contract
> Administration

Second Period: 7 to 12 months . . . . . . . . . . . . . . . . . . . 65%
> Health & Welfare, Work Fee, Industry Promotion,
> UBC Health & Safety, Work Preservation,
> Training, Vacation, Carpenter Employers Contract
> Administration

Third Period: 13 to 18 months . . . . . . . . . . . . . . . . . 70%
> Health & Welfare, Work Fee, Industry Promotion,
> UBC Health & Safety, Work Preservation,
> Training, Vacation, Annuity, Carpenter Employers
> Contract Administration

Fourth Period: 19 to 24 months . . . . . . . . . . . . . . . . . 75%
> Health & Welfare, Work Fee, Industry Promotion,
> UBC Health & Safety, Work Preservation, Training,
> Vacation, Annuity, Carpenter Employers Contract
> Administration

Fifth Period:     ˉ25 to 30 months . . . . . . . . . 80% Full Fringes

Sixth Period:     31 to 36 months . . . . . . . . . . 85% Full Fringes

Seventh Period: 37 to 42 months . . . . . . . . . . 90% Full Fringes

Eighth Period:  43 to 48 months . . . . . . . . . . 95% Full Fringes

#### Pre-Apprentices

In order to encourage persons who have not traditionally entered the carpentry trade to enter and complete the necessary apprenticeship program and to increase the potential for successful completion of all those who become indentured apprentices, the parties hereto agree to create a pre-apprenticeship program, the purpose of which will be to introduce the Trade to such persons.

Such pre-apprenticeship program may be utilized by Employers under the following conditions:

On private residential projects covered and registered as per Appendix C, a pre-apprentice period is established as follows:

Period of time 180 calendar days. Wage rates 35% of the applicable journeyman rate plus fringe benefit contributions as follows: Training, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation and Carpenter Employers Contract Administration.

An individual employer may employ one (1) pre-apprentice for each apprentice in his employ that has entered the third or higher period of apprenticeship. Pre-apprentices shall not be considered in computing the journeyman-apprentice ratio.

The use of pre-apprentices is to be considered a privilege by an individual employer and violation of the pre-apprentice ratio shall cause the privilege to be denied, subject to Section 51 (Grievance Procedure).

The Employer and the Union shall establish rules governing the use of and criteria for advancement of pre-apprentices into the Apprenticeship program.

Except as specifically amended in this Section C-3 of this addendum, the terms and conditions of Section 39 (Wage Rates) of the Master Agreement remain unchanged.

C-4. The work week will be governed by the terms of Section 24 (Work Week) of the Agreement.

### C-5. Job Registration

A.  Individual Employers shall register all jobs to be performed under the terms and conditions of this Addendum. An individual employer who opts to subcontract covered work shall register any such subcontractor. An individual employer acting as a subcontractor shall register all jobs to be performed under the terms of this Addendum.

B.  Each individual employer shall notify the Union in writing, on Job Registration Form to be provided by the Union of the location of each job on which he or it will be performing work covered by the Agreement. Such notice shall be given prior to the commencement of work and shall contain all the information required by the Union. On jobs where the time factor does not permit all registration of jobs prior to their commencement, the contractor shall notify the appropriate Local Union or the NCCRC office by telephone, giving all pertinent information regarding the specific job. Such notification must be confirmed in writing on the regular Job Registration Form provided by the Union within forty-eight (48) hours thereafter.

C.  In the event a contractor takes over the performance of a contract covered by the terms of this Agreement for another contractor, the successor contractor shall notify the Union by certified mail of its intent to undertake performance of the contract. Such notice shall be given prior to commencing work. Failure to give such notice shall subject the successor contractor to any liability for any delinquent fringe benefits of the predecessor contractor through Section 51 (Grievance Procedure) in addition to any other claims which may arise because of such failure.

D.  The information to be contained on the registration form shall include, but not be limited to, the following:

1.  Individual employer's name, address, telephone number, Contractor's License number, Carpenters Trust Fund account number, and Workers Compensation carrier and policy number.

2.  Name and address of project; jobsite phone (if any); name of contractor's job supervisor; proper term for Federal, HUD, or State project I.D. number; estimated starting and completion dates.

3.  Job description, i.e., single family tract, remodel, apartment, etc., number of units, square footage, estimated number of hours of covered work to be performed.

4.  Name and account number of payroll bank account.

5.  List of all subcontractors performing work covered by this Addendum of the Agreement, including address, Carpenter Trust Fund account number, if known, estimated hours, if available, and description of work to be performed.

E.  Nothing in this Addendum shall in any way abridge, amend or detract from Section 50 of the Master Agreement, entitled "Work Preservation, Contracting and Subcontracting," provided, however, compliance with the registration of subcontractors as required herein shall satisfy the written notice requirement of Section 50 paragraph 5.

C-6. In the event that the Union negotiates more favorable terms and conditions for work covered by this Addendum in the Ten County Area, such more favorable terms and conditions shall be available to any employer signatory to this Addendum provided, however, any signatory desiring to take advantage of the different terms and conditions must adopt all the terms and conditions applicable to such other agreement. This provision shall not apply to any

project agreements negotiated by the Union. The terms of Section 2-A (Carpenters Work Preservation Committee) of the Agreement shall also apply to this Addendum.

### Appendix D
### Insulators Addendum

The following special conditions shall apply between the CAR-
NTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE
OARD and the individually signatory INSULATION CONTRAC-
ORS and are in addition to and shall prevail over conflicting pro-
sions of the foregoing Master Agreement.

1.  For work on occupied residences only, no overtime will be
quired for work on Saturdays, except to the extent an employee
orks in excess of forty (40) hours in a week and provided the
nion is notified in advance of this change in the work week.

2.  The Union will recommend to the involved Local Unions and
e NCCRC that no "foreign dues" will be charged to workers who
ork within different union jurisdictions, provided the individual
nployee obtains a dispatch by telephone before going to the job.

3.  On blower crews only, to accommodate the weather condi-
ons, and subject to advance notice to the Union, an individual
mployer may commence the work day as early as 6:00 A.M.

4.  Travel pay from the individual employer's warehouse or shop
 the furthermost jobsite and return to the employer's headquarters
all be paid one way only, at the employee's regular hourly rate,
rovided that if a company vehicle breaks down on the return trip
 the shop after completing a job, time and one-half shall be paid
or all time in excess of thirty (30) minutes caused by the break-
own, and provided further that overtime will be paid only in
xcess of eight (8) straight time hours worked in any one (1) day.

5.  The job classification, "Hopper or Blower Operator" is estab-
shed at a wage rate of 50% of applicable Journeyman rate and all
inge benefit contributions. Pre-Apprentices and Apprentices may
e assigned to the Hopper-Blower operation as a part of their train-
ng for a period not to exceed sixty (60) calendar days. An
Apprentice or Pre-Apprentice so assigned shall receive their normal
vage rate and fringe benefits for the sixty (60) calendar day peri-
d and shall receive no less than the Hopper Blower Operator
vage and fringe benefit rates after the expiration of the sixty (60)
ay period.

6.  When a Local Union is not able to supply a sufficient number
of Journeymen, the ratio of Apprentices to Journeymen may be
ncreased but not to exceed one (1) Apprentice to each
ourneyman.

7.  To facilitate overtime work permits, the individual employer
nay make arrangements by telephone rather than by personal
visits.

8.  An Insulator Apprentice Program will be established to pro-
vide competent Journeymen. The period of apprenticeship shall be
thirty-six (36) months. The periods, wage percentage of Journeyman
rate, fringe benefit contributions shall be as follows:

Wage Percentage/Fringes

First Period      0 to 6 months . . . . . . . . . . . . . . . . . . . . 60%

Health & Welfare, Work Fee, Industry
Promotion, UBC Health & Safety, Work
Preservation, Training, Carpenter Employers
Contract Administration

Second Period    7 to 12 months. . . . . . . . . . . . . . . . . . .65%

Health & Welfare, Work Fee, Industry
Promotion, UBC Health & Safety, Work
Preservation, Training, Vacation, Carpenter
Employers Contract  Administration

| Third Period | 13 to 18 months . . . . . . . . . . . . . . . . . 70% |
|---|---|
| | Health & Welfare, Work Fee, Industry |
| | Promotion, UBC Health & Safety, Work |
| | Preservation, Training, Vacation, Annuity, |
| | Carpenter Employers Contract Administration |
| Fourth Period | 19 to 24 months . . . . . . . . . . . . . . . . . 75% |
| | Health & Welfare, Work Fee, Industry |
| | Promotion, UBC Health & Safety, Work |
| | Preservation, Training, Vacation , Annuity , |
| | Carpenter Employers Contract Administration |
| Fifth Period | 25 to 30 months . . . . . . . . . . 80% Full Fringes |
| Sixth Period | 31 to 36 months . . . . . . . . . . 85% Full Fringes |

Pre-Apprentices shall be covered by the terms set forth in
Appendix C of the Master Agreement but shall not be limited to res-
idential projects only. The individual employers shall be entitled to
one (1) pre-apprentice and not be in violation of the pre-apprentice:
apprentice ratio set forth in Appendix C.

9.   When the Adjustment Board Arbitration Panel is scheduled to
hear a grievance involving an insulation contractor who is party to
this Agreement, the employer panel members will be represented by
the individually signatory members.

# Appendix E
## Associated Cabinet Manufacturers
## and
## Carpenters 46 Northern California Counties
## Conference Board on behalf of its
### affiliated Local Unions
### Master Agreement
### July 1, 2004 through June 30, 2008

## TABLE OF CONTENTS

| | SECTION NO. | PAGE |
|---|---|---|
| Apprenticeship | 6 | 67-68 |
| Apprentice Wage Rates and Schedule of Benefits | | 79 |
| Associate Cabinet Manufacturers Addendum "A" | | 80 |
| Foreman and Layout Man | 17 | 72 |
| General Provisions | 7 | 68-69 |
| Grievance Procedure, Discharge and Retirement | 15 | 71-72 |
| Handicapped Workers | 8 | 69 |
| Holidays | 4 | 66 |
| Leave of Absence | 14 | 71 |
| Maintenance | 9 | 69 |
| Mill-Cabinet Industry Apprenticeship & Training/Employee Benefit Fund | 20 | 74-75 |
| Notice to Union Confirming Order For Referral of Personnel | | 82 |
| Notice to Local Union of Employee Hire | | 83 |
| Overtime | 3 | 65-66 |
| Rights of Union Representatives | 11 | 69 |
| Seniority | 13 | 70-71 |
| Shop Steward | 10 | 69 |
| Show-Up Time | 18 | 72 |
| Union Label | 12 | 69-70 |
| Union Security | 1 | 64-65 |
| Vacation | 5 | 66-67 |
| Wage Schedule "A" | | 76-79 |
| Work Day/Work Week | 2 | 65 |
| Work Performed Away From Plant | 19 | 73-74 |
| Work Preservation Committee | 16 | 72 |

## Preamble

In addition to the working rules and conditions of the 46 Counties Carpenters Master Agreement, the following special working rules and wages shall apply to Mill-Cabinet and related work:

THIS AGREEMENT is made and entered into this 1st day of July, 2004, by and between the ASSOCIATED CABINET MANUFACTURERS (ACM), representing and on behalf of those member firms in the counties of Alameda, Contra Costa, Marin, San Benito, Santa Clara, San Francisco, and San Mateo whose employees are legally represented by one of the signatory Unions, (firms bound by the Agreement at the date of the signing are listed on the applicable addendum, and firms subsequently joining the Association whose employees are legally represented by the Union shall come under this Agreement upon notice to the Carpenters 46 Northern California Counties Conference Board from the Association that such firm has become a party to this Agreement), each of said firms being hereinafter referred to as the Employer and Locals 262 and

2236, affiliated with the Carpenters 46 Northern California Counties Conference Board, for and on behalf of the Northern California Carpenters Regional Council and their affiliated Local Unions being hereinafter referred to as the Union. The geographical application of this Agreement shall be extended to other counties in Northern California in accordance with the provisions of Section 3 hereof or otherwise by agreement of the parties hereto.

This Mill-Cabinet Agreement amends, modifies, supplements, changes, extends and renews the Agreement dated May 1, 1987, June 15, 1990, August 1, 1992, June 16, 1996, May 25, 1999, and is effective July 1, 2004. The terms and conditions of this Agreement shall apply to all individual employers signatory to the Millmen's Seven Bay Area Northern California Counties Memorandum Agreement.

## Section 1

## Union Security

(a) Every employee covered by this Agreement who is a member of the Union and in the employ of the Employer shall, as a condition of employment or continued employment, remain a member in good standing of the appropriate Local Union. Every other employee covered by this Agreement shall be required, as a condition of employment or continued employment, to apply for and become a member of, and to maintain membership in good standing in the appropriate Local Union on or after the expiration of thirty-one (31) continuous or cumulative days of employment. In the event that Federal Law setting forth the time limitations for requiring membership are changed so as to allow a shorter limitation for requiring membership or changed so as to allow a shorter period before membership must be obtained, the parties hereto agree that shorter periods as may be allowed, by law, shall be applicable hereto.

For purposes of this Section "good standing" shall be defined to mean employees who tender the periodic dues, initiation and reinstatement fees uniformly required as a condition of acquiring or retaining membership. The Union agrees to accept Non-member employees into membership on the same terms and conditions generally applicable to other member employees.

Upon written notice from the Union or failure on the part of any individual to complete membership in the Union or to maintain membership in the Union as required by this Section, the Employer shall immediately discharge said employee.

(b) The Employer shall notify the appropriate Local Union of job vacancies before hiring new, additional or replacement employees before the vacancy is filled.

If the notice is other than in writing, the Employer shall confirm such notice that same date using form OFE-1 (Order for Employees) set out as Exhibit "2" attached to and made part of this Agreement.

The Local Union shall be permitted an opportunity to refer applicants to fill such vacancies within forty-eight (48) hours of such notice, excluding Saturdays, Sundays, and holidays. The Employer may fill a vacancy from any source if the Local Union is not able to supply qualified applicants for employment within such period. The Employer may temporarily fill the vacancy from any source. Where the Employer hires an employee covered by this Agreement from any source, he shall immediately report the name, address, classification, rate of pay, Social Security number and date of hire in writing to the appropriate Local Union using Form NOH-1 (Notice of

tire) set out as Exhibit "3" attached to and made part of this Agreement with a copy to the Shop Steward, if any.

(c) The Employer, party to this Agreement, agrees that no more than one (1) member of the firm shall work with the tools of the trade unless he is a union member. "Member of the firm" shall mean one (1) owner or a corporate manager with full authority to act on behalf of the firm, who has been designated by prior notice to the Union.

## Section 2
## Work Day/Work Week

(a) The Union agrees that signatory employers may utilize a 4 X 10 workweek if a majority of the affected employees are in favor. The Union and the ACM will meet promptly to finalize the procedures to be used in implementing a 4 X 10 work schedule. No 4 X 10 workweek will be implemented unless and until said procedures are finalized.

(b) Eight (8) hours shall constitute a regular work day. The regular work day shall be between 8:00 a.m. and 5:00 p.m. Five (5) days shall constitute a regular work week from Monday through Friday, inclusive. The starting time of the regular work day may be changed by written agreement between the Employer and the Union.

(c) A pay period shall be any seven (7) consecutive days. Employees shall be paid on a regularly designated payday each week for all work performed during the previous pay period. Checks shall be distributed before the regular quitting time on the regular payday.

(d) Should an Employer compensate an employee with a check for which payment is refused by the Employer's bank because of insufficient funds or should an Employer fail to pay his employees on the regular established payday for work performed, the Employer shall be obligated to pay a penalty equal to eight (8) hours straight-time pay for each work day thereafter up to a total of forty (40) hours penalty pay in addition to the Employer's obligation to pay for hours worked.

Such penalty shall not apply when there is a bank error or omission or when the failure to make timely payment is totally beyond the control of the Employer. The penalty payments shall commence on the first work day following notice to the employer of the bank's refusal to honor the check.

## Section 3
## Overtime

(a) The first two (2) hours prior to the start of the regular work day or the first four (4) hours after the end of the regular work day, not to exceed a total of four (4) hours in any one (1) work day shall be paid at time and one-half.

1. Time and one-half shall be paid for the first eight (8) hours worked on Saturdays.

2. All work in excess of eight (8) hours on Saturdays and all work on Sundays and holidays shall be double time.

(b) All travel time shall be paid in accordance with Section 19 (d) & (e).

(c) Overtime shall be first offered to the employee whose job is

working. If he is unable to work, it shall then be offered to qualified employees in the seniority pool.

## Section 4
## Holidays

The following are nationally recognized holidays covered by this Agreement:

2004: Monday, July 5th (Fourth of July); Monday, September 6th (Labor Day); Thursday, November 25th (Thanksgiving Day); Friday, November 26th (Day after Thanksgiving); Friday, December 24th (Christmas Eve); Friday, December 31st (New Year's Eve).

2005: Monday, January 17th (Martin Luther King's Birthday); Monday, February 21st (President's Day); Monday, May 30th (Memorial Day); Monday, July 4th (Fourth of July); Monday, September 5th (Labor Day); Thursday, November 24th (Thanksgiving Day); Friday, November 25th (Day after Thanksgiving); Monday, December 26th (Christmas Day).

2006: Monday, January 2nd (New Year's Day); Monday, January 16th (Martin Luther King's Birthday); Monday, February 20th (President's Day); Monday, May 29th (Memorial Day); Tuesday, July 4th (Fourth of July); Monday, September 4th (Labor Day); Thursday, November 23rd (Thanksgiving Day); Friday, November 24th (Day after Thanksgiving); Monday, December 25th (Christmas Eve); Tuesday, December 26th (Christmas Day); Monday, January 1st (New Years Eve).

2007: Tuesday, January 2nd (New Year's Day); Monday, January 15th (Martin Luther King's Birthday); Monday, February 19th (President's Day); Monday, May 28th (Memorial Day); Wednesday, July 4th (Fourth of July); Monday, September 3rd (Labor Day); Thursday, November 22nd (Thanksgiving Day); Friday, November 23rd (Day after Thanksgiving); Monday, December 24th (Christmas Eve); Tuesday, December 25th (Christmas Day); Monday, December 31st (New Year's Eve).

2008: Tuesday, January 1st (New Year's Day); Monday, January 21st (Martin Luther King's Birthday); Monday, February 18th (President's Day); Monday, May 26th (Memorial Day).

Should a holiday provided for in this Section fall on Sunday, the day observed by the State or Nation shall be considered the holiday.

Employees who are required to work on any of the above holidays shall be paid double time rate.

## Section 5
## Vacation

Each individual employer covered by this Agreement shall contribute to the Carpenters Vacation and Holiday Trust Fund for Northern California the amount listed in Wage Schedule "A" for each hour paid for or worked, whichever is greater, by each employee covered by this Agreement, for the purposes of providing Vacation and Holiday benefits for such employees. Such contributing individual employer agrees to be bound by that certain Trust Agreement establishing the Fund dated May 1, 1972, as such has been or may from time to time be amended or supplemented. The Union and the Employer agree that this plan is and has been a Defined Contribution Plan.

There shall be no duplicating contribution with respect to any employee or the work of any employee.

For purposes of interpreting and applying this section, such Trust Fund Contribution shall be considered as compensation.

The total number of hours worked by each employee in each work month, for which contributions are made to this Trust Fund, shall be reported by the individual employer to this Trust Fund.

1. To be eligible for the following vacation time off the job, an employee must have twelve (12) successive months of continuous employment as defined in Section 13 of this Agreement following an anniversary date of the employee's date of hire.

FIRST YEAR through FOURTH YEAR—10 days vacation

*FIFTH YEAR or MORE—15 days vacation

* The Employer may require one (1) week of any three (3) weeks vacation to be taken at any time between October 1 and April 1 and separate from the other two (2) weeks.

2. All vacation pay shall be allocable to the period worked and not to the period when paid.

3. If a holiday occurs during that calendar week in which the vacations are taken by any of the employees, one additional vacation day may be taken because of such holiday.

4. Vacations shall be taken at a time mutually agreeable to the Employer and the employee. Promptly after January 1 of each year, each employee who has reason to believe that he will be entitled to a vacation, shall notify the Employer in writing, specifying the vacation time he desires prior to April 1 the Employer shall post a vacation schedule on the bulletin board. As possible, vacations shall be granted at the time specified by the employee. In cases of conflict, employees shall be given preference of choice according to seniority.

## Section 6
## Apprenticeship

(a) An apprentice shall not be less than seventeen (17) years of age when starting his apprenticeship. An apprentice shall undergo a course of training under the direction of the Local Joint Apprenticeship Committee. The period of shop training shall be four (4) years unless the apprentice is given credit for previous work experience by the Committee.

(b) The employment of apprentices shall not exceed one (1) apprentice to every two (2) journeymen except where only one (1) journeyman is employed one (1) apprentice may also be employed. Handicapped workers, Truck Drivers and production workers, regardless of wage scale, shall not be included in this computation.

(c) It shall be a contractual obligation to employ apprentices who might have been laid off due to lack of work before employing new apprentices.

(d) It is agreed between the parties hereto that apprenticeship training shall conform to the Apprenticeship Standards prepared by the Local Joint Apprenticeship Committee and approved by the Administrator of Apprenticeship. Apprentices shall be indentured in accordance with the Shelley-Maloney Act. The apprentice rates provided for in the wage schedule shall apply only to Indentured apprentices. (Note: See Section 20 (Mill-Cabinet Industry

Apprenticeship & Training/Employee Benefit Fund) for apprentice training contributions.)

## Section 7
## General Provisions

(a) No employee will be required to pass through a picket line sanctioned by the appropriate Local Central Labor Council and/or the appropriate Local Building Trades Council, and/or the United Brotherhood of Carpenters and Joiners of America, and/or the appropriate Local Joint Council of Teamsters.

(b) The Employer shall maintain a bulletin board in a prominent and easily accessible location in the plant upon which board the Union shall have the privilege of posting necessary notices pertinent to the conduct of Union business.

(c) There shall be a ten (10) minute break with pay once in the first part of any shift and a ten (10) minute break with pay in the second part of any shift. Where an Employer is signatory to another agreement that provides for a longer break period to other employees such longer break period shall apply to all persons covered by this Agreement who work on the premises.

(d) In the event of a death in the immediate family (father, father-in-law, mother, mother-in-law, legal guardian or former legal guardian, wife, husband, brother, sister, son, daughter or grandparents), the employee shall be entitled to a maximum of three (3) days off with pay to attend the funeral or memorial service. The compensable day or days must fall within the employee's regular scheduled work week, excluding weekends and holidays. Payment of compensation shall be made in accordance with Section 7, (f) below.

(e) When an employee, covered by this Agreement, is called for jury duty in any municipal, county, state or federal court, he shall advise the Employer upon receipt of such call, and if absent from his work for such service, shall be reimbursed as provided herein for any loss of wages while actually performing such services, provided he exhibits to the employer his properly endorsed check or voucher he received for such service and permits the employer to copy same. The amount the employee shall be reimbursed shall be determined by subtracting the amount he received as a per diem for such service from the amount he would have earned at his regular straight-time hourly rate during the regular working hours he missed while performing such service, it being understood that such reimbursement is limited to a maximum of twenty (20) days annually.

(f) Payment for funeral leave, memorial services leave, and/or jury duty shall be made by the employer to the employee after the submission of the claim and after the employer has been paid by the Jointly Administered Benefit Fund, provided such employer has been a contributor to the Fund and is not delinquent in contributions to any of the Trusts at the time the claim is made and at the time the claim was incurred. Payment under this paragraph shall be limited to the amount of the gross wages of the employee involved. Gross wages shall mean vacation/holiday pay, supplemental dues, annuity and the hourly wage rate.

(g) Production workers shall perform work covered by wage Schedule "A".

(h) The provisions of Section 8 shall not apply to newly organized operations for the first twelve (12) months from the effective

date of such Employer becomes signatory. The Union will notify
Employer (ACM) in writing of any amendment to this Agreement
given to a newly signatory Employer.

## Section 8
## Handicapped Workers

An employee who is incapacitated by age, physical or mental
handicaps or other infirmities, or who is temporarily disabled may
be employed at an hourly rate of wage below the minimum estab-
lished by this Agreement provided he shall first have obtained a
written dispensation from his Local Union.

## Section 9
## Maintenance

Maintenance of machinery or equipment or the resetting or
replacement of machinery or equipment already installed may be
done at the convenience of the Employer. The rate of wage for such
work shall be the regular rate of wage of journeymen millmen,
except that the rate of wage for overtime shall be time and one-half
regardless of the day or hour. This Section is not applicable to
grinding, changing knives, saw filing or setting up of machines for
production. Maintenance work on Saturdays and Sundays shall be
at time and one-half. Maintenance employees referred to in this
Section are intended to include employees of the Employer engaged
in the ordinary upkeep and repair of the Employer's machinery and
equipment.

## Section 10
## Shop Steward

The Shop Steward shall make himself known to the Employer.
There shall be no discrimination against the shop steward because
of Union activities, provided that same are performed without undue
loss of time or inconvenience to the Employer.

## Section 11
## Rights of Union Representatives

Business Agents of the Local Union shall have access to the Plant
during working hours at their own risk.

## Section 12
## Union Label

It is hereby understood and agreed by the Employer and the
Union that an application shall be made for the Union Label to the
First General Vice President of the United Brotherhood of
Carpenters and Joiners of America. If the application is approved,
and the Union Label is issued by the United Brotherhood of
Carpenters and Joiners of America to be placed upon the
Employer's products, it is understood and agreed that the Label
shall remain the property of the United Brotherhood of Carpenters
and Joiners of America, and shall be at all times in the possession
of a member of the United Brotherhood of Carpenters and Joiners
of America; and that said Union Label shall at no time be used in
any manner that will be detrimental to the interest and welfare of
the members of the United Brotherhood. Use of said Label may be

withdrawn from the mill, shop, factory, or manufacturing establishment of the Employer at any time at the discretion of the "International Union."

## Section 13
## Seniority

(a)  Seniority shall apply to any employee who is in the continuous employ of the Employer for ninety (90) calendar days or more and, thereafter, for the period he remains in continuous employ. For purposes of this Agreement continuous employ is defined as employment uninterrupted by absence due to either:

1.  Discharge for just cause or quit unless rehired within thirty (30) days or reinstated as a result of a decision of the grievance committee or arbitrator, or

2.  Accident, sickness or layoff for lack of work for a continuous period of more than nine (9) months, unless such period is extended by mutual agreement.

The employee may be required to present satisfactory proof that his absence was due to accident or illness.

Time lost as a result of an Industrial injury or Industrial accident recognized by Worker's Compensation, suffered during the course of employment, shall be counted as part of continuous employment. However, acceptance of employment elsewhere during such period shall interrupt continuous employ unless the employee has requested less strenuous work which the Employer is unable to provide.

(b)  The parties agree and understand that for the store fixture, commercial cabinetry and architectural millwork, seniority shall apply only as follows:

1.  The Employer may layoff and recall employees from the seniority pool based on the Employers need.

2.  No new employee will be hired while any member of the seniority pool remains on layoff, except that new production workers may be hired when all such laid-off members of the seniority pool have been first offered the work in the production worker classification.

3.  Recall rights extend for nine (9) months from the date of layoff.

4.  No employee enters the seniority pool until sixty (60) continuous days from the date of hire.

Apprentices shall not attain seniority until they have been an apprentice for twelve (12) months of employment and meet the above requirements.

The seniority provision of the agreement, pertaining to lay-off and rehire, shall not apply during this twelve (12) month period.

5.  Production workers shall not attain seniority.

Apprentices in the continuous employ of the employer shall attain seniority after their twelfth (12th) month of employment.

(c)  Employees laid-off shall keep the Employer advised of their current telephone number and mail or telegraph address. Notice to report shall be given by mailing same to such address or by telegram to the employees outside the contract area and shall be deemed delivered on the day following sending same. All employees covered by this Agreement shall be subject to call and shall for-

feit seniority and/or recall rights if they fail to inform the employer, within two (2) working days after being notified to return, as to whether they will return to work or if thereafter they fail to return to work without good cause within five (5) days after being called or notified by the Employer; provided, that if any employee is away from town when called for work, the time reasonably required by such employee to return to work shall be added to the said five (5) day period. The Employer may hire temporary employees until recalled employees return to work.

(d)    Whenever a vacancy occurs in a skilled job and there are at the time employees who have sufficient aptitude and experience to fill the job, such employees shall be entitled to fair trial to qualify for said job. In the event that such employee shall, in the opinion of the Employer, fail to qualify, he shall revert to his former job without prejudice.

(e)    During a leave of absence granted under Section 14, seniority shall accrue for the first ninety (90) days in the same manner as though the employee was working. Where a leave of absence is more than ninety (90) days, seniority shall be frozen as of the ninetieth (90th) day unless otherwise extended by mutual agreement between the Local Union and the Employer.

## Section 14
## Leave of Absence

(a)    The Employer may, upon written request, grant a leave of absence. Such written leave of absence shall not be considered a break in "continuous employ." A copy of such leave of absence shall be furnished to the Local Union.

(b)    A leave of absence without pay for pregnant employees shall be in accordance with applicable Federal and State Laws.

## Section 15
## Grievance Procedure,
## Discharge and Retirement

(a)    Effective July 1, 2004, the parties agree to utilize the grievance procedure contained in Section 51 (Grievance Procedure) of the Carpenters Master Agreement. A representative selected by the ACM will serve as the Employer panel member for grievances arising under Appendix E. Written notification of the designated panel member will be sent to the Union. This grievance procedure shall apply prospectively. As such, it shall apply only to matters or grievances which arise on or after July 1, 2004.

(b)    The Employer shall not discriminate against any employee because of activities in, or on behalf of, any Local Union. Such Union activities shall not interfere with production.

(c)    An Employee may be discharged or suspended for just cause, such as failure or refusal to perform work as directed; intoxication which shall be defined as any impairment of an employee's ability to properly perform his job resulting from consumption of alcohol or drugs, or any such consumption during working hours, dishonesty, or chronic absenteeism. Absenteeism shall not include employee time off for sickness. Grievances in connection with discharges or suspension shall be subject to the provisions of Section 51 of the Carpenters Master Agreement and employees may be reinstated with or without full or partial back pay if the Grievance

Committee or Arbitrator decides that grounds for discharge or suspension were not established. The Employer shall give written notice of suspension or discharge to the employee in person, or if absent, by mail and a copy of same shall be sent to the Union on the date the notice is served on the employee. The written notice shall state all the reasons for the discharge or suspension.

(d)  The normal retirement age shall be in accordance with applicable Federal and State Laws.

## Section 16
## Work Preservation Committee

The parties to the Agreement hereby establish a Committee composed of three (3) representatives appointed by the 7 Bay Counties Millmen Conference Board and three (3) representatives appointed by the Associated Cabinet Manufacturers.

Each party may select two (2) alternates who will serve on the Committee and vote in the absence of one (1) of the regularly appointed members. Each of the parties shall be entitled to one (1) vote. The Committee shall have a chairman, selected by labor, and a secretary selected by management.

This Committee will review requests for short term modifications of the terms and conditions of this Agreement that may be necessary to preserve work opportunities for employees and individual employers covered by this Agreement. The Committee is authorized to approve such changes as it deems to be in the best interest of the parties to this Agreement.

This Committee shall be empowered to develop rules and procedures, subject to the approval of the bargaining parties, to carry out the intent of the bargaining parties.

## Section 17
## Foreman and Layout Man

(a)  If an employee is voluntarily selected by the Employer as a foreman, he shall be paid a minimum of fifty cents ($.50) per hour above the current journeyman's minimum wage rate when acting as such.

(b)  If an employee is voluntarily selected by the Employer to work primarily as a layout man, he shall be paid a minimum of twenty-five cents ($.25) per hour above the current journeyman's wage rate when acting as such.

## Section 18
## Show-Up Time

Unless notice is given to the employee, prior to 6:00 p.m. on the preceding day, not to report for work, an employee who reports for work at the start of his regular work day shall be paid for two (2) hours at straight time if no work is provided, and a minimum of four (4) hours at straight-time if any work is performed, unless failure to provide work is caused by fire, rain, flood or other causes beyond the control of the Employer.

## Section 19
## Work Performed Away from Plant

The following conditions shall apply for all work performed at the construction jobsite:

(a)  The Employer may install their products which are manufactured under the terms of this Agreement at 85% of the Carpenters nine (9) Counties Commercial or Residential rate whichever is applicable. This rate applies only to his Millmen employees and shall not apply to Construction Carpenters who are hired from Construction Locals and shall not apply to any work that may be subcontracted out.

(b)  Any and all items not manufactured by the Employer shall be installed under the terms and conditions of the applicable Carpenters Master Agreement.

Regular employees of the Employer may perform work on the jobsite that is permissible under the terms of the Carpenters Master Agreement. Such regular employees who are assigned to such work shall apply for dispatch slips at the appropriate office of the appropriate Regional Council or Local Union and such dispatch slips shall be issued for such employees for jobsite work for the duration of their employment with such Employer. Such regular employees shall be subject to the hours in accordance with the terms and conditions of the Carpenters Master Agreement except for travel time, mileage and subsistence and other matters specifically provided for herein. The Employer shall hire temporary additional employees for work at the construction site as needed directly from the Union or the appropriate Regional Council in accordance with the terms and conditions of the Carpenters Master Agreement applicable to the geographical area of the assignment.

(c)  If an employee leaves from the plant to go to the jobsite during his regular work hours and returns to the plant within the same regular work day he shall be paid for all travel time at the regular inside Millmen's rate and in addition, all mileage as required. If an employee leaves from his home to go to the jobsite or if any employee returns to his home from the jobsite, car mileage, when required and travel time, shall be paid between the jobsite and his home or between the jobsite and the plant site, whichever is the shorter distance, provided, however, that payment for car mileage or travel time shall not be required to or from the jobsite located less than twenty-five (25) miles distance from either his home or the plant (payment commences with the 26th mile for mileage and travel time.)

(d)  Travel time outside the regular work day as defined in Sections 2 and 3 of this Agreement or the regular work week as defined in the Carpenters Master Agreement will be paid at the rate of time and one-half of the regular inside Millmen's rate and in addition all mileage as required. Travel time from job to job during the regular work day, as defined in Section 2 of this Agreement, will be paid at the appropriate straight-time rate as provided in paragraph A of this section.

(e)  Car mileage shall be paid at the rate of twenty-nine cents ($.29) per mile for the use of an employee's car when transportation is not furnished by the Employer.

(f)  Jobsite work outside of Alameda, Contra Costa, Marin, San Francisco, San Mateo and Santa Clara Counties or jobsite work requiring overnight stay within said counties, shall be known as "out of town work" for employees working under the terms and conditions of this Agreement. ·

73

When "out of town work" is required, transportation shall be provided or the transportation costs shall be borne by the Employer. Adequate room and board must be provided for the individual employee or a minimum overnight subsistence of thirty dollars ($30.00) per night shall be paid, whichever is greater.

(g) Special arrangements shall be made between the Employer and the employee prior to doing work on any jobsite work presenting unusual circumstances not adequately covered by this Agreement.

(h) Nothing herein shall be construed to require the terms of this Agreement to be applicable to construction carpenters employed by the Employer.

## Section 20
## Mill-Cabinet Industry Appreticeship & Training/Employee Benefit Fund

(a) Each Employer signatory hereto shall contribute the amount of ten cents ($.10) per hour for each hour worked by each employee in each calendar month to the Mill-Cabinet Industry Apprenticeship and Training/Employee Benefit Trust Fund.

It is agreed that nine cents ($.09) from the above amount will be contributed to the Mill-Cabinet Apprenticeship and Training/Employee Benefit Trust Fund for:

1.  journeymen, apprenticeship and other training programs,

and

2.  as a fringe reserve for the purpose of reimbursing employees for bereavement leave or jury duty pursuant to Section 7 (General Provisions) (E) and (F), Appendix E of the Carpenters Master Agreement for Northern California, provided such Employer has been a contributor to the Mill-Cabinet Industry Apprenticeship and Training/Employee Benefit Trust Fund.

These monies shall be allocated jointly by the Trustees and representatives of the local unions. The bargaining parties acknowledge that the Trustees of the Mill-Cabinet Apprenticeship and Training/Employee Benefit Trust Fund are responsible for the allocation of these funds.

(b) It is further agreed, that the remaining one cent ($.01) per hour from the contribution rate of ten cents ($.10) will be contributed to the National Labor-Management Committee for the Custom Wookworking Industry for all hours worked by employees covered by this agreement. The averaging of all hours worked during the preceding calendar year (January to December) will determine the contribution amount to be made each month from the Apprenticeship Training/Employee Benefit Trust Fund to the National Labor-Management Committee for the Custom Woodworking Industry (NLMCCWI), 101 Constitution Avenue NW, Washington, DC 20001.

By the execution of this Agreement, each individual Employer, the Employer, each individual local union and the Unions hereby agree to accept and be bound by the provisions of the Mill-Cabinet Industry Apprenticeship and Training/Employee Benefit Fund Trust Agreement and the National Labor-Management Committee for the Custom Woodworking Industry Trust Agreement, as each is established and as each may be amended from time to time in accordance with their terms.

Each individual Employer, the Employer, each individual local union and the Unions shall have all rights, privileges and obligations as set forth in each Trust. No amendment to the Trusts may increase the obligation of any Employer to contribute to the Funds. The costs of establishing and maintaining the Funds shall be borne out of contributions to the Funds.

## WAGE SCHEDULE "A"

| JOB CLASSIFICATION | Effective 07/01/04 |
|---|---|
| Journeyman | 23.30 |
| Foreman | 24.30 |
| Layout | 24.05 |
| Maintenance | 23.30 |
| Truck Driver | 22.80 |
| * Production Worker I | 16.05 |
| ** Production Worker II | 14.05 |

| FRINGE BENEFITS | Effective 07/01/04 |
|---|---|
| Health & Welfare | 5.055 |
| Pension | 3.00 |
| Annuity | 1.00 |
| Vacation/Holiday | 1.85 |
| Work Fee | .87 |
| Apprenticeship/Employee Benefit Fund | .10 |
| NCMCICAF | .02 |

* Fringes for Production Worker I: H&W, VAC, WF, ANNUITY
** Fringes for Production Worker II: H&W, VAC, WF

### PRODUCTION WORKER HIRING RATIO:

Each individual employer is entitled to hire one (1) Production Worker. Thereafter the following ratio will prevail: One (1) additional Production Worker for every five (5) employees employed, of which at least one (1) must be an Apprentice.

VACATION AND WORK FEE AMOUNTS ARE ADDED TO THE HOURLY RATE TO ESTABLISH THE GROSS PAY. THE GROSS AMOUNT IS SUBJECT TO NORMAL PAYROLL DEDUCTIONS. AFTER NORMAL DEDUCTIONS, THE FULL VACATION AND WORK FEE CONTRIBUTIONS ARE DEDUCTED, REPORTED AND PAID TO THE APPROPRIATE TRUST FUND.

### FUTURE RATES:

### Effective July 1, 2004

The work fee rate for Employers signatory to Appendix E shall be set at twenty cents ($0.20) lower than the rate established under the Carpenters Master Agreement. This lower work fee shall be paid by all signatory employers (ACM members and Independents). Eighty-five cents ($0.85) shall be paid as part of the taxable wage paid to employees and shall be contributed to the Vacation B Account on behalf of each individual employee.

Two cents ($0.02) on all hours worked or paid for, from the twenty cent ($0.20) reduction in the work fee shall be contributed by all Employers signatory to Appendix E into a newly established "Northern California Mill Cabinet Industry Contract Administration Fund" (NCMCICAF). The contributions will be collected in an escrow account until such time as this non-profit organization is formed. The Union will provide legal assistance towards the creation of same. The Union will fund the initial cost for filing fees, etc.

The Contract Administration Fund contributions will be collected by the Carpenters Funds Administration Office and forwarded to the NCMCICAF with a service fee to be established by the Trust consistent with the service fees charged to similar contract administration and industry promotion funds.

### Effective July 1, 2005

Increase wages by twenty-five cents ($0.25) per hour. The increase shall be applied to all classifications as listed in Schedule "A". The Apprentice rate percentages shall remain unchanged and shall be recalculated based on the new journeyman rate.

The Plan B Health and Welfare contribution rate shall be increased by eighty-five cents ($0.85) to five dollars and ninety and one-half cents ($5.905) per hour.

The Pension contribution rate shall be increased by twenty cents ($0.20) to three dollars and twenty cents ($3.20) per hour.

The Vacation and Holiday contribution rate shall be increased by five cents ($0.05) to one dollar and ninety cents ($1.90) per hour.

The work fee rate for Employers signatory to Appendix E shall be set at twenty cents ($0.20) lower than the rate established under the Carpenters Master Agreement. This lower work fee shall be paid by all signatory employers (ACM members and Independents). Ninety cents ($0.90) shall be paid as part of the taxable wage paid to employees and shall be contributed to the Vacation B Account on behalf of each individual employee.

Two cents ($0.02) on all hours worked or paid, from the twenty cent ($0.20) reduction in the work fee shall be contributed by all Employers signatory to Appendix E into a newly established "Northern California Mill Cabinet Industry Contract Administration Fund" (NCMCICAF). The contributions will be collected in an escrow account until such time as this non-profit organization is formed.

The Contract Administration Fund contributions will be collected by the Carpenters Funds Administration Office and forwarded to the NCMCICAF with a service fee to be established by the Trust consistent with the service fees charged to similar contract administration and industry promotion funds.

The Union reserves the right to reallocate the wage and fringe benefit amounts during the term of the Agreement, excluding the agreed upon health and welfare contributions.

### Effective July 1, 2006

Increase wages by twenty-five cents ($0.25) per hour. The increase shall be applied to all classifications as listed in Schedule "A". The Apprentice rate percentages shall remain unchanged and shall be recalculated based on the new journeyman rate.

The Plan B Health and Welfare contribution rate shall be increased by eighty-five cents ($0.85) to six dollars and seventy-five and one-half cents ($6.755) per hour.

The Pension contribution rate shall be increased by fifteen cents ($0.15) to three dollars and thirty-five cents ($3.35) per hour.

The Vacation and Holiday contribution rate shall be increased by five cents ($0.05) to one dollar and ninety-five cents ($1.95) per hour.

The work fee rate for Employers signatory to Appendix E shall be set at twenty cents ($0.20) lower than the rate established under the Carpenters Master Agreement. This lower work fee shall be paid by all signatory employers (ACM members and Independents). One dollar and one cent ($1.01) shall be paid as part of the taxable wage paid to employees and shall be contributed to the Vacation B Account on behalf of each individual employee.

Two cents ($0.02) on all hours worked or paid, from the twenty cent ($0.20) reduction in the work fee shall be contributed by all Employers signatory to Appendix E into a newly established "Northern California Mill Cabinet Industry Contract Administration Fund". The contributions will be collected in an escrow account until such time as this non-profit organization is formed.

The Contract Administration Fund contributions will be collected by the Carpenters Funds Administration Office and forwarded to the NCMCICAF with a service fee to be established by the Trust consistent with the service fees charged to similar contract administration and industry promotion funds.

The Union reserves the right to reallocate the wage and fringe benefit amounts during the term of the Agreement, excluding the agreed upon health and welfare contributions.

### Effective July 1, 2007

Increase wages by twenty-five cents ($0.25) per hour. The increase shall be applied to all classifications as listed in Schedule "A". The Apprentice rate percentages shall remain unchanged and shall be recalculated based on the new journeyman rate.

The Plan B Health and Welfare contribution rate shall be increased by eighty-five cents ($0.85) to seven dollars and sixty and one-half cents ($7.605) per hour.

The Pension contribution rate shall be increased by twenty cents ($0.20) to three dollars and fifty-five cents ($3.55) per hour.

The Vacation and Holiday contribution rate shall be increased by five cents ($0.05) to two dollars ($2.00) per hour.

The work fee rate for Employers signatory to Appendix E shall be set at twenty cents ($0.20) lower than the rate established under the Carpenters Master Agreement. This lower work fee shall be paid by all signatory employers (ACM members and Independents). One dollar and seven cents ($1.07) shall be paid as part of the taxable wage paid to employees and shall be contributed to the Vacation B Account on behalf of each individual employee.

Two cents ($0.02) on all hours worked or paid, from the twenty cent ($0.20) reduction in the work fee shall be contributed by all Employers signatory to Appendix E into a newly established "Northern California Mill Cabinet Industry Contract Administration Fund" (NCMCICAF). The contributions will be collected in an escrow account until such time as this non-profit organization is formed.

The Contract Administration Fund contributions will be collected by the Carpenters Funds Administration Office and forwarded to the NCMCICAF with a service fee to be established by the Trust consistent with the service fees charged to similar contract administration and industry promotion funds.

The Apprenticeship/Employee Benefit contribution rate shall remain at ten cents ($0.10) per hour for the duration of the Agreement.

The Union and the A.C.M. agree to meet, following the execution of this Extension Agreement, for the purpose of exploring the possibility of establishing an agreement covering production work. This agreement shall be subject to mutual agreement of the parties.

It is agreed that there shall be no cap of hours applied to any wages or benefit contributions required by the Carpenters Master Agreement or this Appendix E.

The Union reserves the right to reallocate the wage and fringe benefit amounts during the term of the Agreement, excluding the agreed upon health and welfare contributions.

## APPRENTICE WAGE RATES
## AND SCHEDULE OF BENEFITS

### Effective July 1, 2004

Increase wages by twenty-five cents ($0.25) per hour. The increase shall be applied to all classifications as listed in Schedule "A". The Apprentice rate percentages shall remain unchanged and shall be recalculated based on the new journeyman rate.

The Plan B Health and Welfare contribution rate shall be increased by eighty-five cents ($0.85) to five dollars and five and one-half cents ($5.055) per hour.

The Pension contribution rate shall be increased by fifteen cents ($0.15) to three dollars ($3.00) per hour.

The Vacation and Holiday contribution rate shall be increased by five cents ($0.05) to one dollar and eighty-five cents ($1.85) per hour.

Effective Date                                              07/01/04

| Apprentice Training Period | Work Hours | School Hours | Shop Rates | Rate of % | Outside Rate |
|---|---|---|---|---|---|
| First Period 0 to 6 months | | | 11.07 | 47.5% | 12.62 |
| Second Period 7 to 12 months | 600 | 72 | 11.07 | 47.5% | 12.62 |
| Third Period 13 to 18 months | 1200 | 144 | 12.82 | 55% | 14.61 |
| Fourth Period 19 to 24 months | 1800 | 216 | 14.56 | 62.5% | 16.60 |
| Fifth Period 25 to 30 months | 2400 | 288 | 16.31 | 70% | 18.59 |
| Sixth Period 31 to 36 months | 3000 | 360 | 18.06 | 77.5% | 20.58 |
| Seventh Period 37 to 42 months | 3600 | 432 | 19.81 | 85% | 22.58 |
| Eighth Period 43 to 48 months | 4200 | 504 | 21.55 | 92.5% | 24.57 |
| Journeyman | 4800 | 576 | 23.30 | 100% | 26.56 |

First six (6) months through fourth six (6) months: H&W, WF, APPR-EBF, VAC

Fifth six (6) months through eighth six (6) months: ALL FRINGES

Effective July 1, 2004 — Fringe Benefit Rate:

```
H & W .......................................5.055 per hour
WORK FEE ...................................0.85
*APPR/EBF ..................................0.10
PENSION ....................................3.00
VACATION...................................1.85
ANNUITY ....................................1.00
NCMCICAF...................................0.02
```

**UNIFORM SUBSTANCE ABUSE POLICY:**

The Carpenters 46 Northern California Counties Uniform Substance Abuse Policy is available to all employers signatory to Appendix E.

## ASSOCIATED CABINET MANUFACTURERS

### ADDENDUM "A"

MEMBER FIRMS OF ASSOCIATED CABINET MANUFACTURERS:

Commercial Casework, Inc.
41780 Christy Street
Fremont, CA 94538

Design Workshop
486 Lesser Street
Oakland, CA 94601

East Bay Fixture Company
941 Aileen Street
Oakland, CA 94608

Lloyd Gordon Mfg. Company
5225 Central Avenue
Richmond, CA 94804

Mission Bell Manufacturing
15749 Concord Circle
Morgan Hill, CA 95037

Plant Architectural Woodworking
300 Newhall Street
San Francisco, CA 94124

Tamalpais Commercial Cabinetry
200 Ninth Street
Richmond, CA 94802



The following Sections of the Carpenters Master Agreement for Northern California shall not apply to the Millmen's Agreement:

Sections:

| | |
|---|---|
| Section 2-A | CONTRACT WORK PRESERVATION COMMITTEE |
| Section 12 | UNION SECURITY |
| Section 13 | UNION REPRESENTATIVE |
| Section 14 | STEWARDS |
| Section 17 | PICKET LINES |
| Section 22 | WORK DAY |
| Section 24 | (DESIGNATED OFF DAYS) WORK WEEK |
| Section 25 | HOLIDAYS |
| Section 26 | OVERTIME |
| Section 27 | PARKING |
| Section 29 | PICKUP TIME |
| Section 30 | SHOW UP TIME, TERMINATION PAY & DISCHARGE |
| Section 31 | PAYMENT OF WAGES |
| Section 32 | PROHIBITION OF PIECE WORK |
| Section 36 | SUBCONTRACTOR RECORDS |
| Section 37 | BONDING |
| Section 39 | WAGE RATES |
| Section 44 | APPRENTICESHIP |
| Section 45 | CONTRACT ADMINISTRATION, WORK PRESERVATION, CALIFORNIA CONSTRUCTION ADVANCEMENT PROGRAM, AND CONSTRUCTION INDUSTRY ADVANCEMENT FUND |
| Section 48 | SUBSISTENCE |
| Section 49 | HIRING |

APPENDIX A-B-C-D

81

NOTICE OF HIRE

## NOTICE TO UNION
## CONFIRMING ORDER
## FOR REFERRAL OF PERSONNEL

TO:  Local Union No._____  Date:_____

This will confirm our order for qualified personnel, described below:

Date of order_____. May be telephone___. Other___.

| **Number** | **Job Title or Description** |
|---|---|

1. _____

2. _____

3. _____

Special requirements:_____

_____

_____

Signed by:_____
Name and Title

Signed by:_____
Company and Address

a) Union has 48 hours, exclud-
ing Saturdays, Sundays and
Holidays to fill this order. Time
being as of time of original
order.

b) This form is to be mailed the
same day if order for personnel
is placed by telephone or given
personally to a union
representative.

82



NOTICE OF HIRE

## EXHIBIT 2
## NOTICE TO LOCAL UNION
## OF EMPLOYEE HIRE

'O: Local Union No._____ Date:_____

'his constitutes the required notice of our having hired the following 'mployee:

Name _____

Address _____

Social Security # _____ Telephone # _____

Date Hired _____ Date began work: _____

Job Hired for _____

Rate of Pay _____

Signed by:_____
                                   Name and Title

Form to be
completed and     Signed by:_____
mailed within one                          Company and Address
(1) day of
employee's begin-
ning work.                             _____

83

# Appendix F
## Carpenters Master Agreement
## Scaffold Erection Addendum

The terms and conditions of this work addendum shall apply to Scaffold/Shoring erection and dismantling work only and all terms and conditions of the Carpenters Master Agreement shall remain in full force and effect unless specifically amended by this Addendum.

1.  The work day shall be eight (8) consecutive hours worked.

2.  Travel pay from the employer's warehouse or shop in a company vehicle to the furthermost jobsite shall be paid one way only at the regular scaffold wage rate. Fringe benefits are not to be included for travel pay.

3.  There shall be no restrictions on the mobility of regular workers of the individual employers in the 46 Northern California Counties.

4.  After the fifth (5th) working day of employment, the individual employer may discharge any employee for just cause only. Just cause is subject to Section 51, the grievance and arbitration provision of the Carpenters Master Agreement. The individual employer during the first five (5) working days of employment may reject or discharge any employee for any reason.

5.  The training of scaffold/shoring erectors will be accomplished by establishing a four (4) year apprenticeship program. This program will be complimented with on-the-job training by the individual employer.

The wage rates for apprentices shall be the following percentages of the applicable journeyman classification in the appropriate geographical area:

| | | |
|---|---|---|
| First Period | 0 to 6 months . . . . . . . . . . . . . . . . . . 60%<br>Health & Welfare, Work Fee, Industry Promotion , UBC Health & Safety, Work Preservation, Training, Carpenter Employers Contract Administration | |
| Second Period | 7 to 12 months . . . . . . . . . . . . . . . . . . 65%<br>Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Carpenter Employers Contract Administration | |
| Third Period | 13 to 18 months . . . . . . . . . . . . . . . . . . 70%<br><br>Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration | |
| Fourth Period | 19 to 24 months . . . . . . . . . . . . . . . . . . 75%<br>Health & Welfare, Work Fee, Industry Promotion, UBC Health & Safety, Work Preservation, Training, Vacation, Annuity, Carpenter Employers Contract Administration | |
| Fifth Period | 25 to 30 months . . . . . . . . . . 80% Full Fringes | |
| Sixth Period | 31 to 36 months . . . . . . . . . . 85% Full Fringes | |
| Seventh Period | 37 to 42 months. . . . . . . . . . 90% Full Fringes | |
| Eighth Period | 43 to 48 months . . . . . . . . . . 95% Full Fringes | |

84

6. Scaffold erectors may be allowed to drive company equipment and materials to all job sites.

7. The Union and the individual employer will cooperate to ensure that all signatory Scaffold/Shoring contractors are in compliance with the terms and conditions of the Carpenters Master Agreement.

CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES CONFERENCE BOARD

By_____    By_____
  Robert Alvarado, Chairman         William Feyling, Executive Director

CONSTRUCTION EMPLOYERS' ASSOCIATION OF CALIFORNIA

By_____
  Michael Walton, Secretary

85

# Appendix G

# Carpenters 46 Northern California Counties Bridge Structure and Highway Related Addendum to the 2003-2008 Carpenters Master Agreement

Notwithstanding the working rules and conditions of the 46 Counties Carpenters Master Agreement, the following special terms and conditions shall apply to Highway work as described herein.

The Carpenters Conference 46 Northern California Counties Conference Board, for and on behalf of its affiliates, agrees to the following Addendum to the above Agreement:

### Section 1—Coverage

All work performed by Bridge Builder Carpenters on highway construction including the construction, improvement, modification and demolition of all or any part of streets, highway and bridges.

### Section 2—Mobility and Hiring

There will be no restrictions on the free movement of workers employed by a signatory employer from one job to another anywhere within the 46 Northern California Counties. Should an employer require additional workers (new hires) on any given job that has commenced, such workers shall be hired from the hiring hall having primary geographical jurisdiction over the work site.

### Section 3—Work Registration

The Union will provide a separate format for work registration as a Bridge Builder Carpenter in their hiring hall procedures. When the Individual Employer requests a Bridge Builder Carpenter, the Union will only dispatch those members who have indicated Bridge Builder work experience. The dispatch of apprentices shall not be subject to this provision.

The parties agree that to adequately respond to the needs of the bridge building industry, the Union has agreed to establish a one-stop hiring procedure. The Union has agreed to establish a 1-800 number for Bridge Builder dispatch requests.

### Section 4—Wages & Fringe Benefits

(a)  Wage and fringe benefit rates for Bridge Builder Carpenters shall be as provided in Section 39 A, B, C and D of the 2003-2008 Carpenters Master Agreement, effective July 1, 2003.

(b)  Future wage and/or fringe benefit considerations.

Wage and Fringe benefit increases will be uniform throughout the entire 46 Northern California Counties pursuant to Section 39 (E) of the 2003-2008 Carpenters Master Agreement.

In addition, the following wage only increase shall apply to projects with a total project value of less than twenty-five million dollars ($25,000,000) and to projects which are not covered under the provisions of Section 39 B(2), B(3), C(2) or C(3) of the Carpenters Master Agreement to equalize Bridge Builder wages throughout the 46 Northern California Counties.

Three (3) Counties Area

January 1, 2004    $0.88

Thirty-Four (34) Counties Area

January 1, 2004    $1.16

## Section 5—Holiday/Designated Off Days

(a)  Thirty-Four (34) Counties and Three (3) Counties Area:

Section 25 (Holidays) of the Master Agreement shall be modified as follows:

The following are recognized holidays: New Year's Day, Martin Luther King Jr. Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, the Friday following Thanksgiving Day, and Christmas Day. If any of the above holidays fall on Sunday, the Monday following shall be observed as the holiday.

(b) Nine (9) Counties Area:

The nationally recognized holidays and designated off days shall be in accordance with the provisions of Section 25 (Holidays) of the Carpenters Master Labor Agreement.

## Section 6—Four by Ten (4 x 10) Workweek

An individual Employer may establish a workweek for four (4) consecutive days of ten (10) consecutive hours. The applicable overtime rate shall be paid for all work before a shift begins, after ten (10) hours, and on Fridays, Saturdays, Sundays, and holidays. In the event two (2) shifts are employed, the first shift shall work (exclusive of meal period) ten (10) consecutive hours for which ten (10) hours shall be paid; the second shift shall be ten (10) consecutive hours of work, exclusive of meal period, and shall constitute a shift's work for which ten (10) hours shall be paid. Provided, further, all shifts are worked the same four (4) consecutive days during a 4 x 10 workweek, except as may be changed by mutual agreement.

In the event that work cannot be performed Monday through Thursday, (4 x 10 hour workweek) because of inclement weather or major mechanical breakdown beyond the control of the Employer, employees (at their option) may make-up such lost work day(s) on Friday and shall be paid at the applicable straight time rate.

The Union and the Employer will commit to proposing and supporting legislation to change existing law to allow for a 4 x 10 workweek on all Bridge Structure and Highway Related work.

## Section 7—Make Up Day

In the event that work cannot be performed Monday through Friday because of inclement weather or major mechanical breakdown, Bridge Builder Carpenters (at their option) may make up such day on Saturday and shall be paid at the applicable straight time rate.

## Section 8—Substance Abuse Testing

The Carpenters 46 Counties Conference Board will actively participate in the negotiation of a Basic Trades Uniform Substance Abuse Policy with the Cement Masons, Laborers, Operating Engineers, Pile Drivers and Teamsters during the life of this Agreement.

An Individual Employer may initiate unannounced lottery testing; a selection process where all company employees are selected for testing and each company employee has an equal chance of being selected for testing. If an Individual Employer initiates such lottery testing, all company employees shall be subjected to such testing. An individual Employer who initiates lottery testing shall specifically state in its notice to the Union and its notice to employees that employees will be subject to lottery testing. The Individual Employer shall give thirty (30) days notice to the Union and employees prior

to implementing a lottery drug testing program. Any such lottery testing shall be administered by an independent third party.

### Section 9—Shift Work

When a job site access has been limited by the construction user, a special shift may be established during off hours, Monday through Friday, when required as a condition of securing the work. The employer may pay eight (8) hours pay for eight (8) hours work on such shift. Work in excess of eight (8) hours shall be subject to the overtime provisions of the Agreement.

No special shift shall be established or started for less than three (3) days duration unless the contracting authority specifies work tasks of only one (1) or two (2) days duration. Work performed during special shifts of less than three (3) days duration shall be paid at the wage rate of 12.5% premium pay for a minimum of eight (8) hours. If as a result of working such special shift(s) a Bridge Builder loses the opportunity to work his/her regular workweek, then all work performed on such special shift(s) shall be paid at the normal overtime rate.

### Section 10—Maximum Utilization

An employer may maximize the utilization of all its United Brotherhood of Carpenters members by working them under the terms and conditions of the Bridge Structure and Highway Related Addendum.

### Section 11

In all other respects, the terms and conditions of the 2003-2008 Carpenters Master Agreement, or any other Master Agreement to which a bridge building employer may be bound, shall continue in full force and effect for the remainder of said term.

Construction Employers' Association

By: _____

    Michael Walton, Secretary


Carpenters 46 Northern California Counties Conference Board

By: _____

    Robert Alvarado, Chairman

By: _____

    William Feyling, Executive Director

**EXHIBIT**

## CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES
## MEMORANDUM AGREEMENT

# 057600

It is hereby mutually understood and agreed by and between the undersigned individual employer or association and the Carpenters 46 Northern California Counties Conference Board, for and on behalf of the Regional Council (NCCRC) and all of its affiliated Local Unions in the 46 Northern California Counties, hereinafter referred to as "Union," that for and in consideration of services performed and to be performed by carpenters for the individual employer, the individual employer or association agrees to comply with all wages, hours, and working conditions set forth in the Carpenters Master Agreement for Northern California effective July 1, 2003 through June 30, 2008 (which Agreement is incorporated herein by reference and a copy of which has been delivered to me and receipt of which is hereby expressly acknowledged), which amends, modifies, supplements and renews each and every, all and singular, previous Carpenters Master Agreements or individual employer Memorandum Agreements in the construction industry in the 46 Northern California Counties, and any future modifications, changes, amendments, supplements, extensions or renewals of or to said Master Agreement which may be negotiated between the parties thereto for the term thereof. The Union has requested recognition as the Section 9(a) representative of the employees covered by this agreement and has demonstrated or offered to demonstrate through authorization cards that it has the support of the majority of the employees. The Employer has satisfied itself that the Union does in fact represent a majority of its employees and hereby recognizes the Union as the Section 9(a) representative of the employees

The term "Master Agreement" referred to in this Memorandum Agreement shall be the Master Agreement referred to above or any other agreement designated in writing by the Union as the "Master Agreement" for a term or period subsequent to May 1, 1986 or any subsequent modifications, changes, amendments, supplements, extensions or renewals of or to said designated Master Agreement

The individual employer by executing this Memorandum Agreement continues to be bound by each and every of the Memorandum Agreements previously signed by said individual employer, if any, for all work performed by said individual employer as described in said Master Agreement and as covered by said Master Agreement regardless of the name or style of doing business or method of organization of any individual employer entity including but not necessarily limited to any activity as a contractor, subcontractor, owner, developer or construction manager and specifically applies to any company, firm or corporation in the construction industry with which or to which the undersigned has any connection of any nature or kind whatsoever

The individual employer agrees to pay all sums of money for each hour paid for or worked by employees performing work covered by said Master Agreement to each and every, all and singular, of the Trust Funds specified in said Master Agreement and to accept, assume, and be bound by, all of the obligations of any Trust Agreement, Plan or Rules, or any amendments, modifications or changes thereof made by the parties thereto, as are now or may hereafter be imposed upon any individual employer by or pursuant to any such Trust, Trust Fund or Plan as set forth in the Master Agreement or any applicable Trust Agreement

The individual employer further agrees that he or it does irrevocably designate and appoint the employer members of said Trust Funds and Plans mentioned in the Master Agreement as his or its attorneys in fact for the selection, removal and substitution of Trustees or Board members as provided in the Trust Agreements or Plans as may be hereinafter provided by or pursuant to said Trust Agreements or Plans

Notwithstanding any provision of the Master Agreement or this agreement, it is understood that the individual employer is required to give written notice to the Union at 265 Hegenberger Road, Suite 220, Oakland, California 94621-1480 of the name or names of any entity, person, firm or corporation engaged in the construction industry with which the undersigned becomes or is now connected and any change of name or style under which the undersigned will be or is engaged in the construction industry in the territory covered by said Master Agreement. Such written notice must be given no less than ten (10) days prior to the date of any such change of name, new corporation, change of corporate status, creation or formation of any entity, etc

The Union agrees to perform all of the provisions of the agreement hereinabove referred to

This agreement shall be binding upon the heirs, executors, administrators, successors, purchasers and assigns of the individual employer, including any name or style under which business is conducted with respect to work covered by this Agreement

Notwithstanding any provision of the Master Agreement or this Agreement, the individual employer agrees that upon a showing by the Union or any of its affiliates that a majority of the individual employer's shop employees, if any, have designated the Union or any of its affiliates as their representative for collective bargaining purposes, the individual employer shall recognize the Union and/or its affiliates as the collective bargaining representative of its shop employees and shall forthwith comply with all wages, hours, terms and conditions of the then applicable Millmen's Master Agreement for the term thereof. Proof of such majority representation shall be established by the submission of authorization cards to a neutral third person who shall compare the signatures with appropriate employee records. The individual employer shall fully cooperate in such review upon demand by the Union or any of its affiliates. Except as set forth below the individual employer waives any right that he or it may have to terminate, abrogate, repudiate or cancel this Agreement during its term, or during the term of any future modifications, changes, amendments, supplements, extensions, or renewals of or to said Master Agreement, or to file or process any petition before the National Labor Relations Board seeking such termination, abrogation, repudiation or cancellation

This Agreement shall remain in full force and affect until June 30th, 2008, and shall continue thereafter for the term of any future modifications, changes, amendments, supplements, extensions or renewals of or to said Master Agreement which may be negotiated between the parties thereto unless either party to this Memorandum Agreement gives written notice to the other of the desire to change or cancel not more than ninety (90) nor less than sixty (60) days prior to June 30, 2008, or June 30th of any year in which the Master Agreement may terminate. Neither this Agreement nor the Carpenters Master Agreement for Northern California, which is incorporated herein, may be changed or modified, in any way, without the written approval of the Chairman or Executive Director of the Union

**UNION:** Carpenters 46 Northern California Counties Conference Board for and on behalf of the Regional Council and all of its affiliated Local Unions in the 46 Northern California Counties

RECEIVED
FEB 1 6 2005

FEB 1 6 2005

_____
Robert Alvarado, Chairman

_____
Bill Feyling, Executive Director

CARPENTERS 46 NORTHERN
CALIFORNIA
CONFERENCE BOARD

Carpenters Local 701

Local Union or Regional Council

By _Tony Canales_
Union Representative

**EMPLOYER:**

_Acoustic Tec_
PRINT – Name of Individual Employer or Association

_____
Signature of Individual Employer or Authorized Representative

_1152 N Mitre_
Address

_Fresno, Ca    93722_
City and State (Include Zip Code)

_852504_
Contractor's License Number(s)

_Owner_
Title (RME, RMO, Partner, Owner, etc.)

_2/10/05_          _2/10/05_
Date Signed          Effective Date

_(559) 352-7725_     _(559) 271-4591_
Telephone Number      Fax Number

WHITE – Fund Copy, CANARY – 46 Counties Conference Board Copy, PINK – Union Copy, GOLDENROD – Employer's Copy    (104)

 

# IN GRIEVANCE PROCEEDINGS
## PURSUANT TO SECTION 51 OF THE
## CARPENTERS MASTER AGREEMENT

| | | |
|---|---|---|
| **NORTHERN CALIFORNIA** )<br>**CARPENTERS REGIONAL COUNCIL,** )<br> )<br> **Grievant,** )<br> )<br>**vs.** )<br> )<br>**ACOUSTIC TEC,** )<br> )<br> **Employer.** ) | **Grievance #07-035**<br><br>**DECISION AND AWARD OF**<br>**THE ARBITRATOR** | |

These grievance proceedings were convened on this 10th day of April, 2007, in the offices of the Carpenters 46 Northern California Counties Conference Board located at 265 Hegenberger Road, Ste. 220, Oakland, California.

The Northern California Carpenters Regional Council (hereinafter referred to as "Regional Council") appeared through its representative, Paul Cohen. Juan Tristan of the Carpenter Funds Administrative Office of Northern California, Inc. also appeared.

The Employer, Acoustic Tec (hereinafter referred to as "Employer"), did not appear although notice was duly given to the Employer.

A quorum of the Board of Adjustment, including the Arbitrator, Gerald R. McKay, was present.

Pursuant to agreement, the matter was submitted to the Arbitrator for decision, which decision is final and binding upon the parties.

The following exhibits were introduced:

1. Copy of a Carpenters Master Agreement for Northern California;

2. Copy of a Carpenters 46 Northern California Counties Memorandum Agreement signed and dated by the company on February 10, 2005;

3. Copy of the Amended Notice of Grievance, with attachment, dated April 5, 2007;

4. Copy of the original Notice of Grievance, with attachment, dated March 27, 2007;


EXHIBIT **C**




5.      Copy of a letter dated March 29, 2007, notifying the Employer of the date and time of the hearing, which letter was sent to the last known address of Acoustic Tec;

6.      Return receipt from certified mail dated April 2, 2007;

7.      Copy of a Northern California Carpenters Trust Fund Remittance Report for the month of October, 2006;

8.      Copy of a Northern California Carpenters Trust Fund Remittance Report for the month of September, 2006.

Testimony was given by Paul Cohen and Juan Tristan with respect to the grievance.

Remedy sought:

That the Employer forthwith cease and desist any further violations of the Carpenters Master Agreement for the remainder of its term;

That the Employer forthwith comply with said Agreement for the remainder of its term;

That the Employer be assessed for violations as found.

The evidence having been taken, the matter stood submitted for decision by the Arbitrator.

## DECISION

1.      Based upon the evidence submitted, it is found that the Employer, Acoustic Tec (hereinafter referred to in this Decision and Award as "Employer"), is a party to and bound to the current Carpenters Master Agreement.  The Carpenters Master Agreement specifically requires the Employer to participate in the grievance procedure and authorizes the Board of Adjustment or Arbitrator to hear and decide the matter on a default basis in the event of Employer non-participation.

2.      The Arbitrator has considered the evidence pertaining to the merits of the grievance and finds that the grievance filed by the Northern California Carpenters Regional Council is meritorious and that the Regional Council is entitled to a remedy to resolve this matter.

3.      Having found in favor of the Regional Council, the Arbitrator issues the following Award:

 

## AWARD

1.   The Employer shall forthwith cease and desist any further violations of the current 46 Northern California Counties Carpenters Master Agreement for Northern California for the remainder of its term. The Employer shall forthwith comply with said Agreement for the remainder of its term.

2.   The Employer shall pay the amount of $230,966.55 in unpaid fringe benefit shortages and liquidated damages.

3.   The Employer shall immediately cease and desist from improperly reporting and untimely paying Trust Fund contributions that are required to be paid to the various Trust Funds referred to in the Carpenters 46 Counties Master Agreement.

4.   The Employer shall correctly report and timely pay all required contributions to each and all of the various Trust Funds referred to in the Carpenters 46 Counties Master Agreement. Correct reporting means to report each individual employee for all hours worked and paid for. Timely payment means that all payments must be paid on or before the 15th and no later than the 25th of each month following the work month for which each such report is made.

5.   The Employer shall forthwith submit to an audit of all of its books and records by representatives of the Northern California Carpenters Trust Funds from February 10, 2005 through date of audit entry in order to determine the amount of wages and fringe benefits due, if any, and to whom they may be due. For purposes of this Award, the amount of wages due shall be based upon the number of hours worked for which Trust Fund contributions are deemed to be due the Carpenter Trust Funds by the auditors.

The books and records which must be submitted to the auditors are all those referred to in Section 21 of the Carpenters Master Agreement and the records referred to in Article IV, Section 8, of the Carpenters Health and Welfare Trust Agreement; Article IV, Section 6, of the Carpenters Pension Trust Agreement; Article VII, Section 4, of the Carpenters Vacation Holiday Trust Agreement; and Article IV, Section 6, of the Carpenters Apprentice Trust Agreement, including, but not necessarily limited to all of the following records as has been determined by the Joint Delinquency Committee of the Carpenters Trust Funds to be relevant:

(a)   Contribution Return and Report of Wages - California (Form DE-3)

(b)   Contribution Returns and Report of Wages – Federal

(c)   Time cards for all employees



(d)     Payroll Journal

(e)     Workers Compensation Reports

(f)     Individual Earnings Record

(g)     Forms W-2, W-4, 1096 and 1099

(h)     Trust Fund Reports for other trades

(i)     General check registers

(j)     Check stubs or vouchers

(k)     Bank statements and cancelled checks

(l)     Job Costs Records, copies of all contracts

(m)     General Ledger, Cash Receipts Journal

(n)     Individual, Corporate and/or Partnership Tax Returns

(o)     Vendor's invoices

(p)     Records of related entities

(q)     Other books and records as may be necessary to conduct appropriate testing to assume the accuracy of records that have been reviewed.

6.     In the event that there is any dispute between the parties to this Award concerning the amount of wages and/or fringe benefits due, or to whom said amounts are to be paid, or the amount that is to be paid following the audit, the Arbitrator hereby retains jurisdiction over these proceedings to resolve or adjust said differences upon further submission to it by any of the parties to this Award.

7.     In the event that the Employer does not comply with the terms of this Award and if the Regional Council or Trust Funds files suit to confirm this Award, the Regional Council or Trust Funds shall be entitled to reasonable attorneys' fees and court costs incurred in enforcing this Award. Said attorneys' fees and court costs are deemed a part of the remedy awarded by the Arbitrator in order to resolve the issues raised in the grievance procedure as set forth in Section 51 of the Carpenters Master Agreement.




8.    It is further ordered that pursuant to Section 51, the Employer shall pay the sum of $300.00 as and for it share of the cost of these proceedings.

9.    Amount due under this Award:

        (a)    Unpaid fringe benefit shortages and liquidated damages    $230,966.55
        (b)    Cost of proceedings                                                                    300.00

                                                    **Amount due:                      **$231,266.55**

4-11-07
_____

Date

Gerald R. McKay, Arbitrator

** The above sum does not include the amount due and owing for wages and/or fringe benefits (if any) as determined by the audit.



CASE NUMBER(S): #07-035

### CERTIFICATE OF SERVICE
### (1013a, 2015.5 C.C.P.)

I am a citizen of the United States and a resident of the County of Alameda, State of California.

I am over the age of eighteen years and not a party to the within action; my business address is

265 Hegenberger Road, Suite 220, Oakland, California 94621-1480. On April 12, 2007, I

served the within **DECISION AND AWARD OF THE ARBITRATOR** on the interested parties in

said action by placing a true and exact copy thereof enclosed in a sealed envelope with postage

thereon fully prepaid, in the United States Post Office mail box at Oakland, California,

addressed as follows:

**Acoustic Tec**
**2508 W. Belmont**
**Fresno, CA 93728**

SENT CERTIFIED AND REGULAR MAIL. CERTIFIED RECEIPT #7005 3110 0000 2335 5720.

I certify under penalty of perjury that the foregoing is true and correct.

Executed in Oakland, California on April 12, 2007.

Patricia K. Reese



# CARPENTERS

46 Northern California Counties Conference Board

**BILL FEYLING**
Executive Director

**RECEIVED**

NOV 0 1 2007

**W R & R**

April 27, 2007

**SENT REGULAR & CERTIFIED MAIL**
**CERTIFIED RECEIPT #7005 3110 0000 2335 6680**

Acoustic Tec
2508 W. Belmont
Fresno, CA 93728

**RE:    Decision & Award – Hearing of April 10, 2007**
**Grievance(s) #07-035**

Dear Sir or Madam:

Please be advised that we have not received the following as awarded to the Carpenters 46 Northern California Counties Conference Board (Award attached); 48-hour demand is hereby given for payment of the following:

| | | |
|---|---|---|
| (a) | Unpaid fringe benefit shortages and liquidated damages | $230,966.55 |
| (b) | Cost of proceedings | 300.00 |

**AMOUNT DUE**          **$231,266.55***

Please make your check payable to the Carpenters 46 Northern California Counties Conference Board at 265 Hegenberger Road, Suite 220 Oakland, CA 94621.

In addition, you are to submit to an audit of your books and records as awarded by the Arbitrator.

If you have not already done so, you are to contact the Carpenter Trust Funds to arrange the audit:

Carpenters Trust Funds – Audit Department
265 Hegenberger Road, Ste. 100
Oakland, CA 94621
(510) 639-3939
Attn: David Leback, Manager, Financial Services

**EXHIBIT D**



22

Should you have any questions, please feel free to contact this office.

Sincerely,

William Feyling
Executive Director

WF:pkr
Opeiu#3 afl-cio

Enclosure

c:     Juan Tristan, Carpenters Funds Administrative Office
       Michael Plommer, Carpenter Funds Administrative Office
       David Leback, Carpenter Funds Administrative Office

**\*(This amount does not include the amount due and owing for wages and fringe benefits (if any) determined by the audit).**

7005 3110 0000 2335 6680

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Maria Lee
08 W. Belmont
Meno, CA 93728

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
7005 3110 0000 2335 6680

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

48 hu
07-035

STEWART WEINBERG
DAVID A. ROSENFELD
WILLIAM A. SOKOL
VINCENT A. HARRINGTON, JR.
W. DANIEL BOONE
BLYTHE MICKELSON
BARRY E. HINKLE
JAMES RUTKOWSKI •
SANDRA RAE BENSON
CHRISTIAN L. RAISNER
JAMES J. WESSER
THEODORE FRANKLIN
ANTONIO RUIZ
MATTHEW J. GAUGER
ASHLEY K. IKEDA ••
LINDA BALDWIN JONES
PATRICIA A. DAVIS
ALAN G. CROWLEY
J. FELIX DE LA TORRE
KRISTINA L. HILLMAN •••
ANDREA LAIACONA
EMILY P. RICH

# WEINBERG, ROGER & ROSENFELD
A PROFESSIONAL CORPORATION

1001 Marina Village Parkway, Suite 200
Alameda, CA 94501-1091
TELEPHONE 510.337.1001
FAX 510.337.1023

LORI K. AQUINO ••
ANNE I. YEN
NICOLE M. PHILLIPS
BROOKE D. PIERMAN •••
BRUCE A. HARLAND
CONCEPCION E. LOZANO-BATISTA
CAREN P. SENCER
LINELLE S. MOGADO
MANJARI CHAWLA
KRISTINA M. ZINNEN

PATRICIA M. GATES, Of Counsel
ROBERTA D. PERKINS, Of Counsel
JOHN PLOTZ, Of Counsel

• Also admitted in Arizona
•• Admitted in Hawaii
• Also admitted in Nevada



May 16, 2007

Acoustic Tec
2508 W. Belmont
Fresno, CA 93728

RE:    **Carpenters 46 Northern California Counties Conference Board**
       **Grievance #07-035**

Dear Sir or Madam:

As the attorneys for the Carpenters 46 Northern California Counties Conference Board, we have been instructed to contact you with respect to your non-compliance of the Arbitrator's Award in the above captioned grievance. In addition to being ordered to submit to an audit of your books and records, you were assessed $230,966.55 in unpaid fringe benefits shortages and liquidated damages along with $300.00 for the cost of the proceedings, for a total amount due and owing of $231.266.55. To date, you have failed to pay said sum.

Inasmuch as the collective bargaining agreement to which you are bound requires that you are responsible for such costs and full compliance with the Arbitrator's Award, we have been instructed to file suit to confirm the Award and your obligation to pay costs if you fail to pay the sum of $231.266.55 within seven (7) days from the date of this letter. If suit is filed, you will be held responsible for additional court costs and attorneys' fees.

Please send the sum of $231.266.55 forthwith to the Carpenters 46 Northern California Counties Conference Board at its offices located at 265 Hegenberger Road, Suite 220, Oakland, California 94621.

As noted, if you do not pay this sum, as ordered by the Arbitrator, within seven (7) days of the date of this letter, we shall file the appropriate action in court to compel your compliance with the grievance procedures of the collective bargaining agreement to which you are bound.

In addition, you were ordered to submit to an audit of all books and records in order to determine the amount of wages and fringe benefits due, if any, and to whom they may be due. You have not submitted to said audit and, therefore, we have been requested to advise you that in accordance with the provisions of the Carpenters Master Agreement, an audit will be conducted to determine that proper reporting has been made to the Carpenter Trust Funds. Section 21 of the Carpenters Master Agreement, states, in part, as follows:

*"Each individual employer upon request of the Union, the Employer, or any Trust Fund specified in this Agreement, shall permit the Trust Fund Auditors to review any and all records relevant to the enforcement of the provisions of this Agreement and to enter upon the premises of such*

LOS ANGELES OFFICE
3435 Wilshire Boulevard, Suite 620
Los Angeles, CA 90010-1907
TEL 213.380.2344 FAX 213.381.1088

SACRAMENTO OFFICE
428 J Street, Suite 520
Sacramento, CA 95814-2341
TEL 916.443.6600 FAX 916.442.0244

HONOLULU OFFICE
1099 Alakea Street, Suite 1602
Honolulu, HI 96813-4500
TEL 808.528.8880 FAX 808.528.8881

May 16, 2007
Page 2

*individual employer during business hours at a reasonable time or times to examine and copy such books, records, papers, or reports of such individual contractor as may be necessary to determine whether or not the individual employer is making full payment of all sums required by this Agreement. Such review shall be permitted not less than ten (10) working days after demand. If the individual employer cancels an audit appointment without appropriate two (2) hours notice to the auditor, the cost of such lost time by the auditor shall be borne by the individual employer."*

*"Any individual employer who refuses audit entry shall pay all the legal fees and costs necessary for compliance of audit entry."*

Unless you notify the Fund Office that you will produce the records indicated below, and that such records will be produced promptly, and at a reasonable time so that arrangements for the audit can be made, it will be necessary for this office to file a civil action against you so as to obtain an injunction to compel production of the records, together with appropriate sanctions for your failure to comply with the Boards' request. The records required are as follows:

     (a)    Contribution Return and Report of Wages - California (Form DE-3)

     (b)    Contribution Returns and Report of Wages – Federal

     (c)    Time cards for all employees

     (d)    Payroll Journal

     (e)    Workers Compensation Reports

     (f)    Individual Earnings Record

     (g)    Forms W-2, W-4, 1096 and 1099

     (h)    Trust Fund Reports for other trades

     (i)    General check registers

     (j)    Check stubs or vouchers

     (k)    Bank statements and cancelled checks

     (l)    Job Costs Records, copies of all contracts

     (m)    General Ledger, Cash Receipts Journal

     (n)    Individual, Corporate and/or Partnership Tax Returns

     (o)    Vendor's invoices

     (p)    Records of related entities

May 16, 2007
Page 3

> (q)    Other books and records as may be necessary to conduct appropriate testing to assume the accuracy of records that have been reviewed.

For your convenience, the Trust Funds' address, telephone number and contact person are as follows:

Carpenters Trust Funds – Audit Department
265 Hegenberger Road, Suite 100
Oakland, CA 94621
(510) 639-3939
Attn: David Leback, Manager, Financial Services

Again, unless our client advises us within seven (7) days from the date of this letter that a firm date and time has been scheduled for the audit, we will pursue the appropriate legal remedy.

Sincerely,

Barry E Hinkle (gen)

Barry E. Hinkle

BEH:pkr
Opeiu#3 afl-cio

c:    Juan Tristan, Carpenters Funds Administrative Office
Michael J. Plommer, Carpenters Funds Administrative Office
David Leback, Carpenter Funds Administrative Office

JS 44 (Rev. 11/04)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

The Board of Trustees of the Carpenters
Health and Welfare Trust Fund for
California, et al.,

### DEFENDANTS

Acoustictec, A California Corporation

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway, Suite 200

Alameda, CA   94501-1091

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)  and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related | [ ] 423 Withdrawal | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury - | Seizure of | 28 USC 157 | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | Property 21 USC 881 | | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product Liability | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 480 Consumer Credit |
| Student Loans (Excl. Veterans) | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 490 Cable/Sat TV |
| [ ] 153 Recovery of Overpayment | [ ] 345 Marine Product | [ ] 370 Other Fraud | Safety/Health | | [ ] 810 Selective Service |
| of Veteran's Benefits | Liability | [ ] 371 Truth in Lending | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle | Property Damage | **LABOR** | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [ ] 195 Contract Product Liability | Product Liability | [ ] 385 Property Damage | [ ] 710 Fair Labor | [ ] 863 DIWC/DIWW | 12 USC 3410 |
| [ ] 196 Franchise | [ ] 360 Other Personal Injury | Product Liability | Standards Act | (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | [ ] 441 Voting | [ ] 510 Motion to Vacate | [ ] 730 Labor/Mgmt. | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization |
| [ ] 210 Land Condemnation | [ ] 442 Employment | Sentence | Reporting & | | Act |
| [ ] 220 Foreclosure | [ ] 443 Housing/ | **Habeas Corpus** | Disclosure Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | Accommodations | [ ] 530 General | [ ] 740 Railway Labor Act | [ ] 870 Taxes (U.S. Plaintiff | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 790 Other Labor Litigation | or Defendant) | [ ] 895 Freedom of |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - | [ ] 540 Mandamus & | [X] 791 Empl. Ret. Inc. | [ ] 871 IRS - Third Party | Information Act |
| [ ] 290 All Other Real Property | Employment | Other | Security Act | 26 USC 7609 | [ ] 900 Appeal of Fee |
| | [ ] 446 Amer. w/Disabilities - | [ ] 550 Civil Rights | | | Determination Under |
| | Other | [ ] 555 Prison Condition | | | Equal Access to Justice |
| | [ ] 440 Other Civil Rights | | | | [ ] 950 Constitutionality of |
| | | | | | State Statutes |

### V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

This action arises under and is brought pursuant to Section 502 of the Employee Retirement Income
Security Act, as amended (ERISA), 29 USC section 1132, and section 301 of the LMRA, 29 USC Section 185

Brief description of cause:

### VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [ ] Yes [ ] No

### VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
February 25, 2008

SIGNATURE OF ATTORNEY OF RECORD   Kristina M. Zinnen

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

NDC-JS44

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA



See Attachment "A"

### SUMMONS IN A CIVIL CASE

**v.**

CASE NUMBER:

See Attachment "A"

$EMC$

CV 08    1137



TO: (Name and address of defendant)
Acoustictec Inc., A California Corporation
2508 W. Belmont
Fresno, CA  93728

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Kristina M. Zinnen
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway, Suite 200
Alameda, CA  94501-1091

an answer to the complaint which is herewith served upon you, within 20        days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking                                  DATE    FEB 2 6 2008
CLERK

Helen L. Almacen

(BY) DEPUTY CLERK

NDCAO440

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |

| Name of SERVER | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served Personally upon the Defendant.  Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other *(specify):*

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
            *Date*                      *Signature of Server*

_____
*Address of Server*

(1)  As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

## ATTACHMENT A TO SUMMONS

THE BOARD OF TRUSTEES OF THE CARPENTERS HEALTH AND WELFARE
TRUST FUND FOR CALIFORNIA; CARPENTERS VACATION-HOLIDAY TRUST
FUND FOR NORTHERN CALIFORNIA; CARPENTERS PENSION TRUST FUND
FOR NORTHERN CALIFORNIA; CARPENTERS ANNUITY TRUST FUND FOR
NORTHERN CALIFORNIA; and CARPENTERS TRAINING TRUST FUND FOR
NORTHERN CALIFORNIA, and CARPENTERS 46 NORTHERN CALIFORNIA
COUNTIES CONFERENCE BOARD for itself and on behalf of NORTHERN
CALIFORNIA CARPENTERS REGIONAL COUNCIL

      Plaintiffs,

v.

ACOUSTICTEC, A California Corporation,

      Defendant.